# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JASON COUNTS, DONALD KLEIN, OSCAR ZAMORA, BRANDON J. STONE, JASON SILVEUS,  JOHN MISKELLY, THOMAS HAYDUK, JOSHUA HURST, and JOSHUA RODRIGUEZ, individually and on behalf of themselves and all others similarly situated, | No. <br><br> **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **JURY TRIAL  DEMANDED** |
| GENERAL MOTORS LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    JURISDICTION .................................................................. 6

III.   VENUE ............................................................................... 6

IV.    PARTIES ............................................................................ 6

       A.     Plaintiffs ................................................................... 6

       B.     Defendant ............................................................... 25

              1.     General Motors ......................................... 25

V.     FACTUAL ALLEGATIONS ............................................ 25

       A.     The Environmental Challenges Posed by Diesel Engines
              and the United States Regulatory Response Thereto ........................ 25

       B.     "Dieselgate" ........................................................... 30

       C.     GM's Diesel Technology ...................................... 31

       D.     GM Advertised and Promoted the Chevrolet Cruze as a
              "Clean Diesel" ....................................................... 32

              1.     GM advertised and promoted Cruze as clean. ......................... 32

              2.     GM advertised and promoted the Chevrolet Cruze
                     as meeting and exceeding compliance with U.S.
                     emissions standards in all 50 states. ....................... 35

              3.     GM advertised and promoted itself as a
                     manufacturer of high-quality vehicles. ................... 35

              4.     GM advertised and promoted itself as a company
                     that cares about the environment. .......................... 37

       E.     The GM Deception ................................................ 37

       F.     The Damage ........................................................... 45

VI.    TOLLING OF THE STATUTE OF LIMITATIONS ................................. 49

    A.    Discovery Rule Tolling ..................................................... 49

    B.    Fraudulent Concealment Tolling ....................................... 50

    C.    Estoppel ....................................................................... 51

VII.   CLASS ALLEGATIONS ........................................................ 51

    A.    Alabama State Claims ..................................................... 55

COUNT I  VIOLATIONS OF THE ALABAMA DECEPTIVE
    TRADE PRACTICES ACT (ALA. CODE §§ 8-19-1, *ET SEQ.*) .............. 55

COUNT II  BREACH OF CONTRACT  (BASED ON ALABAMA
    LAW) ................................................................................ 56

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
    ALABAMA LAW) ................................................................ 58

    B.    Claims Brought on Behalf of the Arizona Class .............................. 65

COUNT I  VIOLATIONS OF THE ARIZONA CONSUMER
    FRAUD ACT (ARIZONA REV. STAT. §§ 44-1521, *ET SEQ.*) .............. 65

COUNT II  BREACH OF CONTRACT  (BASED ON ARIZONA
    LAW) ................................................................................ 69

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
    ARIZONA LAW) ................................................................ 70

    C.    Claims Brought on Behalf of the California Class .......................... 77

COUNT I  VIOLATIONS OF THE CALIFORNIA UNFAIR
    COMPETITION LAW  (CAL. BUS. & PROF. CODE
    §§ 17200, *ET SEQ.*) .......................................................... 77

COUNT II  VIOLATIONS OF THE CALIFORNIA FALSE
    ADVERTISING LAW (CAL. BUS. & PROF. CODE
    §§ 17500, *ET SEQ.*) .......................................................... 82

COUNT III  BREACH OF CONTRACT  (BASED ON
    CALIFORNIA LAW) ............................................................ 84

COUNT IV  FRAUDULENT CONCEALMENT (BASED ON
     CALIFORNIA LAW) .............................................................. 86

     D.     Claims Brought on Behalf of the Colorado Class ............................ 93

COUNT I  VIOLATIONS OF THE COLORADO CONSUMER
     PROTECTION ACT (COLO. REV. STAT. §§ 6-1-101, *ET
     SEQ.*) .................................................................................... 93

COUNT II  BREACH OF CONTRACT (BASED ON COLORADO
     LAW) ..................................................................................... 97

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
     COLORADO LAW) .................................................................. 99

     E.     Claims Brought on Behalf of the Connecticut Class ..................... 106

COUNT I  VIOLATIONS OF THE CONNECTICUT UNFAIR
     TRADE PRACTICES ACT (CONN. GEN. STAT. ANN.
     §§ 42-110A, *ET SEQ.*) .......................................................... 106

COUNT II  BREACH OF CONTRACT (BASED ON
     CONNECTICUT LAW) ........................................................... 111

COUNT III  FRAUDULENT NON-DISCLOSURE (BASED ON
     CONNECTICUT LAW) ........................................................... 112

     F.     Claims Brought on Behalf of the Delaware Class ......................... 119

COUNT I  VIOLATIONS OF THE DELAWARE CONSUMER
     FRAUD ACT (DEL. CODE §§ 2513, *ET SEQ.*) ...................... 119

COUNT II  BREACH OF CONTRACT  (BASED ON DELAWARE
     LAW) ................................................................................... 123

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
     DELAWARE LAW) ................................................................ 125

     G.     Claims Brought on Behalf of the Florida Class ............................ 132

COUNT I  VIOLATIONS OF THE FLORIDA UNFAIR AND
     DECEPTIVE TRADE PRACTICES ACT (FLA. STAT.
     §§ 501.201, *ET SEQ.*) .......................................................... 132

010611-11  883628 V1

COUNT II  BREACH OF CONTRACT (BASED ON FLORIDA LAW) ................................................................................ 136

COUNT III  FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW)..................................................................... 137

H.      Claims Brought on Behalf of the Georgia Class ............................. 145

COUNT I  VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET SEQ*.)................. 145

COUNT II  BREACH OF CONTRACT (BASED ON GEORGIA LAW) ................................................................................ 146

COUNT III  FRAUDULENT CONCEALMENT (BASED ON GEORGIA LAW) .................................................................... 147

I.      Claims Brought on Behalf of the Idaho Class................................. 154

COUNT I  VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CIV. CODE §§ 48-601, *ET SEQ*.)............................................................................. 154

COUNT II  BREACH OF CONTRACT  (BASED ON IDAHO LAW) ............ 158

COUNT III  FRAUDULENT CONCEALMENT (BASED ON IDAHO LAW) .................................................................... 160

J.      Claims Brought on Behalf of the Illinois Class ............................. 167

COUNT I  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND  DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A) ................................. 167

COUNT II  BREACH OF CONTRACT (BASED ON ILLINOIS LAW) ................................................................................ 171

COUNT III  FRAUDULENT CONCEALMENT (BASED ON ILLINOIS LAW) ..................................................................... 173

K.      Claims Brought on Behalf of the Kentucky Class .......................... 180

COUNT I  VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. §§ 367.110, *ET SEQ*.).............. 180

- iv -

COUNT II  BREACH OF CONTRACT  (BASED ON KENTUCKY LAW) .................................................................................. 184

COUNT III  FRAUD BY OMISSION ............................................... 185

    L.    Claims Brought on Behalf of the Maryland Class .......................... 192

COUNT I  VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE COM. LAW §§ 13-101, *ET SEQ.*) .......................................................................................... 192

COUNT II  BREACH OF CONTRACT (BASED ON MARYLAND LAW) .................................................................................. 196

COUNT III  FRAUDULENT CONCEALMENT (BASED ON MARYLAND LAW) ................................................................. 197

    M.    Claims Brought on Behalf of the Massachusetts Class................... 205

COUNT I  VIOLATIONS OF THE MASSACHUSETTS CONSUMER  PROTECTION ACT (MASS. GEN. LAWS CH. 93A) ............................................................................................ 205

COUNT II  BREACH OF CONTRACT (BASED ON MASSACHUSETTS LAW) ...................................................... 205

COUNT III  FRAUDULENT CONCEALMENT (BASED ON MASSACHUSETTS LAW) ...................................................... 207

    N.    Claims Brought on Behalf of the Michigan Class ......................... 214

COUNT I  VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT  (MICH. COMP. LAWS § 445.903, *ET SEQ.*) .......................................................................................... 214

COUNT II  BREACH OF CONTRACT (BASED ON MICHIGAN LAW) .................................................................................. 219

COUNT III  FRAUDULENT CONCEALMENT (BASED ON MICHIGAN LAW) ................................................................. 220

    O.    Claims Brought on Behalf of the Minnesota Class........................ 228

COUNT I  VIOLATION OF THE MINNESOTA PREVENTION OF
    CONSUMER FRAUD ACT  (MINN. STAT. § 325F.68, *ET
    SEQ.*)........................................................................................ 228

COUNT II  BREACH OF CONTRACT (BASED ON MINNESOTA
    LAW).................................................................................... 232

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
    MINNESOTA LAW) ............................................................ 234

    P.    Claims Brought on Behalf of the Missouri Class .......................... 241

COUNT I  VIOLATIONS OF THE MISSOURI MERCHANDISING
    PRACTICES ACT (MO. REV. STAT. §§ 407.010, *ET SEQ.*) ................ 241

COUNT II  BREACH OF CONTRACT (BASED ON MISSOURI
    LAW).................................................................................... 245

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
    MISSOURI LAW)................................................................. 246

    Q.    Claims Brought on Behalf of the Montana Class .......................... 254

COUNT I  VIOLATION OF MONTANA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION ACT OF
    1973 (MONT. CODE ANN. § 30-14-101, *ET SEQ.*) ............................... 254

COUNT II  BREACH OF CONTRACT (BASED ON MONTANA
    LAW).................................................................................... 258

COUNT III  FRAUD BY CONCEALMENT (BASED ON
    MONTANA LAW) ............................................................... 259

    R.    Claims Brought on Behalf of the Nevada Class ........................... 267

COUNT I  VIOLATIONS OF THE NEVADA DECEPTIVE TRADE
    PRACTICES ACT (NEV. REV. STAT. §§ 598.0903, *ET SEQ.*) ............ 267

COUNT II  BREACH OF CONTRACT (BASED ON NEVADA
    LAW).................................................................................... 271

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
    NEVADA LAW)................................................................... 272

S.      Claims Brought on Behalf of the New Jersey Class ...................... 279

COUNT I  VIOLATIONS OF THE NEW JERSEY CONSUMER
FRAUD ACT (N.J.S.A.. §§ 56:8-1, *ET SEQ*.)........................................... 279

COUNT II  BREACH OF CONTRACT  (BASED ON NEW JERSEY
LAW).................................................................................................. 283

COUNT III  FRAUDULENT CONCEALMENT (BASED ON NEW
JERSEY LAW)..................................................................................... 284

T.      Claims Brought on Behalf of the New York Class ........................ 291

COUNT I  VIOLATIONS OF NEW YORK GENERAL BUSINESS
LAW § 349 (N.Y. GEN. BUS. LAW § 349) ........................................... 291

COUNT II  VIOLATIONS OF NEW YORK GENERAL BUSINESS
LAW § 350 (N.Y. GEN. BUS. LAW § 350) ........................................... 295

COUNT III  BREACH OF CONTRACT (BASED ON NEW YORK
LAW).................................................................................................. 299

COUNT IV  FRAUDULENT CONCEALMENT (BASED ON NEW
YORK LAW)........................................................................................ 300

U.      Claims Brought on Behalf of the North Carolina Class.................. 307

COUNT I  VIOLATIONS OF THE NORTH CAROLINA UNFAIR
AND DECEPTIVE ACTS AND PRACTICES ACT (N.C.
GEN. STAT. §§ 75-1.1, *ET SEQ*.) ........................................................ 307

COUNT II  BREACH OF CONTRACT (BASED ON NORTH
CAROLINA LAW) ............................................................................... 311

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
NORTH CAROLINA LAW) .................................................................. 313

V.      Claims Brought on Behalf of the Ohio Class.................................. 320

COUNT I  VIOLATIONS OF THE CONSUMER SALES
PRACTICES ACT (OHIO REV. CODE §§ 1345.01, *ET SEQ*.)............. 320

COUNT II  BREACH OF CONTRACT  (BASED ON OHIO LAW) .............. 324

COUNT III  FRAUDULENT CONCEALMENT (BASED ON OHIO
LAW) .................................................................................. 325

    W.    Claims Brought on Behalf of the Pennsylvania Class ................... 333

COUNT I  VIOLATIONS OF THE PENNSYLVANIA UNFAIR
TRADE PRACTICES AND CONSUMER PROTECTION
LAW (73 P.S. §§ 201-1, *ET SEQ.*) ............................................ 333

COUNT II  BREACH OF CONTRACT  (BASED ON
PENNSYLVANIA LAW) ........................................................ 337

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
PENNSYLVANIA LAW) ........................................................ 338

    X.    Claims Brought on Behalf of the Tennessee Class ........................ 346

COUNT I  VIOLATIONS OF THE TENNESSEE CONSUMER
PROTECTION ACT (TENN. CODE ANN. §§ 47-18-101, *ET
SEQ.*) .................................................................................. 346

COUNT II  BREACH OF CONTRACT  (BASED ON TENNESSEE
LAW) .................................................................................. 350

COUNT III  FRAUD BY CONCEALMENT (BASED ON
TENNESSEE LAW) ............................................................... 351

    Y.    Claims Brought on Behalf of the Texas Class ............................... 359

COUNT I  VIOLATIONS OF THE DECEPTIVE TRADE
PRACTICES ACT (TEX. BUS. & COM. CODE §§ 17.41, *ET
SEQ.*) .................................................................................. 359

COUNT II  BREACH OF CONTRACT (BASED ON TEXAS LAW) ............. 359

COUNT III  FRAUD BY CONCEALMENT (BASED ON TEXAS
LAW) .................................................................................. 361

    Z.    Claims Brought on Behalf of the Utah Class ................................. 368

COUNT I  VIOLATIONS OF THE UTAH CONSUMER SALES
PRACTICES ACT (UTAH CODE ANN. §§ 13-11-1, *ET SEQ.*) ............ 368

COUNT II  BREACH OF CONTRACT (BASED ON UTAH LAW) ............... 373

COUNT III FRAUDULENT CONCEALMENT (BASED ON UTAH
LAW) ................................................................................. 374

    AA. Claims Brought on Behalf of the Virginia Class ........................... 381

COUNT I VIOLATIONS OF THE VIRGINIA CONSUMER
PROTECTION ACT (VA. CODE ANN. §§ 59.1-196, *ET
SEQ.*) ................................................................................. 381

COUNT II BREACH OF CONTRACT (BASED ON VIRGINIA
LAW) ................................................................................. 386

COUNT III FRAUD BY CONCEALMENT (UNDER VIRGINIA
LAW) ................................................................................. 387

    BB. Claims Brought on Behalf of the Washington Class ..................... 395

COUNT I VIOLATION OF THE WASHINGTON CONSUMER
PROTECTION ACT (WASH. REV. CODE ANN.
§§ 19.86.010, *ET SEQ.*) ................................................ 395

COUNT II BREACH OF CONTRACT (BASED ON
WASHINGTON LAW) ................................................. 399

COUNT III FRAUDULENT CONCEALMENT (BASED ON
WASHINGTON LAW) ................................................. 400

    CC. Claims Brought on Behalf of the West Virginia Class .................. 407

COUNT I VIOLATIONS OF THE WEST VIRGINIA CONSUMER
CREDIT AND PROTECTION ACT (W. VA. CODE §§ 46A-
1-101, *ET SEQ.*) ....................................................... 407

COUNT II BREACH OF CONTRACT (BASED ON WEST
VIRGINIA LAW) ......................................................... 408

COUNT III FRAUDULENT CONCEALMENT (BASED ON WEST
VIRGINIA LAW) ......................................................... 409

    DD. Claims Brought on Behalf of the Wisconsin Class ...................... 417

COUNT I VIOLATIONS OF THE WISCONSIN DECEPTIVE
TRADE PRACTICES ACT (WIS. STAT. § 110.18) .............................. 417

COUNT II  BREACH OF CONTRACT (BASED ON WISCONSIN
LAW) ................................................................................... 421

COUNT III  FRAUDULENT CONCEALMENT (BASED ON
WISCONSIN LAW) ............................................................ 422

REQUEST FOR RELIEF ................................................................. 429

DEMAND FOR JURY TRIAL ......................................................... 430

Plaintiffs Jason Counts, Donald Klein, Oscar Zamora, Brandon J. Stone, Jason Silveus, John Miskelly, Thomas Hayduk, Joshua Hurst, and Joshua Rodriguez, individually and on behalf of all others similarly situated (the "Class"), allege the following based upon the investigation of counsel, the review of scientific papers, and the investigation of experts:

## I.   INTRODUCTION

1.     This is what GM promised:



2.     This is not what GM delivered.

3.     In the wake of the major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that turns off emissions controls when the vehicles are not being tested, reports and vehicle testing now indicate that General Motor's (GM) so called "Clean Diesel"

- 1 -

vehicle, the Chevrolet Cruze (Cruze), emits far more pollution on the road than in lab tests and that these vehicles exceed federal and state emission standards.  Real world testing has recently revealed that these vehicles emit dangerous oxides of nitrogen (NOx) at levels ***many times higher than (i) their gasoline counterparts, (ii) what a reasonable consumer would expect from a "Clean Diesel," and (iii) United States Environmental Protection Agency maximum emissions standards.*** The GM "Clean Diesel" turns out to be far from "clean."

