# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JASON COUNTS, *et al.*,
individually, and on behalf of
THEMSELVES AND ALL
OTHERS similarly situated,

        Plaintiffs,

        v.

GENERAL MOTORS LLC,

        Defendant.

Case No. 1:16-cv-12541-TLL-PTM

Chief Judge Thomas L. Ludington
Magistrate Judge Patricia T. Morris

## GENERAL MOTORS LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

Defendant General Motors LLC respectfully moves pursuant to Federal Rules of Civil Procedure 8, 12(b)(1) and 12(b)(6) for dismissal with prejudice of all claims in the Class Action Complaint filed by plaintiffs Jason Counts, Donald Klein, Oscar Zamora, Brandon J. Stone, Jason Silveus, John Miskelly, Thomas Hayduk, Joshua Hurst, and Joshua Rodriguez (ECF No. 1). The grounds and legal authority for dismissal are set forth below in the Memorandum in Support of General Motors LLC's Motion to Dismiss Plaintiffs' Class Action Complaint.

Pursuant to Local Rule 7.1(a), GM states that it has conferred with plaintiffs and that plaintiffs do not concur in this motion.

October 3, 2016                    Respectfully submitted,

                                  */s/ Michael P. Cooney*
                                  Michael P. Cooney (P39405)
                                  Christopher Burtley (p80203)
                                  DYKEMA GOSSETT PLLC
                                  400 Renaissance Center
                                  Detroit, MI 48243
                                  Telephone: (313) 568-6955
                                  Fax: (313) 568-6893
                                  mcooney@dykema.com
                                  cburtley@dykema.com

                                  Kathleen Taylor Sooy
                                  April N. Ross
                                  Rebecca B. Chaney
                                  CROWELL & MORING LLP
                                  1001 Pennsylvania Avenue, N.W.
                                  Washington, DC 20004
                                  Telephone: (202) 624-2500
                                  Fax: (202) 628-5116
                                  ksooy@crowell.com
                                  aross@crowell.com
                                  rchaney@crowell.com

                                  *Counsel for Defendant*
                                  *General Motors LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

JASON COUNTS, *et al.*,
individually, and on behalf of
THEMSELVES AND ALL
OTHERS similarly situated,

        Plaintiffs,

        v.

GENERAL MOTORS LLC,

        Defendant.

Case No. 1:16-cv-12541-TLL-PTM

Chief Judge Thomas L. Ludington
Magistrate Judge Patricia T. Morris

# MEMORANDUM IN SUPPORT OF
# GENERAL MOTORS LLC'S MOTION TO DISMISS
# PLAINTIFFS' CLASS ACTION COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF ISSUES PRESENTED ................................................. x

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
      AUTHORITY ............................................................................. xi

INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ........................................................................... 3

LEGAL STANDARDS ................................................................................ 8

ARGUMENT ............................................................................................... 10

    I.     PLAINTIFFS LACK ARTICLE III STANDING. ........................... 10

          A.    Plaintiffs Do Not Allege Any Concrete And
                 Particularized Injury .................................................... 11

                1.    Plaintiffs do not allege that the particular GM
                      vehicles they own produce more emissions than
                      GM represented, or are otherwise defective. ................. 12

                2.    Speculative fear of *possible* future injury does not
                      confer standing .................................................... 16

                3.    Plaintiffs' allegations of generalized grievances
                      cannot establish standing. ................................... 18

          B.    Plaintiffs Do Not Have Standing To Assert Claims Under
                 The Laws Of States Where No Plaintiff Lives Or
                 Purchased A Diesel Chevrolet Cruze ........................... 18

    II.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY SECTION
          209 OF THE CLEAN AIR ACT ....................................................... 21

    III.    THE PRIMARY JURISDICTION DOCTRINE MANDATES
          A STAY OF PLAINTIFFS' CLAIMS ............................................ 26

IV.    PLAINTIFFS' CLAIMS DO NOT MEET FEDERAL
       PLEADING REQUIREMENTS. ........................................................31

      A.    Plaintiffs Do Not State A Breach Of Contract Claim
           Against GM. ...........................................................................31

      B.    Plaintiffs Do Not State A Claim For Fraudulent
           Concealment .........................................................................33

           1.    Plaintiffs do not satisfy the heightened pleading
               requirements of Rule 9(b). ...............................................34

           2.    Plaintiffs do not allege a duty to disclose. ......................37

      C.    Plaintiffs Do Not State Claims For Violations Of State
           Consumer Protection Statutes. ..................................................39

    CONCLUSION ............................................................................................43

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3D Sys., Inc. v. Envisiontec, Inc.*,
   575 F. Supp. 2d 799 (E.D. Mich. 2008) ............................................................8

*In re Actimmune Mktg. Litig.*,
   No. C08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ...............20

*Airline Professionals Assoc. of the Int'l Brotherhood of Teamsters,*
   *Local Union No. 1224, AFL-CIO v. Airborne, Inc.*,
   332 F.3d 983 (6th Cir. 2003) ...........................................................................13

*Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n*,
   913 F.2d 305 (6th Cir. 1990) ...............................................................28, 29, 30

*Am. Auto. Mfrs. Ass'n v. Massachusetts Dep't of Envtl. Prot.*,
   163 F.3d 74 (1st Cir. 1998)...............................................................................28

*Am. Fed'n of Gov't Employees v. Clinton*,
   180 F.3d 727 (6th Cir. 1999) ...........................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)...........................................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................9

*Belville v. Ford Motor Co.*,
   13 F. Supp. 3d 528, 546 (S.D. W. Va. 2014)...................................................36

*Beshear v. Volkswagen Grp. of Am., Inc.*,
   No. 16-CV-27-GFVT, 2016 WL 3040492 (E.D. Ky. May 25, 2016)....21, 23, 25

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955, 968 (N.D. Cal. 2015)......................................................17

*Caraccioli v. Facebook, Inc.*,
　　No. 5:15-cv-04145-EJD, 2016 WL 859863 (N.D. Cal. Mar. 7, 2016) ..............33

*In re Caterpillar, Inc.*, *C13 & C15 Engine Prod. Liab. Litig.*,
　　No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *12 (D.N.J.
　　July 29, 2015)......................................................................................................23

*Charvat v. EchoStar Satellite, LLC*,
　　630 F.3d 459 (6th Cir. 2010) ..........................................................27, 28, 29, 30

*Cheren v. Compass Bank*,
　　No. CV-12-00206-PHX-JAT, 2012 WL 5381445 (D. Ariz. Nov. 2, 2012).......31

*Cipollone v. Liggett Grp.*,
　　505 U.S. 504 (1992)..................................................................................22, 23

*Clapper v. Amnesty Int'l USA*,
　　133 S. Ct. 1138 (2013)..........................................................................8, 10, 16

*Courtney v. Smith*,
　　297 F.3d 455 (6th Cir. 2002) ...........................................................................10

*Coyne v. Am. Tobacco Co.*,
　　183 F.3d 488 (6th Cir. 1999) ...........................................................................18

*Cruz v. Underwriters at Lloyd's London*,
　　No. 8:14-cv-1539-T-33TBM, 2014 WL 3809179 (M.D. Fla.
　　Aug. 1, 2014) ....................................................................................................32

*Easter v. Am. West Fin.*,
　　381 F.3d 948 (9th Cir. 2004) ...........................................................................20

*Fieger v. Michigan Supreme Court*,
　　553 F.3d 955 (6th Cir. 2009) ...........................................................................10

*In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*,
　　MDL No. 1718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007)..............*passim*

*Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*,
　　528 U.S. 167 (2000)..........................................................................................10

*In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*,
　　966 F. Supp. 1525 (E.D. Mo. 1997) .................................................................37

iv

*In re GNC Corp.*,
   789 F.3d 505 (4th Cir. 2015) .............................................................40

*Granfield v. NVIDIA Corp.*,
   No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012).................19

*Harris v. Am. Postal Workers Union*,
   198 F.3d 245 (6th Cir. 1999) ............................................................32

*Haviland v. Metro. Life Ins. Co.*,
   876 F. Supp. 2d 946 (E.D. Mich. 2012) .........................................31

*Herman v. Bridgewater Park Apartments*,
   No. 15-cv-12203, 2016 WL 826050 (E.D. Mich. Mar. 3, 2016) ......................32

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ...........................................39

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
   995 F. Supp. 2d 587 (N.D. Tex. 2014) ............................................33

*Jackson v. Gen. Motors Corp.*,
   770 F. Supp. 2d 570 (S.D.N.Y. 2011) ............................................23

*Kampuries v. Am. Honda Motor Co.*,
   No. 15-CV-5061(JFB)(AKT), 2016 WL 4613361, at *6 (E.D.N.Y.
   Sept. 6, 2016) ................................................................................39

*Lanier v. Syncreon Holdings, Ltd.*,
   No. 11-14780, 2012 WL 3475680, at *9 (E.D. Mich. Aug. 14, 2012) .............36

*League of United Latin Am. Citizens v. Bredesen*,
   500 F.3d 523 (6th Cir. 2007) ...........................................................9

*Lewis v. Casey*,
   518 U.S. 343 (1996)........................................................................20

*In re Long Distance Telecommunications Litig.*,
   831 F.2d 627 (6th Cir. 1987) ...........................................................30

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................8, 10, 12

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451, 466 (S.D.N.Y. 2014) ..........................................................40

*McMahon v. CitiMortgage, Inc.*,
    No. 10-14265, 2011 WL 2173916 (E.D. Mich. June 2, 2011)............................9

*McVicar v. Goodman Global, Inc.*,
    1 F. Supp. 3d 1044, 1056 (C.D. Cal. 2014) ......................................................31