4.     Diesel engines pose a difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions. Compared to gasoline engines, diesel engines generally produce greater torque, low-end power, better drivability and much higher fuel efficiency.  But these benefits come at the cost of much dirtier and more harmful emissions.

5.     One by-product of diesel combustion is NOx, which generally describes several compounds comprised of nitrogen and oxygen atoms.  These compounds are formed in the cylinder of the engine during the high temperature combustion process.  NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone. Exposure to these pollutants has been linked with serious health dangers, including serious respiratory illnesses and premature death due to respiratory-related or cardiovascular-related effects.  The United States Government, through the

- 2 -

Environmental Protection Agency (EPA), has passed and enforced laws designed to protect United States citizens from these pollutants and certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations.

6.      In order to produce a diesel engine that has desirable torque and power characteristics, good fuel economy, and emissions levels low enough to meet the stringent European and United States governmental emission standards, GM developed a diesel engine for the Cruze.

7.      In order to appeal to environmentally conscious consumers, GM marketed its Cruze diesel technology as a process that ensured emissions resulted in a "clean diesel" and that its emissions were "below strict U.S. environmental standards. The Cruze's top competitor is the Volkswagen Jetta TDI.

8.      These representations are deceptive and false. GM has programmed its Cruze to turn off or otherwise limit the effectiveness of the emission reduction systems during driving conditions below 50ºF and above 85ºF, and emissions exceed U.S. limits by 1.8 to 13.8 times in other real-world driving conditions.

9.      Recently, a German environmental group issued a report indicating that GM's Opel model uses a device to sense when a vehicle is undergoing emissions testing but that in normal driving conditions the Opel emits NOx at levels that far exceed European emissions standards.

10.     On information and belief, given GM's ownership of Opel and its similarity to the Cruze, the technology platform in both vehicles is substantially the same.

11.     Testing has revealed that GM's Opel vehicle does not meet emission standards in virtually *all* real world driving conditions.  In virtually every road test at a variety of speeds and temperatures, the emissions exceeded U.S. emissions standards.

12.     Testing also reveals that GM intentionally defeats emissions controls when the Opel is on the road.  The drastic change in emission controls at high and low speeds is indicative of the use of a defeat device.  This contrast demonstrates that GM has programmed its emission systems to reduce effectiveness or turn off altogether when the vehicle is on the road.  And this means that when GM cars are tested in the laboratory, they use a defeat device to obtain test results that appear to pass emissions standards.

13.     A "defeat device" as defined by the EPA means an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions that may reasonably be expected to be encountered in normal use.   40 C.F.R. § 86.004-2.  Thus, GM has perpetrated a gross deception on Plaintiffs and members of the proposed Class, who GM told were buying low-emission, efficient, Earth-friendly vehicles.

- 4 -

14.     GM manufactures, designs, markets, sells, and leases the Cruze "Clean Diesel" vehicle as if it were a "reduced emissions" car that complies with all applicable regulatory standards, when in fact, this GM vehicle is not "clean diesel" and emits more pollutants than allowed by federal and state laws—and far more than their gasoline fueled counterparts and far more than what a reasonable consumer would expect from a "Clean Diesel".

15.     During the week of May 9, 2016, GM's Opel division announced it would recall cars in Germany because of the German governments' finding that real-world testing produced higher NOx emissions than laboratory testing.  The list of cars deemed by the German government to have excessive NOx emissions includes GM's Chevy Cruze 2.0 and GM's Opel Zafira.

16.     GM never disclosed to consumers that its Cruze diesel engines may be "clean" diesels in very limited circumstances, but are "dirty" diesels under most driving conditions.  GM never disclosed that it prioritizes engine power and profits over people.  GM never disclosed that its vehicle's emissions materially exceeded the emissions from gasoline powered vehicles, that the emissions exceeded what a reasonable consumer would expect from a "Clean Diesel," and that its vehicle's emissions materially exceeded applicable emissions limits in real world driving conditions.

- 5 -

17.     Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of the Chevy Cruze.  Plaintiffs seek damages and equitable relief for GM's misconduct related to the design, manufacture, marketing, sale, and lease of Cruze vehicles with unlawfully high emissions, as alleged in this Complaint.

## II.     JURISDICTION

18.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.     VENUE

19.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiffs Jason Counts and Donald Klein purchased their cars in this District. Moreover, GM is headquartered in this District, and GM has marketed, advertised, sold, and leased the Cruze within this District.

## IV.     PARTIES

A.     **Plaintiffs**

20.     Plaintiff Jason Counts (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan, domiciled in Vassar, Michigan.  On or about February 8, 2014, Plaintiff purchased a new 2014 Chevrolet Cruze Diesel (for the purpose of

- 6 -

this paragraph, the "Affected Vehicle"), from Sundae Chevrolet, Inc. in Grand Ledge, Michigan. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy. Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for

- 7 -

the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions. Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

21.    Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

22.    Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

23.    Plaintiff Donald Klein (for the purpose of this paragraph, "Plaintiff") is a citizen of Michigan domiciled in Fenton, Michigan. On or about April 18,

2014, Plaintiff purchased a new 2014 Chevrolet Cruze Diesel (for the purpose of this paragraph, the "Affected Vehicle"), from Vic Canever Chevrolet in Fenton, Michigan.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law.  GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.  Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM.  Plaintiff recalls that the

advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions.  Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

24.    Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

25.    Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

26.     Plaintiff Oscar Zamora (for the purpose of this paragraph, "Plaintiff") is a citizen of California domiciled in Los Angeles, California.  In 2015, Plaintiff purchased a new 2014 Chevrolet Cruze Diesel (for the purpose of this paragraph, the "Affected Vehicle"), from a dealership in Santa Barbara, California.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law.  GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.  Plaintiff selected and ultimately purchased his vehicle, in part,

- 11 -

because of the Clean Diesel system, as represented through advertisements and representations made by GM. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions. Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

27.    Plaintiff Brandon J. Stone (for the purpose of this paragraph, "Plaintiff") is a citizen of Arizona domiciled in Maricopa, Arizona. On or about June 15, 2015, Plaintiff purchased a new 2014 Chevrolet Cruze Diesel (for the purpose of this paragraph, the "Affected Vehicle"), from Steve Schmidt-Brubaker, Inc. in Litchfield, Illinois. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many

- 12 -

multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law. GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy. Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal

driving conditions. Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

28. Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

29. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

30. Plaintiff Jason Silveus (for the purpose of this paragraph, "Plaintiff") is a citizen of Florida domiciled in Largo, Florida. On or about May 2014, Plaintiff purchased a new Chevrolet Cruze (for the purpose of this paragraph, the "Affected Vehicle"), from Maher Chevrolet in St. Petersburg, Florida. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or

- 14 -

limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law.  GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.  Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline

vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions. Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

31.     Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

32.     Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

33.     Plaintiff John Miskelly (for the purpose of this paragraph, "Plaintiff") is a citizen of Maryland domiciled in Baltimore, Maryland. On or about June 15, 2015, Plaintiff purchased a new 2014 Chevrolet Cruze Diesel (for the purpose of this paragraph, the "Affected Vehicle"), from Jerry's Chevrolet & Mitsubishi in Parkville, Maryland. Plaintiff purchased, and still owns, this vehicle. Unknown to

- 16 -

Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law.  GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.  Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff

- 17 -

contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions.  Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

34.     Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

35.     Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

36.     Plaintiff Thomas Hayduk (for the purpose of this paragraph, "Plaintiff") is a citizen of New York domiciled in Cicero, New York.  On or about February 14, 2015, Plaintiff purchased a used 2014 Chevrolet Cruze Diesel (for the purpose of this paragraph, the "Affected Vehicle"), from Sun Auto Warehouse in

Cicero, New York.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law.  GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.  Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.

- 19 -

None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions.  Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

37.     Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

38.     Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

39.     Plaintiff Joshua Hurst (for the purpose of this paragraph, "Plaintiff") is a citizen of Ohio, domiciled in Massillom, Ohio.  On or about October 15th 2015, Plaintiff purchased a new 2014 Chevrolet Cruze Diesel (for the purpose of

this paragraph, the "Affected Vehicle") from Progressive Chevrolet in Massillon, Ohio.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law.  GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.  Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM.  Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for

- 21 -

the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions. Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

40. Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

41. Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

42. Plaintiff Joshua Rodriguez (for the purpose of this paragraph, "Plaintiff") is a citizen of Texas domiciled in Granbury, Texas. On or about

August 13, 2013, Plaintiff purchased a new 2014 Chevrolet Cruze Diesel (for the purpose of this paragraph, the "Affected Vehicle"), from a seller in Fort Worth, Texas.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an emissions system that turned off or limited its emissions reduction system during normal driving conditions and emitted pollutants such as NOx at many multiples of emissions emitted from gasoline-powered vehicles, at many times the level a reasonable consumer would expect from a "Clean Diesel", and at many multiples of that allowed by federal law.  GM's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Cruze without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  GM knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.  Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by GM.  Plaintiff recalls that the

010611-11  883628 V1

advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that GM had designed part of the emissions reduction system to turn off during normal driving conditions.  Had GM disclosed this design, and the fact that the Cruze actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

43.    Plaintiff and each Class member has suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the Chevrolet Cruze's Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

44.    Neither GM nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the comparatively and unlawfully high emissions and/or defective nature of the Chevrolet Cruze's Clean Diesel engine system of the Affected Vehicles prior to purchase.

B.    **Defendant**

    1.    **General Motors**

45.    Defendant General Motors LLC (GM) is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan.  The sole member and owner of General Motors LLC is General Motors Holding LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.

46.    GM, through its various entities including Chevrolet, designs, manufactures, markets, distributes and sell GM automobiles in this District and multiple other locations in the United States and worldwide.  GM and/or its agents designed, manufactured, and installed the GM engine systems in the Chevy Cruze. GM also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V.    FACTUAL ALLEGATIONS

A.    **The Environmental Challenges Posed by Diesel Engines and the United States Regulatory Response Thereto**

47.    The United States Government, through the Environmental Protection Agency (EPA), has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to

- 25 -

cause disease in humans.  Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations.

48.     The U.S. Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.

49.     There is a very good reason that these laws and regulations exist, particularly as regards to vehicles with diesel engines:  In 2012, the World Health Organization declared diesel vehicle emissions to be carcinogenic, and about as dangerous as asbestos.

50.     Diesel engines pose a particularly difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions:  the greater the power and fuel efficiency, the dirtier and more harmful the emissions.

51.     Instead of using a spark plug to combust highly refined fuel with short hydrocarbon chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high temperatures and pressures, which causes the diesel to spontaneously combust.  This causes a more powerful compression of the pistons, which produces greater engine torque (that is, more power).

- 26 -

52.     The diesel engine is able to do this both because it operates at a higher compression ratio than a gasoline engine and because diesel fuel contains more energy than gasoline.

53.     But this greater energy and fuel efficiency comes at a cost:  diesel produces dirtier and more dangerous emissions.  One by-product of diesel combustion is oxides of nitrogen (NOx), which include a variety of nitrogen and oxygen chemical compounds that only form at high temperatures.

54.     NOx is a generic term for the mono-nitrogen oxides NO and NO2 (nitric oxide and nitrogen dioxide), which are predominantly produced from the reaction of nitrogen and oxygen gases in the air during combustion.  NOx is produced by the burning of all fossil fuels, but is particularly difficult to control from the burning of diesel fuel.  NOx is a toxic pollutant, which produces smog and a litany of environmental and health problems.  NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.  NOx can

cause breathing problems, headaches, chronically reduced lung function, eye irritation, and corroded teeth.  It can indirectly affect humans by damaging the ecosystems they rely on.

55.     Diesel fuel is traditionally denser than gasoline, and the syrupy fuel contains longer hydrocarbon chains, which tend to produce a more efficient vehicle.  In fact, diesel engines can convert over 45% of diesel's chemical energy into useful mechanical energy, whereas gasoline engines convert only 30% of gasoline's chemical energy into mechanical energy.[1]  Though more efficient, diesel engines come with their own set of challenges, as emissions from diesel engines can include higher levels of NOx and particulate matter (PM) or soot than emissions from gasoline engines due to the different ways the different fuels combust and the different ways the resulting emissions are treated following combustion.  One way NOx emissions can be reduced is by adjusting the compression and temperature, but that in turn produces particulate matter (PM), a similarly-undesirable hydrocarbon-based emission.  Another way NOx emissions can be reduced is through exhaust gas recirculation or "EGR", whereby exhaust gases are routed back into the intake of the engine and mixed with fresh incoming air.  Exhaust gas recirculation lowers NOx by reducing the available oxygen and

---

[1] Jack Ewing, Volkswagen Engine-Rigging Scheme Said to Have Begun in 2008, N.Y. Times (Oct. 5, 2015), http://www.nytimes.com/20 IS/1 O/OS/business/ engine-shortfall-pushedvolkswagen-to-evade-emissions-testing.html.

010611-11  883628 V1

by reducing maximum combustion temperatures; however, EGR can also lead to an increase in PM as well. Another way NOx emissions can be reduced is through expensive exhaust gas after-treatment devices, primarily, catalytic converters, that use a series of chemical reactions to transform the chemical composition of a vehicle's NOx emissions into less harmful, relatively inert, and triple bonded nitrogen gas (N2) and carbon dioxide (CO2).

56.     Diesel engines thus operate according to this trade-off between price, NOx, and PM, and for the EPA to designate a diesel car as a "clean" vehicle, it must produce both low PM and low NOx. In 2000, the EPA announced stricter emission standards requiring all diesel models starting in 2007 to produce drastically less NOx than years prior. But it was of utmost importance for GM to achieve (or at least appear to achieve) this "impossible" goal, for it could not legally sell a single vehicle that failed to comply with the governmental emission regulations. Before introducing an Affected Vehicle into the U.S. stream of commerce (or causing the same), GM was required to first apply for, and obtain, an EPA-administered COC, certifying that the vehicle comported with the emission standards for pollutants enumerated in 40 C.F.R. §§ 86.1811-04, 86.1811-09, and 86.1811-10. The CAA expressly prohibits automakers, like GM, from introducing a new vehicle into the stream of commerce without a valid EPA COC. *See* 42 U.S.C. § 7522(a)(1). Moreover, vehicles must be accurately described in the COC

application "in all material respects" to be deemed covered by a valid COC.  *See*
40 C.F.R. §§ 86.1848-10(c)(6).  California's emission standards are even more
stringent than those of the EPA.  California's regulator, CARB, requires a similar
application from automakers to obtain an EO, confirming compliance with
California's emission regulations, before allowing the vehicle onto California's
roads.