*In re Mercedes-Benz Emissions Litig.*,
    No. 16-881(JLL)(JAD), (D.N.J. Aug. 5, 2016), ECF No. 45.............................33

*Mich. Elec. Transmission Co. v. Midland Cogeneration Venture, Ltd. P'ship*,
    737 F. Supp. 2d 715 (E.D. Mich. 2010) ............................................................27

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992).............................................................................................22

*Morse v. Abbott Labs.*,
    756 F. Supp. 1108 (N.D. Ill. 1991).....................................................................36

*Motor & Equip. Mfrs. Ass'n v. EPA*,
    627 F.2d 1095 (D.C. Cir. 1979)..........................................................................29

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008)................................................................26

*In re Office of Attorney Gen. of State of New York*,
    269 A.D.2d 1 (App. Div. 2000).............................................................23, 25, 26

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011) .................................................19, 20, 41

*Pattie v. Coach, Inc.*,
    29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) ....................................................42

*Ram Int'l Inc. v. ADT Sec. Servs., Inc.*,
    No. 11-10259, 2011 WL 5244936 (E.D. Mich. Nov. 3, 2011) ..........................26

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) .................................................................................17

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) ........................................................................34, 36

*Rosipko v. FCA US, LLC*,
  No. 15-11030, 2015 WL 8007649 (E.D. Mich. Dec. 7, 2015) ..............37, 40, 42

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................39

*Sanderson v. HCA-The Healthcare Co.*,
  447 F.3d 873 (6th Cir. 2006) ..............................................................................35

*Sesi v. Fed. Nat'l Mortgage Ass'n*,
  No. 10-12966, 2012 WL 831759 (E.D. Mich. Mar. 12, 2012) .............................8

*Smith v. Lawyers Title Ins. Corp.*,
  No. 07-12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009) .......................19, 20

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..........................................................................11, 12, 16

*Stalley v. Methodist Healthcare*,
  517 F.3d 911 (6th Cir. 2008) ................................................................................8

*Storey v. Attends Healthcare Prod., Inc.*,
  No. 15-CV-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) ..34, 35, 40, 41

*Terry v. Tyson Farms, Inc.*,
  604 F.3d 272 (6th Cir. 2010) ................................................................................9

*Thompson v. Haviland*,
  CIV.A. No. 08-CV-12079, 2008 WL 2478321 (E.D. Mich.
  June 17, 2008) ......................................................................................................8

*Tietsworth v. Sears, Roebuck & Co.*,
  No. 5:09-CV-00288 JFHRL, 2009 WL 3320486, at *7 (N.D. Cal.
  Oct. 13, 2009) .....................................................................................................26

*United States v. Any & All Radio Station Transmission Equip.*,
  204 F.3d 658 (6th Cir. 2000) ..............................................................................28

*United States v. Haun*,
  124 F.3d 745 (6th Cir. 1997) ..............................................................................27

*United States v. Richardson*,
   418 U.S. 166 (1974)..........................................................................................18

*Urbino v. Ambit Energy Holdings, LLC*,
   No. CIV.A. 14-5184 MAS, 2015 WL 4510201 (D.N.J. July 24, 2015) ............26

*Valley Forge Christian College v. Am. United for Separation of
   Church and State, Inc.*,
   454 U.S. 464 (1982)..........................................................................................18

*In re Volkswagen "Clean Diesel" Litigation*,
   Case No, CL-2016-9917 (Va. Cir. Aug. 30, 2016) ....................................1, 7, 24

*Walburn v. Lockheed Martin Corp.*,
   431 F.3d 966 (6th Cir. 2005) ...........................................................................34

*Wall v. Rental*,
   No. 15-13254, 2016 WL 3418539 (E.D. Mich. June 22, 2016)........................16

*Warner v. Ford Motor Co.*,
   No. CIVA06CV02443-JLKMEH, 2008 WL 4452338 (D. Colo.
   Sept. 30, 2008)..................................................................................................26

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y. 1997) ..................................................................36, 40

*Williams v. Scottrade, Inc.*,
   No. 06-10677, 2006 WL 2077588 (E.D. Mich. July 24, 2006)...................36, 41

*Yeager v. Gen. Motors Corp.*,
   265 F.3d 389 (6th Cir. 2001) ...........................................................................17

*Zaycer v. Sturm Foods, Inc.*,
   896 F. Supp. 2d 399 (D. Md. 2012)..................................................................19

## Statutes and Regulations

40 C.F.R. § 86.113-94....................................................................................5, 30

40 C.F.R. § 86.115-78....................................................................................5, 30

40 C.F.R. § 86.127-12 ....................................................................................4, 29

40 C.F.R. § 86.158-08....................................................................................4, 29

40 C.F.R. § 86.161-00 ................................................................5, 30

40 C.F.R. § 86-1803-01 ..............................................................5, 30

40 C.F.R. § 86.1811-04 ..............................................................4, 29

40 C.F.R. § 86.1841-01 ..............................................................4, 29

40 C.F.R. § 86.1844-01 ..............................................................5, 30

42 U.S.C. § 7543(a) ......................................................................22

Cal. Code Regs. tit. 13, §§ 1960.1 ...............................................4, 29

Cal. Code Regs. Tit. 13 §§ 1961 ..................................................4, 29

Clean Air Act, Section 209, 42 U.S.C. § 7543(a)..........................*passim*

**Rules**

Fed. R. Civ. P. 8 ............................................................................40

Fed. R. Civ. P. 9(b) ..................................................................*passim*

Fed. R. Civ. P. 12(b)(1) .................................................................8

Fed. R. Civ. P. 12(b)(6) .................................................................9

**Other Authorities**

U.S. Const. Art. III, § 2, Cl. 1 .......................................................8

H.R.Rep. No. 90–728, reprinted in 1967 U.S.C.C.A.N. 1938..........22, 29

TNO Answers to Questions for EMIS Committee to the Netherlands
    Organisation for Applied Scientific Research (May 27, 2016)..........14

United States Environmental Protection Agency 2014 Model Year
    Certificate Of Conformity With The Clean Air Act Of 1990 ..........5, 27

ix

## **STATEMENT OF ISSUES PRESENTED**

1.      Should this Court dismiss all counts of the complaint for lack of standing because plaintiffs do not allege a concrete and particularized injury?

2.      Should this Court dismiss the 63 counts of the complaint pled under the laws of 21 states in which no named plaintiff resides or purchased any vehicle because: (i) plaintiffs have alleged no injury in these states, and, therefore, (ii) plaintiffs have no standing to bring these claims?

3.      Should this Court dismiss all counts of the complaint as preempted by Section 209 of the Clean Air Act because each count requires this Court to determine that the diesel Chevrolet Cruze does not comply with federal emissions regulations enforced by the Environmental Protection Agency?

4.      Should this Court alternatively stay this action under the primary jurisdiction doctrine and refer the complaint to the Environmental Protection Agency and California Air Resource Board because: (i) each claim raises factual issues of compliance with federal and state emissions regulations for the diesel Chevrolet Cruze, and (ii) these agencies have the experience, expertise, and regulatory authority to determine compliance with complex emissions regulations?

5.      Should this Court dismiss plaintiffs' breach of contract claims because plaintiffs do not allege any contract with GM or any breach of a specific contract provision?

6.      Should this Court dismiss plaintiffs' fraudulent concealment and state-law consumer protection statutory claims because plaintiffs do not allege facts sufficient to establish misrepresentation, omission, reliance, causation, or a duty to disclose as required by Rules 8 and 9(b)?

General Motors LLC answers "yes" to each of these questions.

**STATEMENT OF**
**<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>**

The controlling or most appropriate authority for the relief sought by GM includes:

1.  Const. Art. III, § 2, Cl. 1

2.  Fed. R. Civ. P. 12(b)(6)

3.  Fed. R. Civ. P. 9(b)

4.  H.R.Rep. No. 90–728, as reprinted in 1967 U.S.C.C.A.N. 1938, 1956–57

5.  Section 209 of the Clean Air Act, 42 U.S.C. § 7543

6.  *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010)

7.  *Cipollone v. Liggett Grp.*, 505 U.S. 504 (1992)

8.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013)

9.  *Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999)

10. *Haviland v. Metro. Life Ins. Co.*, 876 F. Supp. 2d 946 (E.D. Mich. 2012), *aff'd*, 730 F.3d 563 (6th Cir. 2013)

11. *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, No. MDL 1718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007)

12. *In re Office of Attorney Gen. of State of New York*, 269 A.D.2d 1 (N.Y. App. Div. 2000)

13. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011)

14. *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012)

15. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007)

16. *Lewis v. Casey*, 518 U.S. 343 (1996)

17. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

18. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)

19. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239 (6th Cir. 2012)

20. *Rosipko v. FCA US, LLC*, No. 15-11030, 2015 WL 8007649 (E.D. Mich. Dec. 7, 2015)

21. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)

22. *Storey v. Attends Healthcare Prod., Inc.*, No. 15-CV-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016)

23. *United States v. Richardson*, 418 U.S. 166 (1974)

24. *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005)

25. *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006)

## **INTRODUCTION**

Before General Motors LLC ("GM") can sell any vehicle in the United States, it must obtain a certification from the Environmental Protection Agency that the vehicle complies with stringent mobile source emission standards under the Clean Air Act.  The EPA certified the Chevrolet Cruze diesel models at issue here to be in full compliance with federal emission standards.  Nevertheless, plaintiffs ask this Court to usurp the EPA's role based on their bare allegations that the diesel Cruze produces "unlawfully high emissions."  In 420 pages, with 92 separate counts for fraudulent concealment, breach of contract, and violation of state-law consumer protection statutes in thirty states (including scores of claims with no conceivable connection to any named plaintiff), plaintiffs say almost nothing about GM and say even less about the diesel Cruze.  The bulk of plaintiffs' allegations relate to different vehicles sold by different entities in different countries with different emission standards that have no conceivable relation to the diesel Cruze's compliance with EPA regulations.