B.    **"Dieselgate"**

57.    On September 18, 2015, the United States Environmental Protection
Agency (EPA) issued a notice of violation of the Clean Air Act to German
automaker Volkswagen Group after it was found that Volkswagen had
intentionally programmed turbocharged direct injection (TDI) diesel engines to
activate certain emissions controls only during laboratory emissions testing.  The
programming caused the vehicles' nitrogen oxide (NOx) output to meet U.S.
standards during regulatory testing but emit up to 40 times more NOx in real-world
driving.  Volkswagen put this programming in about 11 million cars worldwide,
and in 500,000 in the United States, during model years 2009 through 2015.

58.    The findings stemmed from a study on emissions discrepancies
between European and U.S. models of vehicles commissioned in 2014 by the
International Council on Clean Transportation (ICCT), summing up the data from
three different sources on 15 vehicles.  Among the research groups was a group of

- 30 -

five scientists at West Virginia University, who detected additional emissions during live road tests on two out of three diesel cars.  ICCT also purchased data from two other sources. The new road testing data and the purchased data were generated using Portable Emissions Measurement Systems (PEMS) invented by an EPA engineer in 1995.  The findings were provided to the California Air Resources Board (CARB) in May 2014.

59.     Several agencies and NGO's have been investigating other diesel manufacturers and have found, as outlined below, that most vehicles are not meeting the even less stringent European emission standards.  The EPA investigation has expanded beyond Volkswagen and includes 28 diesel powered vehicles made by BMW, Chrysler, GM, Land Rover, and Mercedes-Benz.

C.     **GM's Diesel Technology**

60.     Car manufacturers have struggled to produce diesel engines that have high power and strong fuel efficiency but also cleaner emissions.  Removing NOx from the untreated exhaust is difficult, and diesel car makers have reacted by trying to remove NOx from the car's exhaust using catalysts.

61.     GM's response to the challenge has been the GM "Cruze Clean Turbo Diesel" engine and the Cruze.  GM touted the Cruze as "GM's cleanest diesel engine ever," and internal marketing materials explain that the Cruze was

- 31 -

"[d]esigned to compete head-to-head with German diesels" such as the VW Jetta TDI.

62.    In order to successfully grow the U.S. diesel market and meet its ambitious objectives, it was critical that GM develop the technology to maintain the efficient, powerful performance of a diesel, while drastically reducing NOx emissions to comply with the CAA and state emission standards.

D.    **GM Advertised and Promoted the Chevrolet Cruze as a "Clean Diesel"**

63.    To induce consumers to purchase a Cruze vehicle, GM marketed the Cruze as environmentally friendly and fuel efficient.

64.    GM advertising is widely disseminated throughout the United States. It includes, among other things, televised advertisements, online social media campaigns, press releases and public statements (claiming the Cruze vehicle complies with EPA emissions standards), print advertising, brochures and other materials distributed to dealers and distributors, and strategic product placement.

1.    **GM advertised and promoted Cruze as clean.**

65.    GM's advertisements, promotional campaigns, and public statements represented that the Affected Vehicles had high fuel economy, low emissions, reduced NOx by 90%, had lower emissions than comparable diesel vehicles, and had lower emissions than other comparable vehicles.  For example:

- 32 -



2

      66.    Another example is an advertisement touting "decreasing emissions":

3

---

   [2] http://www.chevrolet.com/content/dam/Chevrolet/northamerica/usa
/nscwebsite/en/Home/Vehicles/
Cars/2014_Cruze_Gas/Model_overview/01_images/2014-chevrolet-cruze-model-
overview-diesel-cnt-well-1-980x531-06.png.

   [3] http://media.chevrolet.com/content/Pages/news/us/en/2013/Jul/0731-cd-
variable-
swirl/_jcr_content/rightpar/imagewithmodal/image.resize.maxw_570.jpg/1375220
652110.jpg.



67.    Another example where GM promised clean diesel: [4]



---

[4] http://www.torquenews.com/sites/default/files/image-119/%5Btitle-raw%5D/dieselmyths_v2.jpg.

2.   **GM advertised and promoted the Chevrolet Cruze as meeting and exceeding compliance with U.S. emissions standards in all 50 states.**

68.   GM expressly markets the Affected Vehicles as Clean Diesel vehicles, with registration approvals in all 50 states.  For example:



**CLEAN DIESEL TECHNOLOGY**  The turbocharged engine in Cruze Clean Turbo Diesel generates at least 90% less nitrogen oxide and particulate emissions when compared to previous-generation diesels. In fact, because of technologies like exhaust gas recirculation, selective catalyst reduction, particulate filter and advanced fuel systems, Cruze Diesel emissions are below strict U.S. environmental standards.

3.   **GM advertised and promoted itself as a manufacturer of high-quality vehicles.**

69.   A December 2013 New GM testimonial advertisement stated that "GM has been able to deliver a quality product that satisfies my need for dignity and safety."

70.    GM proclaims on its website, https://www.gm.com, that it is "driven to maintain the highest quality standards" and that "Quality and safety are part of our very foundation:"[5]



**OUR COMMITMENT**

**SAFETY & QUALITY**

We assign the highest priority to matters that impact our customers' well-being and quality of life. As a result, General Motors is driven to maintain the highest quality standards. Quality and safety are part of our very foundation. Safety is something we will never compromise.

71.    On the same website in 2013, New GM stated:  "At GM, it's about getting everything right for our customers – from the way we design, engineer and manufacture our vehicles, all the way through the ownership experience."[6]

**Quality Inside and Out**

Developing high-quality cars, crossovers and trucks begins with the customer in mind.

At GM, it's about getting everything right for our customers – from the way we design, engineer and manufacture our vehicles, all the way through the ownership experience.

---

[5] http://www.gm.com/company/about-gm.html.

[6] https://www.gm.com/vision/quality_safety/it_begins_with_ a_commitment_to_Quality.

- 36 -

4.    **GM advertised and promoted itself as a company that cares about the environment.**

72.    GM claims that it is "committed to addressing the global challenge of climate change head on" Touting its "ongoing commitment to climate action, its "support for a strong Paris climate negotiations outcome," and its "hope that other companies will join the growing business community committed to addressing this important global issue," GM dares to call itself a "proud U.S. business for climate action":



7

E.    **The GM Deception**

73.    In the wake of a major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that manipulates emissions controls (called "defeat devices"),[8] scientific literature and

_____

[7] http://www.gm.com/mol/dec-14-joining-the-pledge.html.

[8] The EPA's Notice of Violation ("NOV") to Volkswagen Group of America, Inc. can be found at: *http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf*. As detailed in the EPA's Notice of Violation ("NOV"), software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing

reports and testing indicate that GM's so called Clean Diesel vehicles emit far more pollution on the road than in lab tests.  Indeed, reports by scientists and governmental agencies indicate that virtually all diesel cars are failing to meet European emissions standard which are lower than U.S. standards.  On information and belief, and based on testing, it is not plausible that manufacturers such as GM would fail to meet European standards but be able to meet U.S. standards.

74.    A study conducted by TNO for the Dutch Ministry of Infrastructure and the Environment confirms that, in real world testing, the GM Opel emits NOx at levels much higher than in controlled dynamometer tests and much higher than the "Euro 6 standard," which is less stringent than the U.S. standard.

75.    The TNO test found that in real-world driving conditions all of the vehicles tested failed to meet the European emissions requirements, and on average these vehicles were at eight times the limit.  Included in the tested vehicles was GM's Opel Zafira 1.6 Liter engine.  On information and belief, the core technologies of the Opel design are substantially similar to the Chevy Cruze and it is not logical that GM would be able to pass the stricter U.S. emission standard but fail the less restrictive European standard.

---

official emissions testing and turns full emissions controls on only during the test. But otherwise, while the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit NOx at up to 40 times the standard allowed under United States laws and regulations.  Volkswagen has admitted to installing a defeat device in its diesel vehicles.

76.     More specifically, the May 2015 TNO Report found that the Opel's tailpipe NOx emissions ranged from 150 to 600 mg/km for steady highway driving and 200 to 700 mg/km for urban and mixed driving; for reference, the Euro 6 max, which is less stringent than U.S. standards, is 80 mg/km.  NOx emissions as measured on a chassis dynamometer according to the certification procedure were 53 and 65 mg/km, well below the standard. In other words, the vehicle emitted significantly more NOx on real-world test trips on the road than during a type approval test in the laboratory, suggesting that the vehicle senses when it is tested in a laboratory and employs a device to cheat.

77.     The following graph depicts the Opel's passing the laboratory test (blue bar) and failing all real-world tests:



Figure 9: NOx emissions per driving cycle.

*CADC with hot start, for veh: H2 to E6 motorway part 130 km/h was used, for veh: J1 to O1 motorway part 150 km/h was used.
**The bars in the figure that are shaded are tests with WLTP road load instead of NEDC road load.

Vehicles K1 and K2 are Opels.

78.    The fact that GM's Opel passed the dynamometer test in all tests, but failed the real world test, suggests that, like VW, GM is implementing a "defeat device."  As discussed below, plaintiffs' dynamometer testing indicates that GM employs a defeat device in its diesels.

79.    TNO further remarked:  "It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much].  It demonstrates that the settings of the engine, the EGR and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice.  In other words: ***In most circumstances arising in normal situations on the road, the***

*systems scarcely succeed in any effective reduction of NOx emissions*."  TNO Report at 6 (emphasis added).  The lack of any "effective reduction of NOx emissions" is a complete contradiction of GM's claim that its vehicles are "Earth-Friendly," produce "harmless nitrogen and oxygen," "Reduce[] Nitrogen Oxides by 80%," are "For the air we breathe," or "significantly reduce[] greenhouse gases."

80.    An additional study by the British Department for Transport from April 2016 employed real world driving studies with portable emissions analyzers to test on road emissions. The study found high emissions in both the Vauxhall Insignia and Vauxhall Mokka (Vauxhall is the name used by Opel in the United Kingdom). Real world emissions of these vehicles were found to be approximately 750 mg/km and 400 mg/km for the Insignia and Mokka, respectively. These emissions are well above the Euro 6 standard of 80 mg/km.



Figure 5-6  Real driving NOx emissions - Euro 6 vehicles (note: direct comparisons should not be made between vehicles as test conditions varied).

81.    A study by the French Ministry of the Environment found similarly high on-road emissions and concluded that further investigation was required for several manufacturers, including Opel.

82.    Emissions Analytics is a U.K. company, which says that it was formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles."  With regard to its recent on-road emissions testing, the company explains:  "[I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are four times above the official level, determined in the laboratory.  Real-world emissions of carbon dioxide are

- 42 -

almost one-third above that suggested by official figures.  For car buyers, this means that fuel economy on average is one quarter worse than advertised.  This matters, even if no illegal activity is found."

83.    Testing by the Institute for Transport Studies in the UK in 2015 also confirmed that vehicles made by all manufacturers, including GM, exceeded the more lax European NOx standards:



84.    Emissions Analytics, a UK based testing company, developed an Air Quality Index that rates the NOx compliance of vehicles.  An "A" is a passing grade.  Among the vehicles tested were Vauxhall models.  Vauxhall is a subsidiary

of GM and its Corsa and Astra models are similar to the Chevy Cruze.  Both

models failed to meet the laxer European NOx standard.



85.     Recent testing by the German Federal Department of Motor Vehicles

has revealed that certain GM vehicles, in addition to vehicles produced by other

manufacturers, had "conspicuously high NOx emissions that apparently could not

be sufficiently explained from a technical point of view."  The findings, announced

April 22, 2016, have led to the "voluntary" recall of 630,000 vehicles in Europe,

including GM vehicles.

86.     Shortly after the VW scandal, GM announced it was halting

production of the Chevy Cruze.

87.     Plaintiffs have tested the Cruze using a Portable Emissions

Measurement System ("PEMS").  Testing revealed that the Cruze fails to meet

U.S. emissions standards as promised.  The U.S. standard is 70 mg/mile.  In

highway driving the Cruze averaged 128 mg/mile with a high of 557 mg/mile.  At

speeds over 70 mph, the average was 231 mg/mile.  That's 1.8 to 8 times the

federal standard.  At stop-and-go driving the average was 182 mg/mile with a

maximum of 689 mg/mile, or 3.6 to 13.8 times the federal standard. When tested at

temperatures below 50ºF, the NOx was 689 mg/mile and it appears the emissions

control system stops working.  The same is true at temperatures over 85ºF, where

NOx rates were tested and ran at 450 to 550 mg/mile.

F.     **The Damage**

88.     NOx contributes to ground-level ozone and fine particulate matter.

According to the EPA, "Exposure to these pollutants has been linked with a range

of serious health effects, including increased asthma attacks and other respiratory

illnesses that can be serious enough to send people to the hospital.  Exposure to

ozone and particulate matter have also been associated with premature death due to

respiratory-related or cardiovascular-related effects.  Children, the elderly, and

people with pre-existing respiratory disease are particularly at risk for health

effects of these pollutants."

89.     The EPA describes the danger of NOx as follows:

**Acid Rain** - $NO_x$ and sulfur dioxide react with other substances in the air to form acids which fall to earth as rain, fog, snow, or dry particles. Some may be carried by the wind for hundreds of miles. Acid rain damages forests; causes deterioration of cars, buildings, and historical monuments; and causes lakes and streams to become acidic and unsuitable for many fish.



**Water Quality Deterioration** - Increased nitrogen loading in water bodies, particularly coastal estuaries, upsets the chemical balance of nutrients used by aquatic plants and animals. Additional nitrogen accelerates "eutrophication," which leads to oxygen depletion and reduces fish and shellfish populations. $NO_x$ emissions in the air are one of the largest sources of nitrogen pollution to the Chesapeake Bay.





**Toxic Chemicals** - In the air, $NO_x$ reacts readily with common organic chemicals, and even ozone, to form a wide variety of toxic products, some of which may cause biological mutations. Examples of these chemicals include the nitrate radical, nitroarenes, and nitrosamines.

010611-11 883628 V1

**Ground-level Ozone (Smog)** - is formed when $NO_x$ and volatile organic compounds (VOCs) react in the presence of heat and sunlight. Children, the elderly, people with lung diseases such as asthma, and people who work or exercise outside are susceptible to adverse effects such as damage to lung tissue and reduction in lung function. Ozone can be transported by wind currents and cause health impacts far from the original sources. Millions of Americans live in areas that do not meet the health standards for ozone. Other impacts from ozone include damaged vegetation and reduced crop yields.





**Particles** - $NO_x$ react with ammonia, moisture, and other compounds to form nitric acid vapor and related particles. Human health concerns include effects on breathing and the respiratory system, damage to lung tissue, and premature death. Small particles penetrate deeply into sensitive parts of the lungs and can cause or worsen respiratory disease, such as emphysema and bronchitis, and aggravate existing heart disease.



**Global Warming** - One member of the $NO_x$ family, nitrous oxide, is a greenhouse gas. It accumulates in the atmosphere with other greenhouse gases causing a gradual rise in the earth's temperature. This will lead to increased risks to human health, a rise in the sea level, and other adverse changes to plant and animal habitat.

- 47 -

90.     GM will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their fuel efficiency.  As a result, even if GM is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle, and it will cause owners of Affected Vehicles to pay more for fuel while using their Affected Vehicles.

91.     Plaintiffs and members of the class paid a premium for a diesel Cruze, as GM charged more for its diesel car than a comparable gas car.  Depending on trim level, the premium was as much as $2,400.