Plaintiffs' lone allegation on diesel Cruze emissions relies on a PEMS test that plaintiffs conducted.  PEMS testing is *not* a method approved by EPA.  Plaintiffs allege nothing about the circumstances of the test or even that the vehicle tested was a *diesel* Cruze.  Unregulated testing of an unspecified vehicle(s) that does not comply with any established EPA testing protocol is not a plausible

underpinning for any of plaintiffs' claims.  Plaintiffs' complaint should therefore be dismissed for the following reasons:

First, plaintiffs lack Article III standing for all of their claims because they do not allege a concrete and particularized injury.  The complaint says nothing at all about how each plaintiff has been personally injured or what any supposed injuries entail.  Instead, plaintiffs speculate that GM *might* recall the diesel Cruze, which *might* cause plaintiffs to incur "out-of-pocket loss, future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle."  Plaintiffs similarly make unsubstantiated, generalized allegations of harm to the environment, which is not the type of concrete and particularized injury required for Article III standing.

Second, all of plaintiffs' claims are expressly preempted by Section 209 of the Clean Air Act, which establishes uniform national emission standards and preempts any state law claim premised on non-compliance with vehicle emission standards under the CAA.  Every one of plaintiffs' claims is tied to establishing that the diesel Cruze violates the CAA, either by emitting excess NOx or employing a defeat device.  Compl. ¶¶ 3, 12-13.

Third, at a minimum, all of plaintiffs' claims should be stayed under the primary jurisdiction doctrine and referred to the EPA and California Air Resource Board ("CARB") because they raise factual issues concerning GM's compliance

with applicable federal and state emission standards.  These factual issues are within the special competency of the EPA and CARB, which have the relevant experience and expertise to determine compliance with complex emission regulations.

Finally, all of plaintiffs' claims should be dismissed because they do not meet basic pleading requirements.  Plaintiffs' breach of contract claims do not allege any contract with GM or any breach by GM of a specific contract provision. Plaintiffs' fraud-based consumer protection and fraudulent concealment claims do not meet the requirements for particularity in Rule 9(b).  There are no factual allegations that any plaintiff actually saw, or relied on to his or her detriment, any specific representation that GM made about the diesel Cruze's emissions, much less the "who, what, when, where, and how" required by Rule 9(b).

## STATEMENT OF FACTS

GM "designed, manufactured, and installed the GM engine systems in the Chevy Cruze."  Compl. ¶ 46.  To obtain regulatory approval for the sale of the diesel Cruze, GM was required to comply with the CAA by ensuring that these vehicles met the "applicable federal emissions standards" developed and enforced by the EPA and CARB.[1]  *Id.* ¶¶ 48, 56.

---

[1] CARB sets emission standards for vehicles sold in California, and in thirteen

(continued…)

Pursuant to federal regulations, compliance with emission standards is determined based on laboratory testing following two protocols, the Federal Test Procedure ("FTP") and the Supplemental Federal Test Procedure ("SFTP"), which evaluate exhaust emissions on a dynamometer, a stationary platform that allows vehicle wheel rotation, comparable to a treadmill.  40 C.F.R. §§ 86.1811-04, 86.1841-01, 86.127-12, 86.158-08; Cal. Code Regs. tit. 13, §§ 1960.1(r), 1961(a)(7).  The FTP and SFTP consist of a series of tests conducted under a set of specified conditions: urban driving (FTP-75), high-speed or aggressive driving (US06), urban driving with air conditioning (SC03), and, for gasoline vehicles, cold weather urban driving (Cold FTP). *See* 40 C.F.R. §§ 86.127-12, 86.158-08, 86.159-08, 86.160-00, 86.161.00.  Under these testing protocols, the EPA regulates tailpipe emissions of nitrogen oxides, non-methane organic gas, non-methane hydrocarbons, carbon monoxide, formaldehyde, particulate matter, carbon dioxide, nitrous oxide, methane, hydrofluorocarbons, perfluorocarbons, and sulfer hexafluoride.  *Id.* § 86.1811-04(c),(m).  EPA also regulates the use of emission control devices through a series of highly technical regulations distinguishing between auxiliary emissions control devices ("AECDs") (which are permissible

---

(continued…)

other jurisdictions that opted into CARB (rather than EPA) standards.  *See* Cal. Code Regs. Tit. 13 §§ 1961, 1960.1(r).

within certain defined parameters under the applicable regulations), and "defeat devices" (which are not). *E.g.*, 40 C.F.R. §§ 86.113-94, 86.115-78, 86.161-00 (establishing fuel specifications, dynamometer driving schedules, and ambient temperature and humidity requirements for emissions testing); § 86.1844-01(d)(11) (defining AECDs); § 86.1803-01 (defining defeat devices and related exceptions). Manufacturers must ensure that their vehicles comply with the EPA standards for each of these regulated emissions at various mileage intervals, over the useful life of the vehicle. *Id.* § 86.1805-12.

Pursuant to this rigorous protocol mandated by federal law, GM subjected the diesel Cruze's emission systems to exhaustive testing before introducing the vehicle into the U.S. market.  Based on those tests, the EPA issued Certificates of Conformity confirming that, "pursuant to section 206 of the Clean Air Act," the diesel Cruze "demonstrated compliance with the applicable emission standards."[2] This Certificate of Conformity certifies, *inter alia*, "that the vehicle comport[s] with the emission standards for pollutants enumerated in 40 C.F.R. §§ 86.1811-04, 86.1811-09, and 86.1811-10."  Compl. ¶ 56.

---

[2] *See e.g.* United States Environmental Protection Agency 2014 Model Year Certificate Of Conformity With The Clean Air Act Of 1990, dated April 11, 2013, available at https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=30086&flag=1, (Ex. 1).

Diesel emissions have recently come under increased scrutiny by regulators after Volkswagen made public admissions that it employed unlawful "defeat devices" in its diesel vehicles to pass government emissions tests. Following this VW revelation, federal and state regulators began more intense review of the compliance of other diesel vehicles across the industry. Compl. ¶ 59.

Plaintiffs are nine individual consumers who purchased new 2014 diesel Cruze vehicles at independent dealerships in Michigan (Counts and Klein), California (Zamora), Illinois (Stone), Florida (Silveus), Maryland (Miskelly), New York (Hayduk), Ohio (Hurst), and Texas (Rodriguez). Compl. ¶¶ 20, 23, 26, 27, 30, 33, 36, 39, 42. Plaintiffs allege that GM advertised the 2014 diesel Cruze as a "Clean Diesel" vehicle that complies with the relevant federal emission standards and applicable standards in "all 50 states." *Id.* ¶ 68. Plaintiffs further allege that they purchased the diesel Cruze based on unspecified "advertisements and representations tout[ing] the cleanliness of the [Cruze's] engine system for the environment and the efficiency and power/performance of the engine system." *Id.* ¶¶ 20, 23, 26, 27, 30, 33, 36, 39, 42.

Despite the EPA's certification that the diesel Cruze complies with federal emission standards, plaintiffs maintain that GM misrepresented the "clean" nature of the diesel Cruze's emissions because, in reality, it "fails to meet U.S. emissions standards as promised." *Id.* ¶ 87. This assertion is not based on published studies,

government testing, or other reliable data. Rather, according to the complaint, "Plaintiffs have tested the Cruze using a Portable Emissions Measurement System ('PEMS')" (*id.*) — a method that has never been adopted by the EPA. Plaintiffs do not allege when the testing was conducted, whether the testing was conducted by a trained professional, or whether the testing complied in any way with the comprehensive EPA regulations governing emission testing. Plaintiffs also do not allege any facts concerning any tested vehicle, including whether testing involved more than one vehicle, the source or condition of any tested vehicle, and whether any tested vehicle had been modified. Plaintiffs do not even allege that the tested vehicle was a *diesel* Cruze or, more specifically, a 2014 diesel Cruze, or that any tested vehicle belonged to any named plaintiff.

Based on this single allegation, plaintiffs claim that they are injured in the form of "out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle." *Id.* ¶¶ 21, 24, 28, 31, 34, 37, 40, 43. There are no factual allegations of any specific monetary losses, repair costs, fuel costs or attempts to sell any vehicle and any resulting loss from a sale. On behalf of 30 putative classes of consumers, the nine named plaintiffs allege 92 separate causes of action for violations of state consumer protection laws, breach of contract, and fraudulent concealment under the laws of 30 states.

## <u>LEGAL STANDARDS</u>

The jurisdiction of federal courts extends only to actual cases and controversies. U.S. Const. Art. III, § 2, Cl. 1. Where there is no "case or controversy," a suit must be dismissed for lack of jurisdiction under Rule 12(b)(1). *Thompson v. Haviland*, CIV.A. No. 08-CV-12079, 2008 WL 2478321, at *4 (E.D. Mich. June 17, 2008); *3D Sys., Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 801 (E.D. Mich. 2008) (dismissing claims under 12(b)(1) for lack of case or controversy). A suit brought by a plaintiff lacking Article III standing is not a "case-or-controversy" over which a federal court has subject matter jurisdiction. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The burden to establish subject matter jurisdiction rests with plaintiffs as the parties asserting jurisdiction. *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("[T]he party invoking federal subject matter jurisdiction[] has the burden of demonstrating that he satisfies each element of Article III standing."); *Sesi v. Fed. Nat'l Mortgage Ass'n*, No. 10-12966, 2012 WL 831759, at *5 (E.D. Mich. Mar. 12, 2012) (same).