92.     As a result of GM's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles are not "clean" diesels, emit more pollutants than do gasoline powered vehicles, and emit more pollutants than permitted under federal and state laws, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiffs and Class members known of the higher emissions at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the

vehicles than they did. Moreover, when and if GM recalls the Affected Vehicles and degrades the GM Clean Diesel engine performance and fuel efficiency in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency and increased wear on their cars' engines.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

93.    Class members had no way of knowing about GM's deception with respect to the comparatively and unlawfully high emissions of its GM Clean Diesel engine system in the Affected Vehicles. To be sure, GM continues to market the Affected Vehicles as "clean" diesels that have lower emissions than gasoline vehicles and also continues to claim that the Affected Vehicles comply with EPA emissions standards.

94.    Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that GM was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of the Affected Vehicles.

010611-11  883628 V1

95.     Plaintiffs and the other Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that GM did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that GM had concealed information about the true emissions of the Affected Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.  Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that GM valued profits over truthful marketing and compliance with law.

96.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Affected Vehicles.

B.     **Fraudulent Concealment Tolling**

97.     All applicable statutes of limitation have also been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

98.     Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the Affected Vehicles were far worse than represented, and of its disregard of law, GM falsely represented that the Affected Vehicles had emissions cleaner than their gasoline powered counterparts, complied with federal

and state emissions standards, that the diesel engines were "Clean," and that it was a reputable manufacturer whose representation could be trusted.

## C. Estoppel

99.    GM was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of emissions from the Affected Vehicles, and of those vehicles' emissions systems.

100.    GM knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the emissions systems, and the emissions, of the Affected Vehicles.

101.    Based on the foregoing, GM is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CLASS ALLEGATIONS

102.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class (collectively, the "Class"):

All persons who purchased or leased a Chevrolet Cruze ("Affected Vehicles").  Plaintiffs assert claims under the laws of each state set forth below.

103.    Excluded from the Class are individuals who have personal injury claims resulting from the high emissions in the GM Clean Diesel system of Affected Vehicles.  Also excluded from the Class are GM and its subsidiaries and

- 51 -

affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

104. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

105. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

106. **Numerosity**. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are at least thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from GM's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

107. **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact,

which predominate over any questions affecting individual Class members, including, without limitation:

a)      Whether GM engaged in the conduct alleged herein;

b)      Whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c)      Whether the GM Clean Diesel engine system in the Affected Vehicles emit pollutants at levels that do not make them "clean" diesels and that do not comply with U.S. EPA requirements;

d)      Whether GM knew about the comparatively and unlawfully high emissions and, if so, how long GM has known;

e)      Whether GM designed, manufactured, marketed, and distributed Affected Vehicles with defective or otherwise inadequate emission controls;

f)      Whether GM's conduct violates consumer protection statutes and constitutes breach of contract and fraudulent concealment as asserted herein;

g)      Whether Plaintiffs and the other Class members overpaid for their vehicles; and

h)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

- 53 -

108.  **Typicality**:  Federal Rule of Civil Procedure 23(a)(3):  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through GM's wrongful conduct as described above.

109.  **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

110.  **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against GM, so it would be impracticable for the members of the Classes to individually seek redress for GM's wrongful conduct. Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory

judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

A.     **Alabama State Claims**

## COUNT I

## VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE §§ 8-19-1, *ET SEQ.*)

111.   Plaintiffs (for purposes of all Alabama Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

112.   Plaintiffs bring this Count on behalf of the Alabama Class members.

113.   Plaintiffs and the Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

114.   Plaintiffs, the Class members, and GM are "persons" within the meaning of Ala. Code § 8-19-3(5).

115.   The Affected Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

116.   GM was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

117.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including:  "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."  Ala. Code § 8-19-5.

118.   Plaintiffs intend to assert a claim under the Alabama DTPA. Plaintiffs will make a demand in satisfaction of Ala. Code § 8-19-3 and may amend this Complaint to assert claims under the Alabama DTPA once the required 15 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Alabama DTPA.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON ALABAMA LAW)

119.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

120.   Plaintiffs bring this Count on behalf of the Alabama Class.

121.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the

- 56 -

Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

122.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and thus less valuable, than vehicles not equipped with the defective GM Clean Diesel engine system.

123.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall

include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON ALABAMA LAW)

124.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

125.   This claim is brought on behalf of the Alabama Class.

126.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

127.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant

- 58 -

defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

128.   GM knew these representations were false when made.

129.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

130.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

131.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM

- 59 -

intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

132.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts, and GM actively concealed these facts from Plaintiffs and Class members.

133.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

134.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and

- 60 -

sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

135. GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

136. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members. GM also had a duty to disclose because it made general affirmative representations

- 61 -

about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

137.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its

vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

138.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

139.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

140.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect

or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

141. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

142. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

143. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and

- 64 -

Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

B.    **Claims Brought on Behalf of the Arizona Class**

## COUNT I

## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT (ARIZONA REV. STAT. §§ 44-1521, *ET SEQ.*)

144.   Plaintiffs (for purposes of all Arizona Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

145.   Plaintiffs bring this Count on behalf of the Arizona Class members.

146.   The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. § 44-1522(A).  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected

Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

147.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

148.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

149.   GM's actions as set forth above occurred in the conduct of trade or commerce.

- 66 -

150. GM's deception, fraud, misrepresentation, concealment, suppression or omission of material facts were likely to and did in fact deceive reasonable consumers.

151. GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

152. GM knew or should have known that its conduct violated the Arizona Consumer Fraud Act.

153. GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

154. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that

these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

155.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

156.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

157.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

158.   Plaintiffs and the Class seek monetary relief against GM in an amount to be determined at trial.  Plaintiffs and the Class also seek punitive damages because GM engaged in aggravated and outrageous conduct with an evil mind.

010611-11  883628 V1

159.   Plaintiffs also seek attorneys' fees and any other just and proper relief available.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON ARIZONA LAW)

160.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

161.   Plaintiffs bring this Count on behalf of the Arizona Class.

162.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

163.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and thus less valuable, than vehicles not equipped with the defective GM Clean Diesel engine system.

164.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON ARIZONA LAW)

165.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

166.   This claim is brought on behalf of the Arizona Class.

167.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable

consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

168.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

169.   GM knew these representations were false when made.

170.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

171.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted

pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

172.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

173.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

010611-11  883628 V1

174.    Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

175.    GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

176.    GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

- 73 -

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

177.    GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells

the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

178.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

179.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

180.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have

taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

181. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

182. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of

- 76 -

which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

183.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

184.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

C.   **Claims Brought on Behalf of the California Class**

## COUNT I

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)

185.   Plaintiffs (for purposes of all California Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

186.   This claim is brought on behalf of the California Class members.

187.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

188.   GM's conduct, as described herein, was and is in violation of the UCL.  GM's conduct violates the UCL in at least the following ways:

i.   By failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions;

ii.   By selling and leasing Affected Vehicles that suffer from a defective emissions control system and that emit unlawfully high levels of pollutants under normal driving conditions;

iii.   By knowingly and intentionally concealing from Plaintiffs and the other Class members that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles suffer from a defective emissions control system and emit unlawfully high levels of pollutants under normal driving conditions;

iv.   By marketing Affected Vehicles as reduced emissions vehicles possessing functional and defect-free, EPA-compliant diesel engine systems;

vi.   By violating federal laws, including the Clean Air Act; and

vii.   By violating other California laws, including California consumer protection laws and California laws governing vehicle emissions and emission testing requirements.

- 78 -

189.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

190.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

191.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

192.   GM knew or should have known that its conduct violated the UCL.

193.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

010611-11  883628 V1

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

194.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

195.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

196.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their

Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

197.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

198.   GM's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain defective GM Clean Diesel engine systems that failed to comply with EPA and California emissions standards.

199.   Accordingly, Plaintiffs and the other Class members have suffered injury in fact, including lost money or property, as a result of GM's misrepresentations and omissions.

200.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary

disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code

§ 3345; and for such other as may be appropriate.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)

201.   Plaintiffs incorporate by reference all paragraphs as though fully set

forth herein.

202.   This claim is brought on behalf of the California Class.

203.   California Bus. & Prof. Code § 17500 states:  "It is unlawful for any

… corporation … with intent directly or indirectly to dispose of real or personal

property … to induce the public to enter into any obligation relating thereto, to

make or disseminate or cause to be made or disseminated … from this state before

the public in any state, in any newspaper or other publication, or any advertising

device, … or in any other manner or means whatever, including over the Internet,

any statement … which is untrue or misleading, and which is known, or which by

the exercise of reasonable care should be known, to be untrue or misleading."

204.   GM caused to be made or disseminated through California and the

United States, through advertising, marketing and other publications, statements

that were untrue or misleading, and which were known, or which by the exercise of

reasonable care should have been known to GM, to be untrue and misleading to

consumers, including Plaintiffs and the other Class members.

- 82 -

205.   GM has violated § 17500 because the misrepresentations and omissions regarding the functionality, reliability, environmental-friendliness, lawfulness, and safety of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

206.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of GM's unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Affected Vehicles, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of GM with respect to the functionality, reliability, environmental-friendliness, and lawfulness of the Affected Vehicles.  GM's representations turned out not to be true because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the Affected Vehicles are distributed with GM Clean Diesel engine systems that include defective emissions controls and a "Defeat Device".  Had Plaintiffs and the other Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

207.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of GM's business.  GM's wrongful conduct is part of a

- 83 -

pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

208.   Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class members any money GM acquired by unfair competition, including restitution and/or restitutionary disgorgement and for such other relief as may be appropriate.

## COUNT III

## BREACH OF CONTRACT
## (BASED ON CALIFORNIA LAW)

209.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

210.   Plaintiffs bring this Count on behalf of the California Class members.

211.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative

- 84 -

vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

212.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee. GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

213.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

010611-11  883628 V1

## COUNT IV

## FRAUDULENT CONCEALMENT
## (BASED ON CALIFORNIA LAW)

214.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

215.   This claim is brought on behalf of the California Class.

216.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

217.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

218.   GM knew these representations were false when made.

219.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

220.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

221.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat

- 87 -

Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

222.    The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

223.    Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

224.    GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its

representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

225.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

226.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of

- 89 -

the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

227. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would

hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

228.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

229.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

230.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered

- 91 -

by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

231.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

232.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

233.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

D.   **Claims Brought on Behalf of the Colorado Class**

## COUNT I

## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. §§ 6-1-101, *ET SEQ.*)

234.   Plaintiffs (for purposes of all Colorado Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

235.   Plaintiffs bring this Count on behalf of the Colorado Class members.

236.   Colorado's Consumer Protection Act (the "Colorado CPA") prohibits a person from engaging in a "deceptive trade practice," which includes knowingly making "a false representation as to the source, sponsorship, approval, or certification of goods," or "a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods."  Colo. Rev. Stat. § 6-1-105(1)(b), (e).  The Colorado CPA further prohibits "represent[ing] that goods … are of a particular standard, quality, or grade … if he knows or should know that they are of another," and "advertis[ing] goods … with intent not to sell them as advertised."  Colo. Rev. Stat. § 6-1-105(1)(g), (i).

237.   GM is a "person" under § 6-1-102(6) of the Colorado CPA, Col. Rev. Stat. § 6-1-101, *et seq.*

238.   Plaintiffs and Colorado Class members are "consumers" for the purpose of Col. Rev. Stat. § 6-1-113(1)(a) who purchased or leased one or more Affected Vehicles.

239.   In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, that the vehicles have a "Defeat Device," and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, GM engaged in unfair and deceptive trade practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; advertising the Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, GM's acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because GM fraudulently concealed the defective nature of the Affected Vehicles from consumers.

240.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction

- 94 -

system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

241.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

242.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

243.   GM knew or should have known that its conduct violated the Colorado CPA.

244.   GM's actions as set forth above occurred in the conduct of trade or commerce.

245.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

- 95 -

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

246.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

247.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

248.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their

Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

249.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

250.   Pursuant to Col. Rev. Stat. § 6-1-113, Plaintiffs and the Class seek monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiffs and each Class member.

251.   Plaintiffs and the Class also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT II

### BREACH OF CONTRACT
### (BASED ON COLORADO LAW)

252.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

253.   Plaintiffs bring this Count on behalf of the Colorado Class members.

254.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused

Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

255.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

256.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall

include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON COLORADO LAW)

257.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

258.   This claim is brought on behalf of the Colorado Class.

259.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

260.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant

defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

261.  GM knew these representations were false when made.

262.  The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

263.  GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

264.  As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM

intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

265.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

266.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

267.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and

- 101 -

sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

268.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

269.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members. GM also had a duty to disclose because it made general affirmative representations

- 102 -

about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

270.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its

vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

271.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

272.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

273.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect

or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

274.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

275.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

276.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and

Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

E.    **Claims Brought on Behalf of the Connecticut Class**

## COUNT I

**VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
(CONN. GEN. STAT. ANN. §§ 42-110A, *ET SEQ.*)**

277.   Plaintiffs (for purposes of all Connecticut Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

278.   Plaintiffs bring this Count on behalf of the Connecticut Class members.

279.   Plaintiffs and GM are each "persons" as defined by Conn. Gen. Stat. Ann. § 42-110a(3).

280.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a). The Connecticut UTPA further provides a private right of action under Conn. Gen. Stat. Ann. § 42-110g(a). In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx

reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in unfair and deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness, (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers, competitors or other business persons.  The harm caused to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and GM fraudulently concealed the defective nature of the Affected Vehicles from consumers.

281.   GM has also engaged in deceptive conduct because (1) it made representations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material—that  is, likely to affect consumer decisions or conduct.

282.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction

- 107 -

system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

283.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

284.   GM's actions as set forth above occurred in the conduct of trade or commerce.

285.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

286.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

287.   GM knew or should have known that its conduct violated the Connecticut UTPA.

288.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

289.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

290.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

010611-11  883628 V1

291.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

292.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

293.   Plaintiffs and the other Class members sustained damages as a result of GM's unlawful acts, and are therefore entitled to damages and other relief as provided under the Connecticut UTPA.

294.   Plaintiffs also seek court costs and attorneys' fees as a result of GM's violation of the Connecticut UTPA as provided in Conn. Gen. Stat. Ann. § 42-110g(d).  A copy of this Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with Conn. Gen. Stat. Ann. § 42-110g(c).

010611-11  883628 V1

## COUNT II

## BREACH OF CONTRACT
## (BASED ON CONNECTICUT LAW)

295.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

296.   Plaintiffs bring this Count on behalf of the Connecticut Class members.

297.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

298.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts

- 111 -

by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, rendering the Affected Vehicles less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

299.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT NON-DISCLOSURE
## (BASED ON CONNECTICUT LAW)

300.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

301.   Plaintiffs bring this Count on behalf of the Connecticut Class.

302.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission

requirements, or GM acted with reckless disregard for the truth, and denied

Plaintiffs and the other Class members information that is highly relevant to their

purchasing decision.

303.   GM further affirmatively misrepresented to Plaintiffs in advertising

and other forms of communication, including standard and uniform material

provided with each car, that the Affected Vehicles it was selling had no significant

defects, were Earth-friendly and low emission vehicles, complied with EPA

regulations, and would perform and operate properly when driven in normal usage.

304.   GM knew these representations were false when made.

305.   The Affected Vehicles purchased or leased by Plaintiffs and the other

Class members were, in fact, defective, emitting pollutants at a much higher rate

than gasoline powered vehicles and at a much higher rate than a reasonable

consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

306.   GM had a duty to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that

these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

307.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

308.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

309.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or

misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

310.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

311.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

010611-11  883628 V1

312.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their

vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

313. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

314. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

315. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive

control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

316.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

317.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the

Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

318.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

319.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

F.   **Claims Brought on Behalf of the Delaware Class**

## COUNT I

## VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT (DEL. CODE §§ 2513, *ET SEQ.*)

320.   Plaintiffs (for purposes of all Delaware Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

321.   Plaintiffs bring this Count on behalf of the Delaware Class members.

322.   GM is a "person" within the meaning of 6 Del. Code § 2511(7).

323.   The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of

any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a). In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, GM has engaged in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of the Affected Vehicles.

324. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected

Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

325.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

326.   GM's actions as set forth above occurred in the conduct of trade or commerce.

327.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

328.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

329.   GM knew or should have known that its conduct violated the Delaware Consumer Fraud Act.

330.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

- 121 -

b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

331.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

332.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

333.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their

Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

334.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

335.   Plaintiffs seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of GM's unlawful conduct.  *See*, *e.g.*, *Stephenson v. Capano Dev.*, *Inc.*, 462 A.2d 1069, 1077 (Del. 1983).  Plaintiffs also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

336.   GM engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON DELAWARE LAW)

337.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

338.   Plaintiffs bring this Count on behalf of the Delaware Class.

339.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused

- 123 -

Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

340.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that they are thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

341.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON DELAWARE LAW)

342.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

343.   This claim is brought on behalf of the Delaware Class.

344.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

345.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

346.   GM knew these representations were false when made.

- 125 -

347.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

348.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

349.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

350. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

351. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

352. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its

representations.  Consumers buy diesel cars from GM because they feel they are
clean diesel cars.  They do not want to be spewing noxious gases into the
environment.  And yet, that is precisely what the Affected Vehicles are doing.

353.   GM's false representations were material to consumers, because they
concerned the quality of the Affected Vehicles, because they concerned
compliance with applicable federal and state law and regulations regarding clean
air and emissions, and also because the representations played a significant role in
the value of the vehicles.  As GM well knew, its customers, including Plaintiffs
and Class members, highly valued that the vehicles they were purchasing or
leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid
accordingly.

354.   GM had a duty to disclose the emissions defect, defective design of
the emissions controls, and violations with respect to the Affected Vehicles
because details of the true facts were known and/or accessible only to GM, because
GM had exclusive knowledge as to such facts, and because GM knew these facts
were not known to or reasonably discoverable by Plaintiffs or Class members.  GM
also had a duty to disclose because it made general affirmative representations
about the qualities of its vehicles with respect to emissions, starting with references
to them as *reduced emissions* diesel cars and as compliant with all laws in each
state, which were misleading, deceptive, and incomplete without the disclosure of

the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

355. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would

hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

356.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

357.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

358.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered

010611-11  883628 V1

by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

359.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

360.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

361.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

G.    **Claims Brought on Behalf of the Florida Class**

## COUNT I

## VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (FLA. STAT. §§ 501.201, *ET SEQ.*)

362.    Plaintiffs (for purposes of all Florida Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

363.    Plaintiffs bring this Count on behalf of the Florida Class members.

364.    Plaintiffs and the Class are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA"), Fla. Stat. § 501.203(7).

365.    GM engaged in "trade or commerce" within the meaning of the Fla. Stat. § 501.203(8).

366.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1). GM participated in unfair and deceptive trade practices that violated the Florida UDTPA as described herein.  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected

- 132 -

Vehicles turns off or is limited during normal driving conditions, that the Affected

Vehicles emitted far more pollutants than gasoline powered vehicles, that the

Affected Vehicles emit far more pollution than a reasonable consumer would

expect in light of GM's advertising campaign, and that the Affected Vehicles

emitted unlawfully high levels of pollutants, including NOx, as described above.

Accordingly, GM engaged in unfair methods of competition, unconscionable acts

or practices, and unfair or deceptive acts or practices as defined in Fla. Stat.

§ 501.204(1).  GM's conduct offends established public policy, is immoral,

unethical, oppressive, unscrupulous, or substantially injurious to consumers, and is

likely to mislead consumers.

367.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other

Class members were deceived by GM's failure to disclose that the NOx reduction

system in the Affected Vehicles turns off or is limited during normal driving

conditions, that the emissions controls were defective, and that the Affected

Vehicles emitted unlawfully high levels of pollutants, including NOx, as described

above.

368.   Plaintiffs and Class members reasonably relied upon GM's false

misrepresentations.  They had no way of knowing that GM's representations were

false and gravely misleading.  As alleged herein, GM engaged in extremely

sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

369.   GM's actions as set forth above occurred in the conduct of trade or commerce.

370.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

371.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

372.   GM knew or should have known that its conduct violated the Florida UDTPA.

373.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving

conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

374.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

375.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

376.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

010611-11  883628 V1

377.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

378.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON FLORIDA LAW)

379.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

380.   Plaintiffs bring this Count on behalf of the Florida Class members.

381.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and

the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

382.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and that they are thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

383.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON FLORIDA LAW)

384.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

010611-11  883628 V1

385.    Plaintiffs bring this Count on behalf of the Florida Class.

386.    GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

387.    GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

388.    GM knew these representations were false when made.

389.    The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

- 138 -

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

390.   GM had a duty to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that

these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on

GM's material representations that the Affected Vehicles they were purchasing

were reduced emission vehicles, efficient, and free from defects.

391.   As alleged in this Complaint, at all relevant times, GM has held out

the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM

disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM

intentionally failed to disclose the important facts that the NOx reduction system in

the Affected Vehicles turns off or is limited during normal driving conditions, and

that the Affected Vehicles had defective emissions controls, deploy a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable

consumer, emitted unlawfully high levels of pollutants, and were non-compliant

with EPA emissions requirements, making other disclosures about the emission

system deceptive.

392.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

393.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

394.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

010611-11  883628 V1

395.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

396.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

- 141 -

at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

397.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

010611-11  883628 V1

398.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

399.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

400.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

401.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

402.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

403.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

010611-11  883628 V1

H.    **Claims Brought on Behalf of the Georgia Class**

### COUNT I

### VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET SEQ.*)

404.   Plaintiffs (for purposes of all Georgia Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

405.   Plaintiffs intend to assert a claim under the Georgia Fair Business Practices Act ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code. Ann. § 10-1-393(b). Plaintiffs will make a demand in satisfaction of Ga. Code. Ann. § 10-1-399, and may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON GEORGIA LAW)

406.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

407.   This claim is brought on behalf of the Georgia Class.

408.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

409.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected

Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and that they are thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

410.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON GEORGIA LAW)

411.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

412.   This claim is brought on behalf of the Georgia Class.

413.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable

- 147 -

consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

414.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

415.   GM knew these representations were false when made.

416.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

417.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

418.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

419.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

420.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

421.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

422.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

- 150 -

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

423.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells

the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

424.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

425.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

426.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have

- 152 -

taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

427. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

428. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has

greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

429.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

430.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

I.      **Claims Brought on Behalf of the Idaho Class**

## COUNT I

### VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CIV. CODE §§ 48-601, *ET SEQ.*)

431.   Plaintiffs (for purposes of all Idaho Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

432.   Plaintiffs bring this Count on behalf of the Idaho Class members.

433.   GM is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Civ. Code § 48-602(1).

- 154 -

434.   GM's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Civ. Code § 48-602(2).

435.   Idaho Code § 48-603 prohibits the following conduct in trade or commerce:  engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer; and engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C.  GM participated in misleading, false, or deceptive and unconscionable acts that violated the Idaho CPA.  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

436.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

437.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

438.   GM's actions as set forth above occurred in the conduct of trade or commerce.

439.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

440.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

441.   GM knew or should have known that its conduct violated the Idaho CPA.

442.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

- 156 -

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

443.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

444.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

445.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

010611-11  883628 V1

446.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

447.   Plaintiffs also seek attorneys' fees and any other just and proper relief available under the Idaho CPA.

448.   Plaintiffs also seek punitive damages against GM because GM's conduct evidences an extreme deviation from reasonable standards.  GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON IDAHO LAW)

449.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

450.   Plaintiffs bring this Count on behalf of the Idaho Class.

451.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected

Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

452.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that they were thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

453.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

010611-11  883628 V1

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON IDAHO LAW)

454.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

455.   This claim is brought on behalf of the Idaho Class.

456.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

457.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

458.   GM knew these representations were false when made.

- 160 -

459.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

460.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

461.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

462.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

463.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

464.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its

representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

465.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

466.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of

- 163 -

the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

467.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would

- 164 -

hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

468. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

469. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

470. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered

by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

471.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

472.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

473.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**J.    Claims Brought on Behalf of the Illinois Class**

**COUNT I**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)**

474.    Plaintiffs (for purposes of all Illinois Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

475.    This claim is brought on behalf of the Illinois Class members.

476.    Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

477.    Plaintiffs and the Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

478.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

479.   In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of trade or commerce as prohibited by the Illinois CFA.

480.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

481.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

482.   GM's actions as set forth above occurred in the conduct of trade or commerce.

483.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

484.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

485.   GM knew or should have known that its conduct violated the Illinois CFA.

486.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

487.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

488.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

489.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

010611-11  883628 V1

490.    GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

491.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs and the Class members seek monetary relief against GM in the amount of actual damages, as well as punitive damages because GM acted with fraud and/or malice and/or was grossly negligent.

492.    Plaintiffs also seek punitive damages, attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1, *et seq*.  A copy of this Complaint has been mailed to the Attorney General of the State of Illinois in accordance with 815 ILCS 505/10a(d).

## COUNT II

## BREACH OF CONTRACT
## (BASED ON ILLINOIS LAW)

493.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

494.    Plaintiffs bring this Count on behalf of the Illinois Class.

495.    GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their

Affected Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

496. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee. GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and that they were thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

497. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall

010611-11 883628 V1

include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON ILLINOIS LAW)

498.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

499.   This claim is brought on behalf of the Illinois Class.

500.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

501.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant

defects, were Earth-friendly and low emission vehicles, complied with EPA

regulations, and would perform and operate properly when driven in normal usage.

502.   GM knew these representations were false when made.

503.   The Affected Vehicles purchased or leased by Plaintiffs and the other

Class members were, in fact, defective, emitting pollutants at a much higher rate

than gasoline powered vehicles and at a much higher rate than a reasonable

consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

504.   GM had a duty to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that

these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on

GM's material representations that the Affected Vehicles they were purchasing

were reduced emission vehicles, efficient, and free from defects.

505.   As alleged in this Complaint, at all relevant times, GM has held out

the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM

disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM

intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

506.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

507.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

508.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and

sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

509.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

510.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members. GM also had a duty to disclose because it made general affirmative representations

about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

511.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its

vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

512. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

513. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

514. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect

or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

515.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

516.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

517.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and

Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

K.     **Claims Brought on Behalf of the Kentucky Class**

## COUNT I

## VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. §§ 367.110, *ET SEQ.*)

518.   Plaintiffs (for purposes of all Kentucky Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

519.   Plaintiffs bring this Count on behalf of the Kentucky Class members.

520.   GM, Plaintiffs, and the Kentucky Class are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

521.   GM engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

522.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …."  Ky. Rev. Stat. § 367.170(1).  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, GM engaged in deceptive business practices prohibited by the Kentucky CPA.

523.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

524.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

525.   GM's actions as set forth above occurred in the conduct of trade or commerce.

526.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

527.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

528.   GM knew or should have known that its conduct violated the Kentucky CPA.

529.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

530.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

531.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

532.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

533.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

534.   Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs and the Class seek to recover actual damages in an amount to be determined at trial; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON KENTUCKY LAW)

535.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

536.   Plaintiffs bring this Count on behalf of the Kentucky Class.

537.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

538.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members

- 184 -

defective Affected Vehicles and by misrepresenting or failing to disclose that the

NOx reduction system in the Affected Vehicles turns off or is limited during

normal driving conditions, and that they were thus less valuable than vehicles not

equipped with the defective GM Clean Diesel engine system.

539.   As a direct and proximate result of GM's breach of contract, Plaintiffs

and the Class have been damaged in an amount to be proven at trial, which shall

include, but is not limited to, all compensatory damages, incidental and

consequential damages, and other damages allowed by law.

## COUNT III

## FRAUD BY OMISSION

### (Based On KENTUCKY Law)

540.   Plaintiffs incorporate by reference all paragraphs as though fully set

forth herein.

541.   This claim is brought on behalf of the Kentucky Class.

542.   GM intentionally concealed that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that the

Affected Vehicles had defective emissions controls, emitted pollutants at a higher

level than gasoline powered vehicles, emitted pollutants higher than a reasonable

consumer would expect in light of GM's advertising campaign, emitted unlawfully

high levels of pollutants such as NOx, and were non-compliant with EPA emission

requirements, or GM acted with reckless disregard for the truth, and denied

Plaintiffs and the other Class members information that is highly relevant to their

purchasing decision.

543.   GM further affirmatively misrepresented to Plaintiffs in advertising

and other forms of communication, including standard and uniform material

provided with each car, that the Affected Vehicles it was selling had no significant

defects, were Earth-friendly and low emission vehicles, complied with EPA

regulations, and would perform and operate properly when driven in normal usage.

544.   GM knew these representations were false when made.

545.   The Affected Vehicles purchased or leased by Plaintiffs and the other

Class members were, in fact, defective, emitting pollutants at a much higher rate

than gasoline powered vehicles and at a much higher rate than a reasonable

consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

546.   GM had a duty to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that

these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

547.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

548.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

549.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or

misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

550.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

551.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

552.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their

vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

553.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

554.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

555.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive

control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

556.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

557.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the

Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

558.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

559.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

L.   **Claims Brought on Behalf of the Maryland Class**

## COUNT I

## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE COM. LAW §§ 13-101, *ET SEQ.*)

560.   Plaintiffs (for purposes of all Maryland Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

561.   This claim is brought only on behalf of members of the Maryland Class members.

562.   GM, Plaintiffs, and the Maryland Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

563.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  Md. Com. Law Code § 13-303.  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, that the vehicles have "Defeat Device," and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in unfair and deceptive trade practices.  GM's acts and practices offend public policy; were immoral, unethical, oppressive, or unscrupulous; caused substantial injury to consumers; had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

564.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected

Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

565.    Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

566.    GM's actions as set forth above occurred in the conduct of trade or commerce.

567.    GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

568.    GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

569.    GM knew or should have known that its conduct violated the Maryland CPA.

570.    GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

- 194 -

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

571.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

572.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

573.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their

- 195 -

Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

574.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

575.   Pursuant to Md. Code Com. Law § 13-408, Plaintiffs and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT II**

**BREACH OF CONTRACT
(BASED ON MARYLAND LAW)**

576.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

577.   Plaintiffs bring this Count on behalf of the Maryland Class members.

578.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

579. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee. GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that they were thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

580. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON MARYLAND LAW)

581. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

582.    This claim is brought on behalf of the Maryland Class.

583.    GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

584.    GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

585.    GM knew these representations were false when made.

586.    The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

- 198 -

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

587.   GM had a duty to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that

these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on

GM's material representations that the Affected Vehicles they were purchasing

were reduced emission vehicles, efficient, and free from defects.

588.   As alleged in this Complaint, at all relevant times, GM has held out

the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM

disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM

intentionally failed to disclose the important facts that the NOx reduction system in

the Affected Vehicles turns off or is limited during normal driving conditions, and

that the Affected Vehicles had defective emissions controls, deploy a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable

consumer, emitted unlawfully high levels of pollutants, and were non-compliant

with EPA emissions requirements, making other disclosures about the emission

system deceptive.