For a complaint to survive scrutiny under Rule 12(b)(6), the non-conclusory "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to

relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Although the Court must accept well-pleaded facts as true, it "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010) (citation and quotation marks omitted). The Court also may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Claims that sound in fraud, including fraudulent concealment and statutory consumer claims premised on fraud allegations, must also meet the heightened pleading standard of Rule 9(b). *See McMahon v. CitiMortgage, Inc.*, No. 10-14265, 2011 WL 2173916, at *3 (E.D. Mich. June 2, 2011) (fraudulent concealment); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, MDL No. 1718, 2007 WL 2421480, at *9 (E.D. Mich. Aug. 24, 2007) (state consumer-fraud claims).

## ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING.

This Court does not have subject matter jurisdiction because plaintiffs lack standing.  There is no "case or controversy" here, as Article III requires.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (internal citation omitted).  Plaintiffs bear the burden to satisfy this case or controversy requirement by pleading and ultimately proving facts establishing standing.  *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002).  To meet this burden, plaintiffs must plead sufficient facts plausibly showing "(1) . . . an 'injury in fact' . . . (2) [that] is fairly traceable to the [] action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009); *Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan*, 504 U.S. at 560-61.

Here, plaintiffs do not plausibly plead the injury requirement of Article III standing for two reasons.  First, in all of the counts, plaintiffs plead only speculative fear of future injury, bare regulatory violations, and generalized grievances, which do not amount to the concrete and particularized injury required

10

to confer standing.  Second, in sixty-three counts, plaintiffs plead violations of the laws of states where none of the plaintiffs live and none of the plaintiffs purchased a vehicle.[3]  These plaintiffs suffered no injury in these states, and therefore have no standing to assert these claims.

### A.  Plaintiffs Do Not Allege Any Concrete And Particularized Injury.

Injury in fact is "the 'first and foremost of standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).  An injury in fact sufficient to confer standing must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 1548.  Though an injury need not necessarily be "tangible," a "concrete" injury is one that actually exists; in other words it is "real" and not "abstract." *Id.* at 1548-49.  Plaintiffs do not allege any concrete and particularized injury.

---

[3] Some of these counts do not even purport to assert a viable existing claim, instead expressing plaintiffs' intent to assert a claim in the future. *E.g.*, Compl. ¶ 118 ("Plaintiffs *intend* to assert a claim under the Alabama DTPA.") (emphasis added); *id.* ¶ 405 ("Plaintiffs *intend* to assert a claim under the Georgia Fair Business Practices Act.") (emphasis added); *id.* ¶ 602 ("Plaintiffs *intend* to assert a claim under the Massachusetts Consumer Protection Act.") (emphasis added); *id.* ¶ 1103 ("Plaintiff *intends* [*sic*] to assert a claim under the Texas Deceptive Practices Act.") (emphasis added); *id.* ¶ 1257 ("Plaintiff *intends* [*sic*] to assert a claim under the West Virginia Consumer Credit and Protection Act.") (emphasis added).

Plaintiffs claim harm from purported misrepresentations about the diesel emissions of their GM vehicles, yet plaintiffs make no plausible factual allegations that the diesel emissions of their GM vehicles are different than what GM represented.   Instead, they construct a speculative scenario beginning with allegations of non-compliance by different vehicles with different regulatory standards in other countries, *e.g.*, Compl. ¶ 73, and then extrapolate that someday GM *might* recall plaintiffs' vehicles, *id.* ¶ 92, which *might* cause plaintiffs to incur "out-of-pocket loss, future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle," *e.g.*, *id.* ¶¶ 21, 24, 28, 31, 34, 37, 40, 43.   Plaintiffs also speculate that allegedly excessive emissions harm the public in general through environmental and health effects. None of plaintiffs' speculation alleges the type of concrete and particularized injury in fact required for Article III standing.

> **1.     Plaintiffs do not allege that the particular GM vehicles they own produce more emissions than GM represented, or are otherwise defective.**

To adequately plead Article III standing, a plaintiff must plausibly allege facts showing a particularized injury; that is, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 (injury in fact is an "irreducible constitutional minimum" that must be demonstrated by facts, not bare, conclusory allegations); *Airline Professionals Assoc. of the Int'l Brotherhood of*

*Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 989 (6th Cir. 2003) ("a party failing to plead an injury-in-fact cannot invoke federal jurisdiction").  Plaintiffs do not allege facts demonstrating that their GM vehicles produce more emissions than GM represented, that their vehicles are defective because they do not meet applicable regulatory emission standards, or that their vehicles are equipped with unlawful "defeat devices."

Instead, plaintiffs' complaint focuses on vehicle makes they do not own (Opel and Vauxhall) that are manufactured, sold and marketed by different entities exclusively in Europe, not the United States.  *See, e.g.*, Compl. ¶¶ 9, 11, 73-85.  Plaintiffs rely upon cherry-picked reports assessing these European vehicles' compliance with European emission standards.[4]  Plaintiffs concede, as they must, that European regulatory standards differ from U.S. standards, *e.g.*, *id.* ¶¶ 59, 73, and that these European vehicles are required to comply with European, not U.S., emission standards, *e.g.*, *id.* ¶¶ 9, 75.

Plaintiffs do not identify a single study assessing the diesel emissions of the actual vehicles they own, the 2014 diesel Chevrolet Cruze.  They also do not allege

---

[4] Even plaintiffs' own "evidence" fails to substantiate their allegations.  For instance, plaintiffs rely upon a graph that supposedly demonstrates that "vehicles made by all manufacturers, including GM," exceed European emission standards.  Compl. ¶ 83.  That graph does not identify any GM vehicle, or suggest that any GM vehicle fails to comply with European regulatory standards.

any facts plausibly suggesting that other vehicles' non-compliance with European regulatory standards has any bearing on their GM vehicles' compliance with wholly independent U.S. regulatory standards.  In any event, plaintiffs do not plausibly allege that any *European* vehicle fails to comply with *European* safety standards.  To the contrary, Plaintiffs rely heavily on a study conducted by TNO for the Dutch Ministry of Infrastructure and the Environment (*see* Compl. ¶¶ 74-79), but TNO itself cautions against the very conclusions Plaintiffs seek to draw from its findings:

> The tests performed by TNO are not intended nor suitable for enforcement purposes and are not suitable for identifying or claiming fraud or other vehicle-related irregularities in a technically and legally watertight way. The observed high NOx emissions under real-world test conditions, as reported by TNO, can and should therefore not be interpreted as an indication for the use of so-called "defeat devices", "cycle beating" or other strategies that are prohibited by European vehicle emission legislation.[5]

The handful of sparse allegations specific to the diesel Cruze do not constitute a plausible injury.  After alleging that testing of European Opel models by a German environmental group suggests emissions that "exceed European emission standards," plaintiffs ask the Court to reach the unsubstantiated

---

[5] *See* TNO Answers to questions from EMIS committee to the Netherlands Organisation for Applied Scientific Research (May 27, 2016) at 7, *available at:* http://www.europarl.europa.eu/meetdocs/2014_2019/plmrep/COMMITTEES/EMIS/DV/2016/05-24/EMIS_questions_TNO_responses_EN.pdf, (Ex. 2).

conclusion that the diesel Cruze must likewise exceed U.S. emission standards. Compl. ¶¶ 9-12, 73-85.  This illogical leap is premised on nothing but plaintiffs' own naked assertions that the Cruze is "similar" to these European model vehicles. *Id.* ¶¶ 10, 75, 84.  The basis for these purported "similarities" is equally vague; the complaint does not even allege that the similarities relate to specific vehicle components that affect emissions.  *See id.* ¶ 10 ("On information and belief, given GM's ownership of Opel and its similarity to the Cruze, the technology platform in both vehicles is substantially the same.").

Plaintiffs offer only one paragraph specifically addressing emissions for the Chevrolet Cruze.  In Paragraph 87, plaintiffs allege that they have "tested" one unspecified vehicle.  *Id.* ¶ 87.  Plaintiffs do not allege that this vehicle belongs to any of the named plaintiffs.  They do not even allege the vehicle was a 2014 diesel Cruze.  There is no plausible basis to infer injury to a named plaintiff from these allegations about a single unscientific test purportedly performed by plaintiffs themselves under unregulated, and undisclosed, conditions.  This is especially so where plaintiffs concede that the EPA "certif[ied] that the vehicle comport[s] with emission standards for pollutants enumerated in" federal regulations.  *Id.* ¶ 29.[6]

---

[6] Even if plaintiffs' allegations could plausibly establish a violation of U.S. emission standards, this alone does not establish the concrete and particularized injury required for standing.  Earlier this year, the Supreme Court expressly held

(continued…)

## 2.   Speculative fear of *possible* future injury does not confer standing.

For an injury to confer standing, it "must be *certainly impending*," and "allegations of *possible* future injury are not sufficient." *Clapper*, 133 S. Ct. 1138 at 1147 (emphasis added).  Plaintiffs allege a litany of speculative *possible* future injuries, none "certainly impending," and all expressly alleged to be resting on multiple contingencies.