- 199 -

589. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

590. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

591. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

592.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

593.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

594.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

010611-11  883628 V1

595.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

596.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

597.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

- 203 -

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

598.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

599.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

600.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

010611-11  883628 V1

M.     **Claims Brought on Behalf of the Massachusetts Class**

### COUNT I

### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### (MASS. GEN. LAWS CH. 93A)

601.   Plaintiffs (for purposes of all Massachusetts Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

602.   Plaintiffs intend to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93A, § 2(1).  Plaintiffs will make a demand in satisfaction of Mass. Gen. Laws Ch. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

### COUNT II

### BREACH OF CONTRACT
### (BASED ON MASSACHUSETTS LAW)

603.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

604.   Plaintiffs bring this Count on behalf of the Massachusetts Class members.

605.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

606.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and that they were thus less

- 206 -

valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

607.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON MASSACHUSETTS LAW)

608.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

609.   This claim is brought on behalf of the Massachusetts Class.

610.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

611.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

612.   GM knew these representations were false when made.

613.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

614.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

615.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

616.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

617.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs

and Class members by concealing the true facts about the Affected Vehicle emissions.

618.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

619.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

620.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles

because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they

- 211 -

were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

621.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

622.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

623.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

624.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

625.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

626.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

627.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

N.   **Claims Brought on Behalf of the Michigan Class**

### COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.903, *ET SEQ.*)

628.   Plaintiffs (for purposes of all Michigan Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

629.   This claim is brought on behalf of the Michigan Class members.

630.   Plaintiffs and the Michigan Class members were "person[s]" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

631.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce ….", including:  "(c) Representing that goods or services have … characteristics … that they do not have ….;" "(e) Representing that goods

or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Mich. Comp. Laws § 445.903(1).  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality

when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

632.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

633.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

634.   GM's actions as set forth above occurred in the conduct of trade or commerce.

635.  GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

636.  GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

637.  GM knew or should have known that its conduct violated the Michigan CPA.

638.  GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

639.  GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted

- 217 -

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on

GM's material representations that the Affected Vehicles they were purchasing

were reduced emission vehicles, efficient, and free from defects.

640.   GM's conduct proximately caused injuries to Plaintiffs and the other

Class members.

641.   Plaintiffs and the other Class members were injured and suffered

ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of

GM's conduct in that Plaintiffs and the other Class members overpaid for their

Affected Vehicles and did not receive the benefit of their bargain, and their

Affected Vehicles have suffered a diminution in value.  These injuries are the

direct and natural consequence of GM's misrepresentations and omissions.

642.   GM's violations present a continuing risk to Plaintiffs as well as to the

general public.  GM's unlawful acts and practices complained of herein affect the

public interest.

643.   Plaintiffs seeks monetary relief measured as the greater of (a) actual

damages in an amount to be determined at trial and (b) statutory damages in the

amount of $250 for Plaintiffs and each Michigan Class member; reasonable

attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

644.   Plaintiffs also seek punitive damages against GM because it carried out despicable conduct with willful and conscious disregard of the rights of others. GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON MICHIGAN LAW)

645.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

646.   Plaintiffs bring this Count on behalf of the Michigan Class.

647.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and

- 219 -

which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

648.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that they were thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

649.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON MICHIGAN LAW)

650.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

651.   This claim is brought on behalf of the Michigan Class.

652.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

653.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

654.   GM knew these representations were false when made.

655.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

656.   GM had a duty to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that

these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on

GM's material representations that the Affected Vehicles they were purchasing

were reduced emission vehicles, efficient, and free from defects.

657.   As alleged in this Complaint, at all relevant times, GM has held out

the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM

disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM

intentionally failed to disclose the important facts that the NOx reduction system in

the Affected Vehicles turns off or is limited during normal driving conditions, and

that the Affected Vehicles had defective emissions controls, deploy a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable

consumer, emitted unlawfully high levels of pollutants, and were non-compliant

with EPA emissions requirements, making other disclosures about the emission

system deceptive.

658.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

659.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

660.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

010611-11  883628 V1

661.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

662.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

at issue. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

663.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

- 225 -

664.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

665.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

666.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

- 226 -

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

667.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

668.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

669.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

O.    **Claims Brought on Behalf of the Minnesota Class**

**COUNT I**

**VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
(MINN. STAT. § 325F.68, *ET SEQ.*)**

670.    Plaintiffs (for purposes of all Minnesota Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

671.    This claim is brought on behalf of the Minnesota Class members.

672.    The Affected Vehicles constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

673.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …."  Minn. Stat. § 325F.69(1).  The Minnesota CFA also prohibits the dissemination, directly or indirectly, of an advertisement "of any sort regarding merchandise," where that advertisement contains "any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."  Minn. Stat. § 325F.67.  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, GM used or employed a fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby and disseminated advertisements containing material assertions, representations, or statements of fact which were untrue, deceptive, or misleading, all in violation of the Minnesota CFA.

674.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

675.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were

false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

676.   GM's actions as set forth above occurred in the conduct of trade or commerce.

677.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

678.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

679.   GM knew or should have known that its conduct violated the Minnesota CFA.

680.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving

- 230 -

conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

681.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

682.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

683.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

- 231 -

684.    GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

685.    Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

686.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that GM's acts show deliberate disregard for the rights of others.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON MINNESOTA LAW)

687.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

688.    Plaintiffs bring this Count on behalf of the Minnesota Class.

689.    GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected

- 232 -

Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

690. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee. GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that they were thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

691. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

010611-11  883628 V1

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON MINNESOTA LAW)

692.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

693.   This claim is brought on behalf of the Minnesota Class.

694.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

695.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

696.   GM knew these representations were false when made.

- 234 -

697.   The Affected Vehicles purchased or leased by Plaintiffs and the other
Class members were, in fact, defective, emitting pollutants at a much higher rate
than gasoline powered vehicles and at a much higher rate than a reasonable
consumer would expect in light of GM's advertising campaign, non-EPA-
compliant, and unreliable because the NOx reduction system in the Affected
Vehicles turns off or is limited during normal driving conditions.

698.   GM had a duty to disclose that the NOx reduction system in the
Affected Vehicles turns off or is limited during normal driving conditions, that
these Affected Vehicles were defective, employed a "Defeat Device," and emitted
pollutants at a much higher rate than gasoline powered vehicles, and that the
emissions far exceeded those expected by a reasonable consumer, were non-EPA-
compliant and unreliable, because Plaintiffs and the other Class members relied on
GM's material representations that the Affected Vehicles they were purchasing
were reduced emission vehicles, efficient, and free from defects.

699.   As alleged in this Complaint, at all relevant times, GM has held out
the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM
disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM
intentionally failed to disclose the important facts that the NOx reduction system in
the Affected Vehicles turns off or is limited during normal driving conditions, and
that the Affected Vehicles had defective emissions controls, deploy a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

700.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

701.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

702.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its

- 236 -

representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

703.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

704.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of

- 237 -

the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

705.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would

hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

706.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

707.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

708.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered

- 239 -

by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

709.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

710.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

711.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

P.    **Claims Brought on Behalf of the Missouri Class**

## COUNT I

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT (MO. REV. STAT. §§ 407.010, *ET SEQ.*)

712.   Plaintiffs (for purposes of all Missouri Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

713.   Plaintiffs bring this Count on behalf of the Missouri Class members.

714.   GM, Plaintiffs and the Missouri Class are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

715.   GM engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

716.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."  Mo. Rev. Stat. § 407.020.  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles,

- 241 -

that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce, in violation of the Missouri MPA.  GM's conduct offends public policy; is unethical, oppressive, or unscrupulous; and presents a risk of, or causes, substantial injury to consumers.

717.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

718.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

719.   GM's actions as set forth above occurred in the conduct of trade or commerce.

720.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

721.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

722.   GM knew or should have known that its conduct violated the Missouri MPA.

723.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

724.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

725.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

726.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

727.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

728. GM is liable to Plaintiffs and the Missouri Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON MISSOURI LAW)

729. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

730. Plaintiffs bring this Count on behalf of the Missouri Class members.

731. GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

732.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

733.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON MISSOURI LAW)

734.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

735.   This claim is brought on behalf of the Missouri Class.

736.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the

010611-11  883628 V1

Affected Vehicles had defective emissions controls, emitted pollutants at a higher

level than gasoline powered vehicles, emitted pollutants higher than a reasonable

consumer would expect in light of GM's advertising campaign, emitted unlawfully

high levels of pollutants such as NOx, and were non-compliant with EPA emission

requirements, or GM acted with reckless disregard for the truth, and denied

Plaintiffs and the other Class members information that is highly relevant to their

purchasing decision.

737.   GM further affirmatively misrepresented to Plaintiffs in advertising

and other forms of communication, including standard and uniform material

provided with each car, that the Affected Vehicles it was selling had no significant

defects, were Earth-friendly and low emission vehicles, complied with EPA

regulations, and would perform and operate properly when driven in normal usage.

738.   GM knew these representations were false when made.

739.   The Affected Vehicles purchased or leased by Plaintiffs and the other

Class members were, in fact, defective, emitting pollutants at a much higher rate

than gasoline powered vehicles and at a much higher rate than a reasonable

consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

740.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

741.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

742.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device,"

and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

743.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

744.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

745.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean

- 249 -

air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

746. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members. GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

747.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

748.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

749.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had

known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

750.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

751.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

752.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

753.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

- 253 -

Q.    **Claims Brought on Behalf of the Montana Class**

### COUNT I

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101, *ET SEQ.*)**

754.    Plaintiffs (for purposes of all Montana Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

755.    This claim is brought only on behalf of the Montana Class members.

756.    GM, Plaintiffs and the Montana Class are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

757.    Montana Class members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

758.    The sale or lease of the Affected Vehicles to Montana Class members occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

759.    The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103. In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions, that the Affected

Vehicles emitted far more pollutants than gasoline powered vehicles, that the

Affected Vehicles emit far more pollution than a reasonable consumer would

expect in light of GM's advertising campaign, and that the Affected Vehicles

emitted unlawfully high levels of pollutants, including NOx, as described above.

Accordingly, GM engaged in unfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce in violation of

the Montana CPA.

760.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other

Class members were deceived by GM's failure to disclose that the NOx reduction

system in the Affected Vehicles turns off or is limited during normal driving

conditions, that the emissions controls were defective, and that the Affected

Vehicles emitted unlawfully high levels of pollutants, including NOx, as described

above.

761.   Plaintiffs and Class members reasonably relied upon GM's false

misrepresentations.  They had no way of knowing that GM's representations were

false and gravely misleading.  As alleged herein, GM engaged in extremely

sophisticated methods of deception.  Plaintiffs and Class members did not, and

could not, unravel GM's deception on their own.

762.   GM's actions as set forth above occurred in the conduct of trade or commerce.

763.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

764.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

765.   GM knew or should have known that its conduct violated the Montana CPA.

766.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

767.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that these Affected Vehicles were defective, employed a "Defeat Device," and emitted pollutants at a much higher rate than gasoline powered vehicles, and that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

768.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

769.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

770.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

771.   Because GM's unlawful methods, acts, and practices have caused Plaintiffs and Montana Class members to suffer an ascertainable loss of money and property, Plaintiffs and the Class seek from GM actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON MONTANA LAW)

772.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

773.   Plaintiffs bring this Count on behalf of the Montana Class members.

774.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and

which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

775.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that they were thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

776.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUD BY CONCEALMENT
### (BASED ON MONTANA LAW)

777.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

778.   This claim is brought on behalf of the Montana Class.

779. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

780. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

781. GM knew these representations were false when made.

782. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions.

783.   GM had a duty to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that

these Affected Vehicles were defective, employed a "Defeat Device," and emitted

pollutants at a much higher rate than gasoline powered vehicles, and that the

emissions far exceeded those expected by a reasonable consumer, were non-EPA-

compliant and unreliable, because Plaintiffs and the other Class members relied on

GM's material representations that the Affected Vehicles they were purchasing

were reduced emission vehicles, efficient, and free from defects.

784.   As alleged in this Complaint, at all relevant times, GM has held out

the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM

disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM

intentionally failed to disclose the important facts that the NOx reduction system in

the Affected Vehicles turns off or is limited during normal driving conditions, and

that the Affected Vehicles had defective emissions controls, deploy a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable

consumer, emitted unlawfully high levels of pollutants, and were non-compliant

with EPA emissions requirements, making other disclosures about the emission

system deceptive.

785.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

786.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

787.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

010611-11  883628 V1

788.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

789.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

790.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

010611-11  883628 V1

791.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

792.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

793.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

- 265 -

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

794.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

795.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

796.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

R.    **Claims Brought on Behalf of the Nevada Class**

## COUNT I

## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (NEV. REV. STAT. §§ 598.0903, *ET SEQ.*)

797.   Plaintiffs (for purposes of all Nevada Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

798.   Plaintiffs bring this Count on behalf of the Nevada Class members.

799.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.*, prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person:  "5.  Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9.  Advertises goods or services with intent not to sell or lease them as advertised"; or "15.  Knowingly makes any other false representation in a transaction."  Accordingly, GM has violated the Nevada DTPA by knowingly representing that the Affected Vehicles have uses and benefits which they do not

have; representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not; advertising the Affected Vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Affected Vehicles has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

800.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

801.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

802.   GM's actions as set forth above occurred in the conduct of trade or commerce.

803.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

804.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

805.   GM knew or should have known that its conduct violated the Nevada DTPA.

806.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

807.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted

pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

808.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

809.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

810.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

811.   Accordingly, Plaintiffs and the Nevada Class seek their actual damages, punitive damages, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  Nev. Rev. Stat. § 41.600.

010611-11  883628 V1

## COUNT II

## BREACH OF CONTRACT
## (BASED ON NEVADA LAW)

812.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

813.   Plaintiffs bring this Count on behalf of the Nevada Class members.

814.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

815.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected

010611-11  883628 V1

Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

816.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON NEVADA LAW)

817.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

818.   This claim is brought on behalf of the Nevada Class.

819.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully

high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

820.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

821.   GM knew these representations were false when made.

822.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

823.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions

- 273 -

far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

824.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

825.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

010611-11  883628 V1

826.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

827.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

828.   GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

829.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells

the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

830.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

831.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

832.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have

- 277 -

taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

833. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

834. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly

tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

835.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

836.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

S.   **Claims Brought on Behalf of the New Jersey Class**

## COUNT I

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A.. §§ 56:8-1, *ET SEQ.*)

837.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

838.   Plaintiffs bring this Count on behalf of New Jersey Class members.

839.   The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("NJ CFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

840.   In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in unfair and deceptive trade practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; advertising the Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, GM's acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because GM fraudulently concealed the defective nature of the Affected Vehicles from consumers.

010611-11  883628 V1

841.   GM's actions as set forth above occurred in the conduct of trade or commerce.

842.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

843.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

844.   GM knew or should have known that its conduct violated the New Jersey CFA.

845.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

846.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

847.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

848.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

849.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

850.   Pursuant to N.J.S.A. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON NEW JERSEY LAW)

851.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

852.   Plaintiffs bring this Count on behalf of the New Jersey Class.

853.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

010611-11  883628 V1

854.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other New Jersey Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and thus less valuable, than vehicles not equipped with the defective GM Clean Diesel engine system.

855.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON NEW JERSEY LAW)

856.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

857.   Plaintiffs bring this Count on behalf of the New Jersey Class.

858.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable

consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

859.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

860.   GM knew these representations were false when made.

861.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

862.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted

pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

863.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emissions, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

864.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

010611-11  883628 V1

865.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

866.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

867.   GM's false representations were material to consumers, because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

868.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells

the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

869.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

870.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

871.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have

- 289 -

taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

872. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

873. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of

which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

874.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

875.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

T.   **Claims Brought on Behalf of the New York Class**

## COUNT I

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. GEN. BUS. LAW § 349)

876.   Plaintiffs (for purposes of all New York Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

877.   This claim is brought on behalf of the New York Class members.

878.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. The challenged act or practice was "consumer-oriented;" (2) that the act or practice was misleading in a material way; and (3) Plaintiffs suffered injury as a result of the deceptive act or practice. Accordingly, GM has violated New York General Business Law § 349.

879. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

880. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely

sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

881.   GM's actions as set forth above occurred in the conduct of trade or commerce.

882.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

883.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

884.   GM knew or should have known that its conduct violated New York General Business Law § 349.

885.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving

- 293 -

conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

886.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

887.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

888.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

889.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

890.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs and each Class member may recover actual damages, in addition to three times actual damages up to $1,000 for GM's willful and knowing violation of N.Y. Gen. Bus. Law § 349.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. GEN. BUS. LAW § 350)

891.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

892.   This claim is brought on behalf of the New York Class.

893.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…."  N.Y. Gen. Bus. Law § 350-a.

894.   GM caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care

- 295 -

should have been known to GM, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

895.   GM has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

896.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

897.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

898.   GM's actions as set forth above occurred in the conduct of trade or commerce.

899.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

900.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

901.   GM knew or should have known that its conduct violated New York General Business Law § 350.

902.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

903.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted

pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

904.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

905.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

906.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

907.   Plaintiffs and the other Class members are entitled to recover their actual damages or $500, whichever is greater.  Because GM acted willfully or knowingly, Plaintiffs and the other Class members are entitled to recover three times actual damages, up to $10,000.

010611-11  883628 V1

## COUNT III

## BREACH OF CONTRACT
## (BASED ON NEW YORK LAW)

908.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

909.   Plaintiffs bring this Count on behalf of the New York Class members.

910.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

911.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected

Vehicles and by misrepresenting or failing to disclose that the NOx reduction

system in the Affected Vehicles turns off or is limited during normal driving

conditions and the existence of the GM Clean Diesel engine system's defect and/or

defective design of the emissions controls, including information known to GM,

rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than

vehicles not equipped with the defective GM Clean Diesel engine system.

912.   As a direct and proximate result of GM's breach of contract, Plaintiffs

and the Class have been damaged in an amount to be proven at trial, which shall

include, but is not limited to, all compensatory damages, incidental and

consequential damages, and other damages allowed by law.

## COUNT IV

## FRAUDULENT CONCEALMENT
## (BASED ON NEW YORK LAW)

913.   Plaintiffs incorporate by reference all preceding allegations as though

fully set forth herein.

914.   This claim is brought on behalf of the New York Class.

915.   GM intentionally concealed that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that the

Affected Vehicles had defective emissions controls, emitted pollutants at a higher

level than gasoline powered vehicles, emitted pollutants higher than a reasonable

consumer would expect in light of GM's advertising campaign, emitted unlawfully

high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

916.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

917.   GM knew these representations were false when made.

918.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

919.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions

- 301 -

far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

920.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

921.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

922.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

923.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

924.   GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

925.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells

the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

926.   GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

927.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

928.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have

taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

929.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

930.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly

tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

931.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

932.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

U.   **Claims Brought on Behalf of the North Carolina Class**

## COUNT I

**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS
AND PRACTICES ACT
(N.C. GEN. STAT. §§ 75-1.1, *ET SEQ.*)**

933.   Plaintiffs (for purposes of all North Carolina Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

934.   Plaintiffs bring this Count on behalf of the North Carolina Class members.

935.   GM engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

936.   The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. Gen. Stat. § 75-1.1(a).  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in unfair and deceptive trade practices because (1) had the capacity or tendency to deceive, (2) offends public policy, (3) is immoral, unethical, oppressive or unscrupulous, or (4) causes substantial injury to consumers.

937.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

938.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

939.   GM's actions as set forth above occurred in the conduct of trade or commerce.

940.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

941.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

942.   GM knew or should have known that its conduct violated the North Carolina UDTPA.

943.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

- 309 -

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

944.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

945.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

946.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

947.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

948.   Plaintiffs seek an order for treble their actual damages, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

949.   Plaintiffs also seek punitive damages against GM because GM's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

## COUNT II

### BREACH OF CONTRACT
### (BASED ON NORTH CAROLINA LAW)

950.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

951.   Plaintiffs bring this Count on behalf of the North Carolina Class members.

952.   GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected

Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

953.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

954.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON NORTH CAROLINA LAW)

955.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

956.   This claim is brought on behalf of the North Carolina Class.

957.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

958.   GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

959.   GM knew these representations were false when made.

- 313 -

960.   The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

961.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

962.   As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat

Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

963.   The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

964.   Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

965.   GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its

010611-11  883628 V1

representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

966.   GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

967.   GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of

- 316 -

the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

968. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would

hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

969.   GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

970.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

971.   Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered

by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

972.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

973.   Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

974.   GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## V.   Claims Brought on Behalf of the Ohio Class

### COUNT I

### VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT (OHIO REV. CODE §§ 1345.01, *ET SEQ.*)

975.   Plaintiffs (for purposes of all Ohio Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

976.   This claim is brought on behalf of the Ohio Class members.

977.   Plaintiffs and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 (Ohio CSPA).  GM is a "supplier" as defined by the OCSPA.  Plaintiffs' and the other Ohio Class members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the Ohio CSPA.

978.   The Ohio CSPA, Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. *Id.*  GM's conduct as

- 320 -

alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, GM engaged in unfair and deceptive trade practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; and supplying the Affected Vehicles based on misrepresentations; and otherwise engaging in conduct likely to deceive.

979.   In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

980.   Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

981.   GM's actions as set forth above occurred in the conduct of trade or commerce.

982.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

983.   GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

984.   GM knew or should have known that its conduct violated the Ohio CSPA.

985.   GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

986.   GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

987.   GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

988.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

010611-11  883628 V1

989.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

990.   Plaintiffs and the Class sustained damages as a result of GM's unlawful acts and are, therefore, entitled to damages and other relief as provided under the Ohio CSPA.

991.   Plaintiffs also seek court costs and attorneys' fees as a result of GM's violations of the OCSPA as provided in Ohio Rev. Code § 1345.09.

## COUNT II

## BREACH OF CONTRACT
### (BASED ON OHIO LAW)

992.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

993.   Plaintiffs bring this Count on behalf of Ohio Class members.

994.   GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

995.   Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, thus rendering each Affected Vehicle less valuable, than vehicles not equipped with the defective GM Clean Diesel engine system.

996.   As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON OHIO LAW)

997.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

998.   This claim is brought on behalf of the Ohio Class.

999.   GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1000. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1001. GM knew these representations were false when made.

1002. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1003. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1004. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

- 327 -

1005. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1006. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1007. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1008. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1009. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

- 329 -

at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

1010. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

1011. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1012. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1013. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

- 331 -

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1014. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1015. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1016. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

W.      **Claims Brought on Behalf of the Pennsylvania Class**

## COUNT I

### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. §§ 201-1, *ET SEQ.*)

1017. Plaintiffs (for purposes of all Pennsylvania Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1018. Plaintiffs bring this Count on behalf of the Pennsylvania Class members.

1019. Plaintiffs purchased or leased their Affected Vehicle primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

1020. All of the acts complained of herein were perpetrated by GM in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

1021. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, … [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4). In the course of GM's

- 333 -

business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, GM engaged in deceptive business practices prohibited by the Pennsylvania CPL, including: representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not; advertising the Affected Vehicles with the intent not to sell them as advertised; and engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or of misunderstanding.

1022. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1023. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

1024. GM's actions as set forth above occurred in the conduct of trade or commerce.

1025. GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1026. GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

1027. GM knew or should have known that its conduct violated the Pennsylvania CPL.

1028. GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

- 335 -

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1029. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1030. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1031. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

010611-11  883628 V1

1032. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

1033. GM is liable to Plaintiffs and the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  73 P.S. § 201-9.2(a).  Plaintiffs and the Pennsylvania Class are also entitled to an award of punitive damages given that GM's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON PENNSYLVANIA LAW)

1034. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1035. Plaintiffs bring this Count on behalf of the Pennsylvania Class.

1036. GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices

- 337 -

they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1037. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee. GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, thus rendering each Affected Vehicle less valuable, than vehicles not equipped with the defective GM Clean Diesel engine system.

1038. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON PENNSYLVANIA LAW)

1039. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1040. This claim is brought on behalf of the Pennsylvania Class.

1041. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1042. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1043. GM knew these representations were false when made.

1044. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

- 339 -

compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1045. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1046. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1047. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1048. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1049. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.  Consumers buy diesel cars from GM because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

010611-11  883628 V1

1050. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1051. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members. GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

1052. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

1053. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1054. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1055. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1056. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1057. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1058. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

X.     **Claims Brought on Behalf of the Tennessee Class**

## COUNT I

## VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
(TENN. CODE ANN. §§ 47-18-101, *ET SEQ.*)

1059. Plaintiffs (for purposes of all Tennessee Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1060. Plaintiffs bring this Count on behalf of the Tennessee Class members.

1061. Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

1062. GM is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

1063. GM's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

1064. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to:  "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" "Advertising goods or services with intent not to sell them as advertised;" and "Engaging in any other act or practice which is deceptive to the consumer or any other person."  Tenn. Code Ann. § 47-18-104.  In the course of

- 346 -

GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that the Affected Vehicles have characteristics or benefits that they did not have; representing that the Affected Vehicles are of a particular standard, quality, or grade when they are of another; advertising the Affected Vehicles with intent not to sell them as advertised; and engaging in acts or practices that are deceptive to consumers.

1065. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1066. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations.  They had no way of knowing that GM's representations were

false and gravely misleading.  As alleged herein, GM engaged in extremely sophisticated methods of deception.  Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

1067. GM's actions as set forth above occurred in the conduct of trade or commerce.

1068. GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1069. GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

1070. GM knew or should have known that its conduct violated the Tennessee CPA.

1071. GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving

- 348 -

conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1072. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1073. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1074. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

1075. GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

1076. Pursuant to Tenn. Code § 47-18-109(a), Plaintiffs and the Tennessee Class seek monetary relief against GM measured as actual damages in an amount to be determined at trial, treble damages as a result of GM's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

## COUNT II

### BREACH OF CONTRACT
### (BASED ON TENNESSEE LAW)

1077. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1078. Plaintiffs bring this Count on behalf of the Tennessee Class.

1079. GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative

- 350 -

vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system. Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1080. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee. GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, thus rendering each Affected Vehicle less valuable, than vehicles not equipped with the defective GM Clean Diesel engine system.

1081. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUD BY CONCEALMENT
### (BASED ON TENNESSEE LAW)

1082. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1083. This claim is brought on behalf of the Tennessee Class.

1084. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1085. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1086. GM knew these representations were false when made.

1087. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1088. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1089. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

- 353 -

1090. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1091. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1092. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1093. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1094. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

- 355 -

at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

1095. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

1096. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1097. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1098. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

- 357 -

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1099. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1100. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1101. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

Y.   **Claims Brought on Behalf of the Texas Class**

### COUNT I

### VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT
### (TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*)

1102. Plaintiffs (for purposes of all Texas Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

1103. Plaintiff intends to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.  Plaintiffs will make a demand in satisfaction of Tex. Bus. & Com. Code § 17.45(2), and may amend this Complaint to assert claims under the TDTPA once the required 60 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the TDTPA.

### COUNT II

### BREACH OF CONTRACT
### (BASED ON TEXAS LAW)

1104. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1105. Plaintiffs bring this Count on behalf of the Texas Class members.

1106. GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's

- 359 -

defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1107. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

1108. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUD BY CONCEALMENT
## (BASED ON TEXAS LAW)

1109. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1110. This claim is brought on behalf of the Texas Class.

1111. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1112. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material

provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1113. GM knew these representations were false when made.

1114. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1115. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1116. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM

disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1117. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1118. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading.  As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1119. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1120. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1121. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts

were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

1122. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

1123. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1124. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1125. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are

diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1126. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1127. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

010611-11  883628 V1

1128. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

Z.     **Claims Brought on Behalf of the Utah Class**

### COUNT I

### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT (UTAH CODE ANN. §§ 13-11-1, *ET SEQ.*)

1129. Plaintiffs (for purposes of all Utah Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1130. Plaintiffs bring this Count on behalf of the Utah Class members.

1131. GM is a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code Ann. § 13-11-3.

1132. Plaintiffs and the Class members are "persons" under Utah Code Ann. § 13-11-3.

1133. Sales of the Affected Vehicles to Plaintiffs and the Class were "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3.

1134. The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-

11-4.  Specifically, "a supplier commits a deceptive act or practice if the supplier

knowingly or intentionally:  (a) indicates that the subject of a consumer transaction

has sponsorship, approval, performance characteristics, accessories, uses, or

benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is

of a particular standard, quality, grade, style, or model, if it is not."  Utah Code

Ann. § 13-11-4.  "An unconscionable act or practice by a supplier in connection

with a consumer transaction" also violates the Utah CSPA.  Utah Code Ann. § 13-

11-5.  In the course of GM's business, it willfully failed to disclose and actively

concealed that the NOx reduction system in the Affected Vehicles turns off or is

limited during normal driving conditions, that the Affected Vehicles emitted far

more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far

more pollution than a reasonable consumer would expect in light of GM's

advertising campaign, and that the Affected Vehicles emitted unlawfully high

levels of pollutants, including NOx, as described above.  Accordingly, GM

engaged in conduct prohibited by the Utah CSPA, including, among other things,

engaging in unconscionable acts, representing that the Affected Vehicles have

characteristics, uses, benefits, and qualities which they do not have; and

representing that the Affected Vehicles are of a particular standard, quality, and

grade when they are not.  GM also engaged in unlawful trade practices by

employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

1135. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1136. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

1137. GM's actions as set forth above occurred in the conduct of trade or commerce.

1138. GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1139. GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

1140. GM knew or should have known that its conduct violated the Utah CSPA.

1141. GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.     Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1142. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's

material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1143. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1144. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

1145. GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

1146. Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs and the Class seek monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiffs and each Utah Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA. A copy of this Complaint has been mailed to the Attorney General of the State of Utah in accordance with Utah Code Ann. § 13-11-21(2).

# COUNT II

## BREACH OF CONTRACT
## (BASED ON UTAH LAW)

1147. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1148. Plaintiffs bring this Count on behalf of the Utah Class members.

1149. GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1150. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected

Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

1151. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON UTAH LAW)

1152. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1153. This claim is brought on behalf of the Utah Class.

1154. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully

high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1155. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1156. GM knew these representations were false when made.

1157. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1158. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions

far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1159. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1160. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1161. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1162. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1163. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1164. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells

the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

1165. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

1166. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1167. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have

taken other affirmative steps in light of the information concealed from them.
Plaintiffs' and Class members' actions were justified. GM was in exclusive
control of the material facts, and such facts were not generally known to the public,
Plaintiffs, or Class members.

1168. Because of the concealment and/or suppression of the facts, Plaintiffs
and Class members have sustained damage because they own vehicles that are
diminished in value as a result of GM's concealment of the true quality and
quantity of those vehicles' emissions and GM's failure to timely disclose the defect
or defective design of the GM Clean Diesel engine system, the actual emissions
qualities and quantities of GM-branded vehicles, and the serious issues engendered
by GM's corporate policies. Had Plaintiffs and Class members been aware of the
true emissions facts with regard to the Affected Vehicles, and the Company's
disregard for the truth and compliance with applicable federal and state law and
regulations, Plaintiffs and Class members who purchased or leased new or certified
previously owned vehicles would have paid less for their vehicles or would not
have purchased or leased them at all.

1169. The value of Plaintiffs' and Class members' vehicles has diminished
as a result of GM's fraudulent concealment of the defective emissions controls of
the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and
the non-compliance with EPA emissions requirements, all of which has greatly

A

tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1170. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1171. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

AA.   **Claims Brought on Behalf of the Virginia Class**

## COUNT I

## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. §§ 59.1-196, *ET SEQ.*)

1172. Plaintiffs (for purposes of all Virginia Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1173. This claim is brought on behalf of the Virginia Class members.