Plaintiffs complain that they will incur "out-of-pocket loss, future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle." *Id.* ¶¶ 21, 24, 28, 31, 34, 37, 40, 43.  These alleged harms stem from plaintiffs' speculative fear that because certain European vehicles purportedly exceed European emission standards, their diesel Chevrolet Cruze vehicles likewise exceed U.S. emission standards.  *See, e.g.*, *id.* ¶¶ 73, 75. They say this may one day lead GM to recall plaintiffs' vehicles.  *Id.* ¶ 92.  If GM issues a recall, plaintiffs claim the recall remedy may "degrade[] . . . engine

_____

(continued…)

that allegations of bare regulatory violations do not support standing. *Spokeo*, 136 S. Ct. at 1548-49 (holding that "Article III standing requires a concrete injury even in the context of a statutory violation"); *Wall v. Rental*, No. 15-13254, 2016 WL 3418539, at *2 (E.D. Mich. June 22, 2016) ("a plaintiff claiming a statutory violation must demonstrate that he or she confronted a 'risk of real harm' apart from a 'bare procedural violation' under a statutory regime").  In any event, such claims are preempted by the Clean Air Act. *See* Section II, *infra*.

16

performance and fuel efficiency," which in turn may cause them to "spend additional sums on fuel" or cause their vehicles to "be worth less in the marketplace." *Id.*; *see also id.* ¶ 90.

This highly attenuated chain of possibilities does not meet Article III's requirement of a concrete and particularized injury. *E.g.*, *Am. Fed'n of Gov't Employees v. Clinton*, 180 F.3d 727, 731 (6th Cir. 1999) ("[n]umerous acts and facts may injure employment 'prospects,' in some unknowable and speculative fashion, but something more is needed to establish standing to sue"); *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 395 (6th Cir. 2001) (finding plaintiff's potential future injury too speculative where various contingencies could prevent it); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Unless and until these conjectures come true, [plaintiffs] have not suffered any injury[.]"). Where, as here, "one cannot describe how the plaintiffs will be injured without beginning the explanation with the word 'if,' [t]he prospective damages described by the plaintiffs as certain, are, in reality, conjectural." *Reilly*, 664 F.3d at 43 (citation omitted); *see also Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 968 (N.D. Cal. 2015) (dismissing claim premised on speculative fear of future injury by asserted "susceptibility" to "hacking" in plaintiffs' vehicles).

17

### 3. Plaintiffs' allegations of generalized grievances cannot establish standing.

Plaintiffs also allege "damage" in the form of environmental and health effects from a supposed increase in nitrogen oxide from vehicle emissions. Compl. ¶¶ 88-89. This harm is a generalized grievance allegedly shared by the public at large. It cannot establish standing for these plaintiffs. *United States v. Richardson*, 418 U.S. 166, 177 (1974) (an injury that "is plainly undifferentiated and common to all members of the public" does not support standing) (internal quotations omitted); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (a plaintiff who asserts a "generalized grievance that is pervasively shared by a large class of citizens" does not have standing). "Were the federal courts merely publicly funded forums for the ventilation of [such] public grievances or the refinement of jurisprudential understanding, the concept of 'standing' would be quite unnecessary." *Valley Forge Christian College v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982).

### B. Plaintiffs Do Not Have Standing To Assert Claims Under The Laws Of States Where No Plaintiff Lives Or Purchased A Diesel Chevrolet Cruze.

The nine plaintiffs allege that they are residents of Arizona (Stone, Compl. ¶ 27), California (Zamora, *id.* ¶ 26), Florida (Silveus, *id.* ¶ 30), Maryland (Miskelly, *id.* ¶ 33), Michigan (Counts, *id.* ¶ 20; Klein, *id.* ¶ 23), New York (Hayduk, *id.* ¶ 36), Ohio (Hurst, *id.* ¶ 39), and Texas (Rodriguez, *id.* ¶ 42). Each plaintiff alleges

a vehicle purchase in the state of residence, except for Arizona resident Mr. Stone, who allegedly purchased his vehicle in Illinois.  *Id.* ¶¶ 20, 23, 26-27, 30, 33, 36, 39, 42.  Plaintiffs assert claims for breach of contract, fraudulent concealment, and violation of state-law consumer protection statutes in these states.

Plaintiffs also assert 63 claims under the laws of 21 additional states in which no named plaintiff resides or purchased a vehicle.  These 63 counts should be dismissed because "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *See In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-58 (E.D. Mich. 2011) (dismissing claims under laws of 26 states in which no named plaintiff resided); *see also Smith v. Lawyers Title Ins. Corp.*, No. 07-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009) ("[B]esides the state of Michigan, the plaintiff has not alleged injury in any other state, nor are his particular claims based on the application of the laws of any other state.  Consequently, the plaintiff lacks standing to bring state law claims arising under the laws of" eight additional states.); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012) (dismissing implied warranty claims for lack of standing under the laws of 28 states in which plaintiff did not allege a relevant purchase); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) (dismissing plaintiff's claims under states' laws beyond Maryland for lack of standing because

plaintiff "was neither harmed by the Product, nor purchased the Product, in any state other than Maryland").

Pleading their case as a putative class action does not cure plaintiffs' standing problem. "That a suit may be a class action [] adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the [putative] class." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation and internal quotes omitted); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 653 ("The fact that the IP plaintiffs seek to proceed with their claims on a class basis does not change the fundamental requirement of standing."). "Where, as here, a representative plaintiff is lacking for a particular state, all claims based on that state's law are subject to dismissal." *In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009) (citation omitted).[7]

---

[7] The Court's evaluation of plaintiffs' standing should not await a decision on class certification. "In cases . . . where the putative plaintiffs' injury is in doubt, Article III standing issues should be resolved in the first instance." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. at 657; *see also Smith*, 2009 WL 514210, at *3 ("the *Ortiz v. Fibreboard Corp.* case 'does not require courts to consider class certification before standing'") (quoting *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004)); *Easter*, 381 F.3d at 962 (standing must be assessed at the time the plaintiff files his complaint and should not await class certification).

No plaintiff alleges any connection with, or any injury suffered in, the following states: Alabama, Colorado, Connecticut, Delaware, Georgia, Idaho, Kentucky, Massachusetts, Minnesota, Missouri Montana, Nevada, New Jersey, North Carolina, Pennsylvania, Tennessee, Utah, Virginia, Washington, West Virginia, or Wisconsin. Plaintiffs' claims in the 63 counts brought under the laws of these states should be dismissed for lack of standing.[8]

## II. PLAINTIFFS' CLAIMS ARE PREEMPTED BY SECTION 209 OF THE CLEAN AIR ACT.

Section 209 of the CAA expressly preempts plaintiffs' claims and requires dismissal of the complaint with prejudice. Every claim in the complaint hinges on plaintiffs' unfounded allegations that: (i) the Cruze's emissions levels exceed "EPA emission requirements," Compl. ¶ 126, and (ii) the Cruze employs an unlawful "defeat device" to conceal its violations of emission standards, *id*. at ¶ 78. Under the express language of Section 209, plaintiffs' effort to "seek damages . . . based on alleged violations of the CAA is strictly prohibited." *See Beshear v. Volkswagen Grp. of Am., Inc.*, No. 16-CV-27-GFVT, 2016 WL 3040492, at *4 (E.D. Ky. May 25, 2016).

---

[8] Even if plaintiffs had standing, there are other reasons these claims should be dismissed. *See* Appendices A-C (Exs. 3-5).

Congress enacted Section 209 as an amendment to the CAA to ensure that automakers could "obtain clear and consistent answers concerning emission controls and standards" from a single, national regulatory body.  H.R.Rep. No. 90–728, reprinted in 1967 U.S.C.C.A.N. 1938, 1956–57.  Reflecting its stated intent, Congress drafted Section 209 to include the broadest possible language of preemption:

> No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines . . .

42 U.S.C. § 7543(a).

Under U.S. Supreme Court precedent, use of the phrase "relating to" in a preemption clause is intended to be "deliberately expansive" and to "express a broad pre-emptive purpose."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (citation omitted).  Thus, Section 209 must be construed broadly as applying to the enforcement of standards that have any "connection with, or reference to" the control of vehicle emissions.  *See id*.

Section 209's plain language prohibits two separate types of legal action by a state:  (i) "adopt[ing]," or (ii) "attempt[ing] to enforce" any standard relating to the control of vehicle emissions.  The prohibition regarding enforcement encompasses common law claims because "it is the essence of the common law to enforce duties."  *Cipollone v. Liggett Grp.*, 505 U.S. 504, 522 (1992).  As the

22

Supreme Court explained, "regulation can be as effectively exerted through an award of damages as through some form of preventive relief.  The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."  *Id.* at 521 (internal quotation marks omitted); *see also In re Office of Attorney Gen. of State of New York*, 269 A.D.2d 1, 11 (App. Div. 2000) (the Supreme Court has "rejected distinctions between positive enactments by State statutes or regulations and the onus of State common-law tort liability for preemption purposes").

For this reason, every court to consider the issue has determined that Section 209 preempts any "state common law tort action that questions whether a defendant complied with [vehicle emission] standards promulgated under the CAA." *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 575 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors Corp*., 472 F. App'x 80 (2d Cir. 2012); *see also Volkswagen*, 2016 WL 3040492, at *4 (any attempt by "private parties to seek damages or other remedies based on alleged [vehicle emission] violations of the CAA is strictly prohibited"); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *12 (D.N.J. July 29, 2015) (Section 209 preempts any claim asserting that "Plaintiffs . . . were harmed by the failure of [the defendants] to comply with applicable [vehicle] emissions standards"); *In re Office of Attorney Gen. of State of New York*, 269 A.D.2d at 11

23

(Section 209 preempts any effort "to use [state] common law to penalize []
manufacturers for producing engines which failed to comply with the Federal
standards promulgated pursuant to the CAA").[9]

Here, every one of plaintiffs' claims is tied to establishing violations of
federal vehicle emission regulations promulgated under the CAA.  Plaintiffs allege
that the Cruze emits "oxides of Nitrogen (NOx) at levels many times higher than . .
. Environmental Protection Agency maximum emissions standards."[10]  Compl. at ¶
3.  The complaint further alleges that the Cruze employs a "'defeat device' as
defined by the EPA" under 40 C.F.R. § 86.004-2, such that the emission systems
are programmed "to reduce effectiveness or turn off altogether when the vehicle is
on the road," while remaining on under laboratory conditions to "obtain test results
that appear to pass emissions standards."  Compl. ¶¶ 12-13.  These allegations are
fundamental to each cause of action in the complaint.