1174. GM is a "person" as defined by Va. Code Ann. § 59.1-198.  The transactions between Plaintiffs and the other Class members on the one hand and

GM on the other, leading to the purchase or lease of the Affected Vehicles by Plaintiffs and the other Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

1175. The Virginia Consumer Protection Act (Virginia CPA) prohibits "…(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised …; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  Va. Code Ann. § 59.1-200(A).  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, GM engaged in acts and practices violating Va. Code Ann. § 59.1-200(A), including representing that the Affected Vehicles have characteristics, uses, benefits, and

- 382 -

qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; advertising the Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in deception, fraud, false pretense, false promise or misrepresentations and conduct likely to deceive.

1176. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1177. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

1178. GM's actions as set forth above occurred in the conduct of trade or commerce.

1179. GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1180. GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

1181. GM knew or should have known that its conduct violated the Virginia CPA.

1182. GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1183. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant

and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1184. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1185. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

1186. GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

1187. Pursuant to Va. Code Ann. § 59.1-204, Plaintiffs and the Class seek monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiffs and each Class member. Because GM's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiffs and each Class member, the greater of (a) three times actual damages or (b) $1,000.

1188. Plaintiffs also seek punitive damages, and attorneys' fees, and any other just and proper relief available under General Business Law § 59.1-204, *et seq.*

## COUNT II

## BREACH OF CONTRACT
## (BASED ON VIRGINIA LAW)

1189. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1190. Plaintiffs bring this Count on behalf of Virginia Class members.

1191. GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1192. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

1193. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUD BY CONCEALMENT
### (UNDER VIRGINIA LAW)

1194. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1195. This claim is brought on behalf of the Virginia Class.

1196. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the

Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1197. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1198. GM knew these representations were false when made.

1199. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

010611-11  883628 V1

1200. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1201. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1202. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device,"

and non-compliance with EPA emissions requirements was known only to GM;
Plaintiffs and the Class members did not know of these facts and GM actively
concealed these facts from Plaintiffs and Class members.

1203. Plaintiffs and Class members reasonably relied upon GM's deception.
They had no way of knowing that GM's representations were false and/or
misleading.  As consumers, Plaintiffs and Class members did not, and could not,
unravel GM's deception on their own.  Rather, GM intended to deceive Plaintiffs
and Class members by concealing the true facts about the Affected Vehicle
emissions.

1204. GM also concealed and suppressed material facts concerning what is
evidently the true culture of GM—one characterized by an emphasis on profits and
sales above compliance with federal and state clean air laws and emissions
regulations that are meant to protect the public and consumers.  It also emphasized
profits and sales above the trust that Plaintiffs and Class members placed in its
representations.  Consumers buy diesel cars from GM because they feel they are
clean diesel cars.  They do not want to be spewing noxious gases into the
environment.  And yet, that is precisely what the Affected Vehicles are doing.

1205. GM's false representations were material to consumers because they
concerned the quality of the Affected Vehicles, because they concerned
compliance with applicable federal and state law and regulations regarding clean

air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1206. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the

- 391 -

value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

1207. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

1208. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1209. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had

known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1210. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

010611-11  883628 V1

1211. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1212. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1213. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

BB.   **Claims Brought on Behalf of the Washington Class**

## COUNT I

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*)

1214. Plaintiffs (for purposes of all Washington Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

1215. Plaintiffs bring this Count on behalf of the Washington Class members.

1216. GM, Plaintiffs, and the Washington Class are a "person" under Wash. Rev. Code Ann. § 19.86.010(1) ("Washington CPA").

1217. GM engaged in "trade" or "commerce" under Wash. Rev. Code Ann. § 19.86.010(2).

1218. The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code. Wash. Ann. § 19.96.010.  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles emitted unlawfully

- 395 -

high levels of pollutants, including NOx, as described above. Accordingly, GM engaged in unfair and deceptive business practices prohibited by the Washington CPA. GM's conduct was unfair because it (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. GM's conduct is deceptive because it has the capacity or tendency to deceive.

1219. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1220. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

1221. GM's actions as set forth above occurred in the conduct of trade or commerce.

1222. GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1223. GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

1224. GM knew or should have known that its conduct violated the Washington CPA.

1225. GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1226. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted

pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1227. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1228. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

1229. GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

1230. Pursuant to Wash. Rev. Code § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs and the Washington Class members seek injunctive relief.

010611-11  883628 V1

1231. GM is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code. Ann. § 19.86.090.

## COUNT II

### BREACH OF CONTRACT
### (BASED ON WASHINGTON LAW)

1232. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1233. Plaintiffs bring this Count on behalf of the Washington Class members.

1234. GM's misrepresentations and omissions alleged herein, including GM's failure to disclose the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and

- 399 -

the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1235. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the existence of the GM Clean Diesel engine system's defect and/or defective design of the emissions controls, including information known to GM, rendering each Affected Vehicle non-EPA-compliant, and thus less valuable than vehicles not equipped with the defective GM Clean Diesel engine system.

1236. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON WASHINGTON LAW)

1237. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1238. This claim is brought on behalf of the Washington Class.

1239. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1240. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1241. GM knew these representations were false when made.

1242. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1243. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1244. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1245. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1246. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1247. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1248. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1249. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

- 404 -

at issue. Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. GM represented to Plaintiffs and Class members that they were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they were purchasing or leasing defective, high emission, and unlawfully high emission vehicles.

1250. GM actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost GM money, and it did so at the expense of Plaintiffs and Class members.

010611-11  883628 V1

1251. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1252. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified.  GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1253. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies.  Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

- 406 -

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1254. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1255. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

CC.   **Claims Brought on Behalf of the West Virginia Class**

## COUNT I

## VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT (W. VA. CODE §§ 46A-1-101, *ET SEQ.*)

1256. Plaintiffs (for purposes of all West Virginia Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

1257. Plaintiff intends to assert a claim under the West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …."  W. Va. Code § 46A-6-104.  Plaintiff will make a demand in satisfaction of W. VA. CODE § 46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once the required 20 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CCPA.

## COUNT II

## BREACH OF CONTRACT
## (BASED ON WEST VIRGINIA LAW)

1258. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1259. Plaintiffs bring this Count on behalf of the West Virginia Class.

1260. GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative

- 408 -

vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1261. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, thus rendering each Affected Vehicle less valuable, than vehicles not equipped with the defective GM Clean Diesel engine system.

1262. As a direct and proximate result of GM's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON WEST VIRGINIA LAW)

1263. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1264. This claim is brought on behalf of the West Virginia Class.

- 409 -

1265. GM intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of GM's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or GM acted with reckless disregard for the truth, and denied Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1266. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1267. GM knew these representations were false when made.

1268. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-

compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1269. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1270. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

- 411 -

1271. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1272. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not, unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1273. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1274. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1275. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members. GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles

at issue.  Having volunteered to provide information to Plaintiffs and Class

members, GM had the duty to disclose not just the partial truth, but the entire truth.

These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and Class

members.  Whether a manufacturer's products pollute, comply with federal and

state clean air laws and emissions regulations, and whether that manufacturer tells

the truth with respect to such compliance or non-compliance, are material concerns

to a consumer, including with respect to the emissions certifications testing their

vehicles must pass.  GM represented to Plaintiffs and Class members that they

were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they

were purchasing or leasing defective, high emission, and unlawfully high emission

vehicles.

1276. GM actively concealed and/or suppressed these material facts, in

whole or in part, to pad and protect its profits and to avoid the perception that its

vehicles were not clean diesel vehicles and did not or could not comply with

federal and state laws governing clean air and emissions, which perception would

hurt the brand's image and cost GM money, and it did so at the expense of

Plaintiffs and Class members.

010611-11  883628 V1

1277. GM has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles.

1278. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by GM, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. GM was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1279. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's

disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1280. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1281. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1282. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

010611-11  883628 V1

DD.   **Claims Brought on Behalf of the Wisconsin Class**

### COUNT I

### VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT (WIS. STAT. § 110.18)

1283. Plaintiffs (for purposes of all Wisconsin Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

1284. Plaintiffs bring this claim on behalf of the Wisconsin Class members.

1285. GM is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

1286. Plaintiffs and Wisconsin Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).  Plaintiffs and Wisconsin Class members purchased or leased one or more Affected Vehicles.

1287. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. § 100.18(1).  In the course of GM's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of GM's advertising campaign, and that the Affected Vehicles

emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, GM engaged in deceptive business practices prohibited by the Wisconsin DTPA.

1288. In purchasing or leasing the Affected Vehicles, Plaintiffs and the other Class members were deceived by GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1289. Plaintiffs and Class members reasonably relied upon GM's false misrepresentations. They had no way of knowing that GM's representations were false and gravely misleading. As alleged herein, GM engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel GM's deception on their own.

1290. GM's actions as set forth above occurred in the conduct of trade or commerce.

1291. GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1292. GM intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Class.

1293. GM knew or should have known that its conduct violated the Wisconsin DTPA.

1294. GM owed Plaintiffs and the Class a duty to disclose the truth about its emissions systems manipulation because GM:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1295. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's

material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1296. GM's conduct proximately caused injuries to Plaintiffs and the other Class members.

1297. Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

1298. GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

1299. Plaintiffs and the Wisconsin Class are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because GM's conduct was committed knowingly and/or intentionally, Plaintiff` and the Wisconsin Class are entitled to treble damages.

1300. Plaintiffs and the Wisconsin Class also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

- 420 -

## COUNT II

## BREACH OF CONTRACT
## (BASED ON WISCONSIN LAW)

1301. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1302. Plaintiffs bring this Count on behalf of the Wisconsin Class members.

1303. GM's misrepresentations and omissions alleged herein, including, but not limited to, GM's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective GM Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

1304. Each and every sale or lease of an Affected Vehicle constitutes a contract between GM and the purchaser or lessee.  GM breached these contracts by, among other things, selling or leasing to Plaintiffs and the other Class members

defective Affected Vehicles and by misrepresenting or failing to disclose that the

NOx reduction system in the Affected Vehicles turns off or is limited during

normal driving conditions, thus rendering each Affected Vehicle less valuable,

than vehicles not equipped with the defective GM Clean Diesel engine system.

1305. As a direct and proximate result of GM's breach of contract, Plaintiffs

and the Class have been damaged in an amount to be proven at trial, which shall

include, but is not limited to, all compensatory damages, incidental and

consequential damages, and other damages allowed by law.

## COUNT III

## FRAUDULENT CONCEALMENT
## (BASED ON WISCONSIN LAW)

1306. Plaintiffs incorporate by reference all preceding allegations as though

fully set forth herein.

1307. This claim is brought on behalf of the Wisconsin Class members.

1308. GM intentionally concealed that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that the

Affected Vehicles had defective emissions controls, emitted pollutants at a higher

level than gasoline powered vehicles, emitted pollutants higher than a reasonable

consumer would expect in light of GM's advertising campaign, emitted unlawfully

high levels of pollutants such as NOx, and were non-compliant with EPA emission

requirements, or GM acted with reckless disregard for the truth, and denied

Plaintiffs and the other Class members information that is highly relevant to their purchasing decision.

1309. GM further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1310. GM knew these representations were false when made.

1311. The Affected Vehicles purchased or leased by Plaintiffs and the other Class members were, in fact, defective, emitting pollutants at a much higher rate than gasoline powered vehicles and at a much higher rate than a reasonable consumer would expect in light of GM's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1312. GM had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that these Affected Vehicles were defective, employed a "Defeat Device," emitted pollutants at a much higher rate than gasoline powered vehicles, that the emissions far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, because Plaintiffs and the other Class members relied on GM's

010611-11  883628 V1

material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

1313. As alleged in this Complaint, at all relevant times, GM has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles. GM disclosed certain details about the GM Clean Diesel engine, but nonetheless, GM intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "Defeat Device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1314. The truth about the defective emissions controls and GM's manipulations of those controls, unlawfully high emissions, the "Defeat Device," and non-compliance with EPA emissions requirements was known only to GM; Plaintiffs and the Class members did not know of these facts and GM actively concealed these facts from Plaintiffs and Class members.

1315. Plaintiffs and Class members reasonably relied upon GM's deception. They had no way of knowing that GM's representations were false and/or misleading. As consumers, Plaintiffs and Class members did not, and could not,

unravel GM's deception on their own. Rather, GM intended to deceive Plaintiffs and Class members by concealing the true facts about the Affected Vehicle emissions.

1316. GM also concealed and suppressed material facts concerning what is evidently the true culture of GM—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations. Consumers buy diesel cars from GM because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1317. GM's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As GM well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

- 425 -

1318. GM had a duty to disclose the emissions defect, defective design of the emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to GM, because GM had exclusive knowledge as to such facts, and because GM knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.  GM also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiffs and Class members, GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiffs and Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their

vehicles must pass.  GM represented to Plaintiffs and Class members that they

were purchasing or leasing *reduced emissions* diesel vehicles, when in fact, they

were purchasing or leasing defective, high emission, and unlawfully high emission

vehicles.

1319. GM actively concealed and/or suppressed these material facts, in

whole or in part, to pad and protect its profits and to avoid the perception that its

vehicles were not clean diesel vehicles and did not or could not comply with

federal and state laws governing clean air and emissions, which perception would

hurt the brand's image and cost GM money, and it did so at the expense of

Plaintiffs and Class members.

1320. GM has still not made full and adequate disclosures, and continues to

defraud Plaintiffs and Class members by concealing material information regarding

the emissions qualities of its referenced vehicles.

1321. Plaintiffs and Class members were unaware of the omitted material

facts referenced herein, and they would not have acted as they did if they had

known of the concealed and/or suppressed facts, in that they would not have

purchased purportedly reduced emissions diesel cars manufactured by GM, and/or

would not have continued to drive their heavily polluting vehicles, or would have

taken other affirmative steps in light of the information concealed from them.

Plaintiffs' and Class members' actions were justified.  GM was in exclusive

control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

1322. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own vehicles that are diminished in value as a result of GM's concealment of the true quality and quantity of those vehicles' emissions and GM's failure to timely disclose the defect or defective design of the GM Clean Diesel engine system, the actual emissions qualities and quantities of GM-branded vehicles, and the serious issues engendered by GM's corporate policies. Had Plaintiffs and Class members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1323. The value of Plaintiffs' and Class members' vehicles has diminished as a result of GM's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished the GM brand name attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected

- 428 -

Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1324. Accordingly, GM is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

1325. GM's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that GM made to them, in order to enrich GM.  GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of State Classes, respectfully request that the Court enter judgment in their favor and against GM, as follows:

A.    Certification of the proposed State Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.    Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

C.     Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

D.     An order requiring GM to pay both pre- and post-judgment interest on any amounts awarded;

E.     An award of costs and attorneys' fees; and

F.     Such other or further relief as may be appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

010611-11  883628 V1

DATED:  July 7, 2016          SOMMERS SCHWARTZ

By: */s/ Jason J. Thompson*
Jason J. Thompson, Bar No. P47184
Lance C. Young, Bar No. P51254
One Towne Square, Suite 1700
Southfield, MI  48076
Telephone:  (248) 355-0300
jthompson@sommerspc.com
lyoung@sommerspc.com

Steve W. Berman (*pro hac vice pending*)
Jessica Thompson (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Christopher A. Seeger (*pro hac vice pending*)
SEEGER WEISS LLP
77 Water Street, New York,
New York, NY 10005
Tel:  (212) 584-0700
Fax:  (212) 584-0799
cseeger@seegerweiss.com

Robert C. Hilliard (*pro hac vice pending*)
HILLIARD MUNOZ GONZALES LLP
719 S Shoreline Blvd., # 500
Corpus Christi, TX  78401
Tel:  (361) 882-1612
bobh@hmglawfirm.com

James E. Cecchi (*pro hac vice pending*)
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068
Tel:  (973) 994-1700
Fax:  (973) 994-1744
JCecchi@carellabyrne.com

*Attorneys for Plaintiffs and the Proposed Class*