---

[9] A recent Virginia state court decision rejected a Section 209 preemption
argument under materially different circumstances.  *See* Opinion Letter, *In re
Volkswagen "Clean Diesel" Litigation,* Case No, CL-2016-9917 (Va. Cir. Aug.
30, 2016).  In that case, the EPA had already issued notices of violation under the
CAA for Volkswagen vehicles, and Volkswagen has already admitted
responsibility for those violations.  Accordingly, the Virginia court was not being
asked, as this Court is, to decide the existence of such violations in the first
instance.

[10] As plaintiffs note, these standards are set forth in, *inter alia*, "40 C.F.R. §§
86.1811-04, 86.1811-09, and 86.1811-10."  Compl. ¶ 56.

- **State consumer protection and false advertising law violations**: Each of these claims relies on materially identical allegations that GM concealed "that the NOx reduction system . . . turns off or is limited during normal driving conditions" and "emit[s] unlawfully high levels of pollutants" in violation of "federal laws, including the Clean Air Act." *See, e.g.*, Compl. ¶¶ 188(i)-(ii), 379, 479, 878.

- **Breach of contract**: Each of these claims relies on materially identical allegations that "GM breached these contracts by . . . failing to disclose that the NOx reduction system . . . turns off or is limited during normal driving conditions . . . rendering each Affected Vehicle non-EPA-compliant." *See, e.g.*, Compl. ¶¶ 212, 382, 496, 911.

- **Fraudulent concealment**: Each of these claims relies on materially identical allegations that GM "intentionally failed to disclose . . . that the Affected Vehicles had defective emissions controls, deploy a 'defeat device' . . . and were non-compliant with EPA emissions requirements." *See, e.g.*, Compl. ¶¶ 221, 390, 504, 919.

Plaintiffs ask this Court to permit precisely what the CAA forbids: efforts by "private parties to seek damages or other remedies based on alleged violations of the CAA" vehicle emission standards. *Volkswagen*, 2016 WL 3040492, at *4; *see also In re Office of Attorney Gen. of State of New York*, 269 A.D.2d at 11–12 (CAA preempts plaintiffs' fraud claim based on engine "manufacturers' purported concealment" of "violations of the Federal emissions standards" because "liability would necessarily be based on the scope of those standards"). Plaintiffs' claims undermine the essential purpose of Section 209. Absent a ruling by this Court that plaintiffs' claims are preempted, "the chaotic situation which Congress sought to

avoid would become an overnight reality." *In re Office of Attorney Gen. of State of New York*, 269 A.D.2d at 11–12.[11]

## III. THE PRIMARY JURISDICTION DOCTRINE MANDATES A STAY OF PLAINTIFFS' CLAIMS.

Based on exhaustive testing under the detailed testing protocol mandated by federal law, in 2013 the EPA issued Certificates of Conformity confirming that, "pursuant to section 206 of the Clean Air Act," the diesel Cruze "demonstrated

---

[11] If the complaint is stripped of preempted allegations that the diesel Cruze's emissions do not comply with EPA standards, plaintiffs' claims rest on vague allegations that GM falsely represented in advertisements that the diesel Cruze provided "clean diesel" or "decreasing emissions." *See e.g.* Compl. ¶¶ 66-68. These allegations are subject to dismissal because they are non-actionable puffery. *See Warner v. Ford Motor Co.*, No. CIVA06CV02443-JLKMEH, 2008 WL 4452338, at *9 (D. Colo. Sept. 30, 2008) (dismissing claim under Colorado consumer protection statute as puffery because the allegations "are extremely general . . . and are not representations of fact subject to measure." ); *see also Ram Int'l Inc. v. ADT Sec. Servs., Inc.*, No. 11-10259, 2011 WL 5244936, at *6 (E.D. Mich. Nov. 3, 2011), *aff'd*, 555 F. App'x 493 (6th Cir. 2014) ("Defendant's statements that its products were efficient, reliable, and would protect Plaintiffs' property are examples of opinion and puffery"); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd,* 322 F. App'x 489 (9th Cir. 2009) ("'higher performance,' 'longer battery life,' 'richer multimedia experience,' 'faster access to data' are all non-actionable puffery"); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JFHRL, 2009 WL 3320486, at *7 (N.D. Cal. Oct. 13, 2009) (statement that washing machine "would save the consumer energy and water . . . amounts to puffery, as the statement does not indicate how much water or energy should be consumed by the Machine and makes no verifiable comparison to any identifiable competitive machine or model"); *Urbino v. Ambit Energy Holdings, LLC*, No. CIV.A. 14-5184 MAS, 2015 WL 4510201, at *5 (D.N.J. July 24, 2015) ("claims of 'substantial savings,' 'low, competitive rates,' 'exceptional value,' and 'great savings'" deemed non-actionable puffery).

compliance with the applicable emission standards."[12]   The complaint does not allege any plausible basis for questioning the EPA's certification.  But even if it did, and even if plaintiffs' claims were not preempted, the primary jurisdiction doctrine dictates that the Court stay this litigation and refer plaintiffs' claims to the EPA and CARB for administrative review.

The primary jurisdiction doctrine arises when a claim contains "some issue within the special competence of an administrative agency." *United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997) (*citing Reiter v. Cooper*, 507 U.S. 258, 268 (1993)).  "When the doctrine is applicable, court proceedings are stayed so as to give the parties reasonable opportunity to 'refer' the matter to an agency by seeking an administrative ruling."  *Id.; see also Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010) (referring matter for review by the FCC and noting "the benefits of securing a prompt ruling from the agency before rather than after our decision"); *Mich. Elec. Transmission Co. v. Midland Cogeneration Venture, Ltd. P'ship*, 737 F. Supp. 2d 715, 733 (E.D. Mich. 2010) ("Even if resolution of these questions does not fall within FERC's exclusive jurisdiction, the question is potentially referable to FERC under the 'primary jurisdiction'

---

[12] *See e.g.* United States Environmental Protection Agency 2014 Model Year Certificate Of Conformity With The Clean Air Act Of 1990, dated April 11, 2013, available at https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=30086&flag=1, (Ex. 1).

doctrine"); *Am. Auto. Mfrs. Ass'n v. Massachusetts Dep't of Envtl. Prot.*, 163 F.3d 74, 84 (1st Cir. 1998) (referring question regarding emissions standards "to the EPA for its consideration").

This doctrine is rooted in the principle that "questions within the special competency of an administrative agency should be resolved by that agency." *Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n*, 913 F.2d 305, 309-10 (6th Cir. 1990). This is because "the decisionmaker with the most expertise and broadest perspective regarding a statutory or regulatory scheme will be most likely to resolve the issue correctly." *United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 664 (6th Cir. 2000). While there is no fixed formula for the doctrine's application, the Sixth Circuit has directed lower courts to stay proceedings of this nature, and refer underlying issues for administrative review, where doing so will permit the court: "(1) to advance regulatory uniformity . . . (2) to answer a question [] within the agency's discretion, and (3) to benefit from technical or policy considerations within the agency's expertise." *Charvat*, 630 F.3d at 466 (citations omitted).

Here, all three objectives warrant a stay. First, on regulatory uniformity, a judicial determination contradicting the EPA's existing Certificates of Compliance would undermine Congress's express intent that automakers "obtain clear and consistent answers concerning emission controls and standards" from a uniform

28

national regulatory body. H.R.Rep. No. 90-728. And considering and adopting plaintiffs' different testing methodologies would create the precise "patchwork" of emission regulations that the CAA was intended to prevent.[13] *See Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979).

Second, this case implicates important policy "question[s] within the [EPA's] discretion." *Charvat,* 630 F.3d at 466. Plaintiffs are asking this Court to reject detailed federal regulations governing emission testing methodologies, which are authored and enforced by the EPA, in favor of plaintiffs' different methodologies. But the EPA "has final authority for prescribing the regulations which control" federal emission standards, and thus one of "[t]he ultimate issue[s] in this case . . . is a question that is certainly central to the [EPA's] procedures." *Alltel Tenn.*, 913 F.2d at 309-10.

Third, consideration of plaintiffs' claims would unquestionably "benefit from technical or policy considerations within the [EPA's] expertise." *Charvat,*

---

[13] Compliance with federal emission standards is determined based on laboratory testing following the FTP and SFTP methods described above. *See also* 40 C.F.R. §§ 86.1811-04, 86.1841-01, 86.127-12, 86.158-08; Cal. Code Regs. tit. 13, §§ 1960.1(r), 1961(a)(7). In contrast, plaintiffs purport to rely on testing conducted using a Portable Emissions Measurement Systems ("PEMS"), a portable device that can be attached to the tailpipe of a vehicle and can record data through "on the road" testing. PEMS testing has never been adopted by the EPA for light duty vehicles due to the inability to obtain the same degree of accuracy as certification-grade instruments in a laboratory environment.

630 F.3d at 466. The claims go directly to complex technical issues that are at the heart of the EPA's "special competency" in interpreting and applying federal vehicle emission standards. *See Alltel*, 913 F.2d at 309-10. Resolving plaintiffs' claims will require, *inter alia*, wading into the labyrinthine set of technical requirements defining permissible auxiliary emissions control devices ("AECDs") that are decidedly outside the "conventional experience of judges."[14] *See In re Long Distance Telecommunications Litig.*, 831 F.2d 627, 629-30 (6th Cir. 1987) (internal citations and punctuation omitted).

Finally, from a practical standpoint, concerns over judicial economy weigh strongly in favor of staying this proceeding. With the EPA and CARB in position to review any issues raised by plaintiffs' claims, and with the technical expertise to do so, it is in the best interests of the parties, the Court, and the regulatory system that this case be stayed to allow that review to be conducted by the agencies.

---

[14] *See, e.g.*, 40 C.F.R. §§ 86.113-94, 86.115-78, 86.161-00 (establishing fuel specifications, dynamometer driving schedules, and ambient temperature and humidity requirements for emissions testing); § 86.1844-01(d)(11) (defining permissible auxiliary emissions control devices); § 86.1803-01 (defining defeat devices and related exceptions).

## IV. PLAINTIFFS' CLAIMS DO NOT MEET FEDERAL PLEADING REQUIREMENTS.

Beyond the lack of standing and subject matter jurisdiction, as well as the mandate of preemption, plaintiffs fail to state their claims because they do not meet basic federal pleading requirements as follows.

### A. Plaintiffs Do Not State A Breach Of Contract Claim Against GM.

The existence of a valid contract is a required element of any breach of contract claim. *E.g.*, *Haviland v. Metro. Life Ins. Co.*, 876 F. Supp. 2d 946, 957 (E.D. Mich. 2012), *aff'd,* 730 F.3d 563 (6th Cir. 2013). This is the law in all of the states where plaintiffs here purport to bring their claims. *See* Appendix A (Ex. 3). Courts thus routinely dismiss breach of contract claims when a complaint lacks facts alleging the existence of a contract. *See, e.g.*, *Haviland*, 876 F. Supp. 2d at 957 (dismissing contract claim that failed to identify any contract); *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1056 (C.D. Cal. 2014) (plaintiffs' "breach of contract claim fails because they did not even allege that a contract existed"); *Cheren v. Compass Bank*, No. CV-12-00206-PHX-JAT, 2012 WL 5381445, at * 3 (D. Ariz. Nov. 2, 2012) (because "Plaintiffs have not pleaded enough facts to show the existence of a valid contract, Plaintiffs' claims of breach of contract . . . become not only implausible but impossible").

Plaintiffs do not plausibly allege a contract with GM. Despite the generic allegation that "each and every sale or lease of an Affected Vehicle constitutes a

contract between GM and the purchaser or leasee," *e.g.*, Compl. ¶ 122, plaintiffs admit that they each purchased their vehicles from an entity *other than GM*. *Id.* ¶ 20 (purchased from "Sundae Chevrolet"); *id.* ¶ 23 (purchased from "Vic Canever Chevrolet"); *id.* ¶ 26 (purchased from "a dealership in Santa Barbara, California"); *id.* ¶ 27 (purchased from "Steve Schmidt-Brubaker, Inc."); *id.* ¶ 30 (purchased from "Maher Chevrolet"); *id.* ¶ 33 (purchased from "Jerry's Chevrolet & Mitsubishi"); *id.* ¶ 36 (purchased from "Sun Auto Warehouse"); *id.* ¶ 39 (purchased from "Progressive Chevrolet"); *id.* ¶ 42 (purchased from "a seller in Fort Worth, Texas"). "It is well settled law that one must be a party to a contract in order to be held liable for its breach." *Herman v. Bridgewater Park Apartments*, No. 15-cv-12203, 2016 WL 826050, at *5 (E.D. Mich. Mar. 3, 2016). Because the complaint does not allege that GM was a party to any plaintiff's purchase agreement, the breach of contract claims should be dismissed.

Plaintiffs' contract claims should also be dismissed because they do not identify any specific contract provision that GM allegedly breached. "It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Harris v. Am. Postal Workers Union*, 198 F.3d 245 (6th Cir. 1999). Under the laws of every applicable state here, the failure to do so provides an independent ground for dismissal. *E.g.*, *Cruz v. Underwriters at Lloyd's London*,

No. 8:14-cv-1539-T-33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014) ("It is appropriate to dismiss a breach of contract claim if it fails to state which provision of the contract was breached."); *Caraccioli v. Facebook, Inc.*, No. 5:15-cv-04145-EJD, 2016 WL 859863, at *4 (N.D. Cal. Mar. 7, 2016) ("To properly plead breach of contract, 'the complaint must identify the specific provision of the contract allegedly breached by the defendant.'") (citation omitted); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) ("To plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached."); *see also* Appendix A.[15]

### B. Plaintiffs Do Not State A Claim For Fraudulent Concealment.

To state a fraudulent concealment claim under the laws of the relevant states, plaintiffs must assert that (i) the defendant omitted a material fact, (ii) plaintiffs relied on the omission of the material fact to their detriment and/or the omission caused plaintiffs' injuries, and (iii) the defendant had a duty to disclose the material fact. *See* Appendix B (Ex. 4). In addition, because such claims sound in

---

[15] In the nearly identical suit brought against Mercedes-Benz by the same attorneys representing plaintiffs here, the plaintiffs "d[id] not oppose dismissal of their breach of contract claims and concede[d] that, at a minimum, amending is necessary." Pls.' Opp. to Defs.' Mot. to Dismiss and Compel Arbitration at 1, n.2, *In re Mercedes-Benz Emissions Litig.*, No. 16-881(JLL)(JAD), (D.N.J. Aug. 5, 2016), ECF No. 45.

fraud, plaintiffs must allege these elements with the particularity required by Rule 9(b). Plaintiffs do not meet these requirements.

### 1. Plaintiffs do not satisfy the heightened pleading requirements of Rule 9(b).

Plaintiffs' conclusory allegations in support of their fraudulent concealment claims do not meet the heightened pleading standard of Rule 9(b). "Rule 9(b) is designed, not only to put defendants on notice of alleged misconduct, but also to prevent fishing expeditions and to narrow potentially wide-ranging discovery to relevant matters." *Republic Bank & Trust Co. v. Bear Stearns & Co*., 683 F.3d 239, 255 (6th Cir. 2012) (internal citations and punctuation omitted). To allege a claim sounding in fraud, "a plaintiff, at a minimum, must allege the time, place, and content of [any] alleged misrepresentation on which he or she relied." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005) (internal citations and punctuation omitted); *Republic*, 683 F.3d at 256 (Rule 9(b) requires specific allegations concerning "'the who, what, when, where, and how' of the alleged omission") (citation omitted).

Plaintiffs do not allege facts sufficient to show that their claim that the diesel Cruze violates EPA emission standards is plausible. Such factual allegations are necessary to support a claim based on fraudulent omission because defendants "cannot be faulted for failing to reveal material 'facts' that did not exist." *Storey v. Attends Healthcare Prod., Inc.*, No. 15-CV-13577, 2016 WL 3125210, at *10

34

(E.D. Mich. June 3, 2016) (dismissing claim premised on fraudulent omission under the Michigan Consumer Protection Act).[16]

Plaintiffs concede that EPA testing confirmed the 2014 diesel Cruze's compliance with the relevant standards. Against that backdrop, plaintiffs make conclusory allegations that they "have tested the Cruze" and that such testing "revealed that the Cruze fails to meet U.S. emissions standards as promised." Compl. at ¶ 87. Plaintiffs do not allege any details of the alleged testing (when it was conducted or by whom) and do not even allege that the vehicle tested was a 2014 diesel Cruze. These bare allegations are insufficient and warrant dismissal. *Storey,* 2016 WL 3125210 at *10 (dismissing because plaintiffs "utterly failed to adduce facts that tend to support the truth of these conclusory allegations").

Plaintiffs likewise do not allege any facts to establish their individual reliance on any alleged omission or a causal connection between any alleged omission and any claimed injury. They make the same generic and conclusory allegations that, at an unspecified time, GM misrepresented the Cruze's emissions system in unspecified "advertisements and representations." *See, e.g.*, Compl. ¶¶

---

[16] "[A]lthough courts have permitted allegations of fraud based upon information and belief, the complaint must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (internal citations and punctuation omitted).

20, 23, 26.  The complaint contains no allegations that any specific plaintiff relied on or even read any particular misleading advertisement or omission.  The complaint does not provide any details concerning "'the who, what, when, where, and how' of [any] alleged omission." *Republic*, 683 F.3d at 256; *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997) (dismissing claim where plaintiff failed to "specifically identi[f]y the representations, advertisements, and promotional materials that omitted the reference to the defect[], misled him, and upon which he relied"); *see also Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 546 (S.D. W. Va. 2014) (same).  While the complaint does cite a few GM advertisements, it is "void of allegations that [plaintiffs] or anyone in the class actually read any of the [allegedly] misleading [advertisements] or even knew of their existence."  *See Morse v. Abbott Labs.*, 756 F. Supp. 1108, 1112 (N.D. Ill. 1991).[17]

Rule 9(b) requires that plaintiffs allege these basic facts, and the Court should dismiss plaintiffs' fraudulent concealment claims for failure to do so.  *See Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich.

---

[17] *See also Lanier v. Syncreon Holdings, Ltd.*, No. 11-14780, 2012 WL 3475680, at *9 (E.D. Mich. Aug. 14, 2012) ("it is not the Court's job to parse the previous 121 paragraphs of the Amended Complaint to attempt to determine which allegations correspond to which element of a claim of fraud. The particularized information must be set forth clearly and succinctly under the heading of the cause of action for fraud, not spread scattershot throughout 23 pages of generalized allegations").

July 24, 2006) (allegations that defendant misrepresented product "generally in its 'advertisements, marketing materials, and sales message'" deemed insufficient); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, MDL No. 1718, 2007 WL 2421480, at *9 (E.D. Mich. Aug. 24, 2007) ("Plaintiffs fail to identify the representation(s) made by Ford on which they allegedly relied with any specificity" and "do not allege where or when Ford made the alleged misrepresentations").[18]

### 2. Plaintiffs do not allege a duty to disclose.

Plaintiffs do not allege that GM omitted providing information about the Cruze's emissions that it had a duty to disclose. Such a duty is a necessary element of a fraudulent concealment claim under the law of each applicable state. *See*

---

[18] *See also In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) (dismissing fraudulent omission claim where plaintiff failed to allege "the context of the omission and the manner in which it misled plaintiff"); *Lanier*, 2012 WL 3475680, at *9. Aug. 14, 2012) ("None of the allegations under Count I is specific as to the precise statements alleged to be fraudulent, the particular speaker, the time and place the statements were made"); *Rosipko v. FCA US, LLC*, No. 15-11030, 2015 WL 8007649, at *3 (E.D. Mich. Dec. 7, 2015) (plaintiffs must specifically allege "when or where any purported affirmative representations were made," "the precise content of what was represented" and "when, where, or how Plaintiffs ever heard or saw any purported representation").

Appendix B.[19]   Plaintiffs' failure to allege facts showing such a duty warrants dismissal.

In place of facts establishing a duty, plaintiffs make circular allegations that GM had a duty to disclose because it made representations that "were misleading, deceptive, and incomplete without the disclosure of the additional facts."  *See, e.g.*, Compl. ¶¶ 226, 396, 510, 925.   Plaintiffs rely exclusively on their bare assertion that "GM had exclusive knowledge as to such facts" or "actively concealed" such facts, but never identify what these "facts" are.   *See, e.g.*, Compl. ¶¶ 226-27, 396-97, 510-11, 925-26.  Plaintiffs do not allege who at GM was purportedly aware of these unidentified facts, the source of that knowledge, or any actions GM took to conceal the facts.  This Court "will not consider [p]laintiffs' legal conclusion of duty to be true without any factual allegations to support such a conclusion."  *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, No. MDL 1718, 2007 WL 2421480, at *8 (E.D. Mich. Aug. 24, 2007) (dismissing fraudulent omission claims).

Without any allegations of actual facts giving rise to a duty to disclose, or any particularized facts meeting Rule 9(b), plaintiffs' fraudulent concealment

---

[19] The sole exception to this rule is Arizona.  However, there is no allegation that any of the named plaintiffs purchased a vehicle in Arizona, and thus there would be no basis to apply Arizona law to any plaintiff's fraud claims. *See* Section I.B., *infra*.

claims should be dismissed.  *See Kampuries v. Am. Honda Motor Co.*, No. 15-CV-5061(JFB)(AKT), 2016 WL 4613361, at *6 (E.D.N.Y. Sept. 6, 2016) ("Plaintiff offers only the conclusory assertion that defendants knew about defects in the airbags since 2000, but 'concealed from or failed to notify [him] and the public'…. Such flimsy and unfounded allegations are insufficient to make out a claim for fraudulent concealment"); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (dismissing fraudulent concealment claim premised on "conclusory assertion that Defendants 'actively concealed material facts from Plaintiff and the Class'"); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) ("The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation").[20]

### C.    Plaintiffs Do Not State Claims For Violations Of State Consumer Protection Statutes.

Plaintiffs' claims under state consumer protection laws likewise fail to meet the heightened pleading standard of Rule 9(b).  Rule 9(b) applies with equal force to alleged violations of state consumer protection statutes predicated on

---

[20] There are additional state-specific grounds for dismissal of plaintiffs' fraudulent concealment claims under the laws of certain states.  These claims are barred by the economic loss doctrine in Florida, New Jersey and Pennsylvania, and under Connecticut law, there is no independent cause of action for fraudulent concealment. *See* Appendix B.

"affirmative misrepresentations and alleged omissions."[21]   *Rosipko v. FCA US, LLC*, No. 15-11030, 2015 WL 8007649, at \*4 (E.D. Mich. Dec. 7, 2015); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, No. MDL 1718, 2007 WL 2421480, at \*9 (E.D. Mich. Aug. 24, 2007) ("State consumer-fraud act claims asserted in federal court must [also] satisfy Rule 9(b)"); *Storey*, 2016 WL 3125210, at \*10 (requiring "the who, what, when, where, and how" of the alleged statutory violation).

Under each of the relevant state statutes, plaintiffs are required "to state a plausible claim for relief" by "plead[ing] facts from which we might infer that the [defendant's] representations . . . were false, deceptive, or misleading." *In re GNC Corp.*, 789 F.3d 505, 513 (4th Cir. 2015) (addressing, *inter alia*, consumer protections statutes from California, Florida, Ohio, Illinois, and New York); *see also* Appendix C (Ex. 5).  The alleged false or misleading statements must be "identified with particularity," and plaintiffs must "plead with specificity the

---

[21] The Second Circuit held that a claim under New York's General Business Law §§ 349-50 need only satisfy the ordinary pleading standards of Rule 8(a), and not the heightened standard of Rule 9(b).  Plaintiffs' claim under this statute is deficient even under the Rule 8 pleading standard because, *inter alia*, it is "pleaded upon information and belief, lack[s] specificity, and allege[s] mere conclusions." *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997).  Plaintiffs provide "no factual information to plausibly suggest that" the diesel Cruze fails to comply with EPA standards. *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 466 (S.D.N.Y. 2014).

allegedly deceptive acts or practices that form the basis" of their claims. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 665-66 (E.D. Mich. 2011) (dismissing inadequately pleaded claims under Florida, Michigan, and New York consumer fraud statutes).

Plaintiffs' consumer claims center around one allegation—the 2014 diesel Cruze's non-compliance with EPA standards—for which plaintiffs allege no substantiating facts or details. Such factual allegations are necessary to support these claims because there is nothing deceptive or misleading about "failing to reveal material 'facts' that did not exist." *Storey*, 2016 WL 3125210, at *10 (June 3, 2016) (dismissing claim premised on fraudulent omission under the Michigan Consumer Protection Act).

Plaintiffs also make generic allegations that, at an unspecified time, GM misrepresented the Cruze's emissions system in unspecified "advertisements and representations." *See, e.g.*, Compl. ¶¶ 20, 23, 26. These conclusory allegations that GM misrepresented the Cruze "generally in its 'advertisements, marketing materials, and sales message'" are insufficient to support a statutory consumer fraud claim.[22] *See Williams*, 2006 WL 2077588, at *7 (applying Rule 9(b) to

---

[22] In addition to these pleading deficiencies, there are state-specific grounds for dismissal of plaintiffs' statutory claims under the laws of certain states. *See* Appendix C. Failure to allege privity of contract is fatal to claims under the Idaho

(continued…)

41

dismiss claim under Michigan Consumer Protection Act because plaintiff "fails to identify the representation(s) made by Scottrade on which he allegedly relied with any specificity"); *Rosipko*, 2015 WL 8007649, at *3 (dismissing consumer fraud claim for failure to allege "when or where any purported affirmative representations were made," "the precise content of what was represented" and "when, where, or how Plaintiffs ever heard or saw any purported representation"); *In re Ford*, 2007 WL 2421480, at *9 (dismissing consumer fraud claims because "Plaintiffs fail to identify the representation(s) made by Ford on which they allegedly relied with any specificity").  Plaintiffs do not allege any of these required facts of the specific representation, its contents, when they heard or saw it,

---

(continued…)

Consumer Protection Act and the Kentucky Consumer Protection Act, while plaintiffs' failure to plead a duty to disclose dooms their claim under the North Carolina Unfair and Deceptive Trade Practices Act.  *See id.*  And plaintiffs cannot bring a class action claim under Ohio's Consumers Sales Practice Act because they have not alleged that GM "had prior notice that its conduct was 'deceptive or unconscionable.'"  *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) (citing O.R.C. § 1345.09(B)).  To adequately plead prior notice, "plaintiff[s] must allege either that 'a specific rule or regulation has been promulgated [by the Ohio Attorney General] under R.C. 1345.05 that specifically characterizes the challenged practice as unfair or deceptive,' or that 'an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection.'"  *Id.* (citing *Johnson v. Microsoft Corp.,* 802 N.E.2d 712, 720 (Ohio Ct. App. 2003).

how they relied on it, or how it caused any injuries. Their consumer fraud claims should therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, GM respectfully requests that all of plaintiffs' claims be dismissed.

October 3, 2016                         Respectfully submitted,

*/s/ Michael P. Cooney*

Michael P. Cooney (P39405)
Christopher Burtley (P80203)
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, MI 48243
Telephone: (313) 568-6955
Fax: (313) 568-6893
mcooney@dykema.com
cburtley@dykema.com

Kathleen Taylor Sooy
April N. Ross
Rebecca B. Chaney
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
aross@crowell.com
rchaney@crowell.com

*Counsel for Defendant*
*General Motors LLC*

43

## __CERTIFICATE OF SERVICE__

The undersigned hereby certifies that on October 3, 2016 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.


*/s/ Michael P. Cooney*
Michael P. Cooney (P39405)

4841-5986-2842.1
ID\COONEY, MICHAEL - 106069\000484

44