UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON COUNTS, et al,

                Plaintiff,                        Case No. 16-cv-12541

v.                                                      Honorable Thomas L. Ludington

GENERAL MOTORS, LLC,

                Defendants.
_____/

**ORDER DENYING MOTION FOR CLARIFICATION**

On June 7, 2016, nine plaintiffs filed a 442-page complaint alleging deceptive advertising, breach of contract, and fraudulent concealment claims under the laws of thirty states against Defendant General Motors ("GM"). ECF No. 1. Fundamentally, Plaintiffs allege that GM installed a "defeat device" in the 2014 Chevrolet Cruze Diesel which results in significantly higher emissions when the vehicle is in use compared to when it is being tested in laboratory conditions. Defendant filed a motion to dismiss several months later which made multiple arguments, including that the claims were preempted because they depended on proof of noncompliance with EPA regulations governing emissions and "defeat devices." On February 14, 2017, the Court issued an opinion and order which granted in part Defendant's motion to dismiss, but rejected the GM's argument that Plaintiffs' claims were preempted. ECF No. 21. On February 28, 2017, Defendant filed a motion seeking clarification, where they raised a new argument: that Plaintiffs' claims are preempted by EPA regulations to the extent they depend upon proving that the Cruze contains a "defeat device" as that term is defined by the EPA. ECF No. 22. For the reasons that follow, GM's motion will be denied.

**I.**

The allegations in Plaintiffs' complaint were summarized in the Court's February 14, 2017, opinion and order. That summary is adopted in full. For clarity, the most relevant portions will be repeated here.

> The complaint alleges that each Plaintiff is similarly situated. All bought a Chevrolet Cruze which was allegedly equipped with a "defeat device" that resulted in significantly increased emissions when tested during normal driving as compared to when tested in laboratory settings. Plaintiffs further allege that they purchased the vehicle on the "reasonable, but mistaken, belief that [the] vehicle was a 'clean diesel' as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy." *See* Compl. at ¶¶ 20, 23, 26, 27, 30, 33, 36, 39, 42. Further, Plaintiffs allege that they "selected and ultimately purchased [their] vehicles[s], in part, because of the Clean Diesel system, as represented through the advertisements and representations made by GM." *Id.* Finally, Plaintiffs allege that if GM had disclosed the true details of the clean diesel system design or indicated that the 2014 Chevrolet Cruze actually "emitted pollutants at a much higher level than gasoline vehicles do," they "would not have purchased the vehicle, or would have paid less for it." *Id.*
>
> . . .
>
> All parties agree that GM received a certification of compliance with the relevant regulations from the EPA prior to releasing the 2014 Chevrolet Cruze Diesel. However, Plaintiffs allege that, despite that certification and GM's "clean diesel" advertising campaign, the 2014 Chevrolet Cruze Diesel was equipped with a "defeat device" which triggered the Cruze Clean Turbo Diesel functions when the vehicle was being tested, but deactivated the system when the vehicle was actually in use. *Id.* at ¶¶ 73–75.
>
> Specifically, Plaintiffs allege that multiple reports and tests indicate that GM vehicles equipped with "clean diesel" systems "emit far more pollution on the road than in lab tests." *Id.* at ¶ 73.

Feb. 14, 2017, Op. & Order at 2, 4, ECF No. 21.

## II.

GM's motion seeks clarification of the opinion and order granting in part its motion to dismiss. Pursuant to Federal Rule of Civil Procedure 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment,

order, or other part of the record." In response to motions for clarification, courts typically discuss the scope and application of the order being clarified. GM asserts that there is ambiguity regarding how portions of the February 14, 2017, order interact. To the extent there are material ambiguities in the February 14, 2017, opinion and order, they will be addressed below.

### III.

### A.

In the February 14, 2017, Opinion and Order, the Court concluded that "to the extent Plaintiffs are suing GM for manufacturing a vehicle that emits 'more than a certain amount of [NOx or particular emissions]' in violation of EPA regulations or that is not equipped with a properly functioning and federally required 'emission-control technology,' their claims are preempted by the EPA." Feb. 14, 2017, Op. & Order at 23. The Court went on to explain that "Plaintiffs' claims do not directly depend on proof of noncompliance with federal emissions standards."[1] *Id.* at 25. In response to GM's argument that allowing Plaintiffs' to bring suit would create "a 'chaotic patchwork of state standards,'" the Court explained that "Plaintiffs are not attempting to tighten emissions regulations or introduce separate state emissions regulation. . . . Rather, Plaintiffs are attempting to hold GM responsible for what Plaintiffs allege are false representations about certain technology in the Cruze." *Id.* at 26 (quoting *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236 (D.N.J. July 29, 2015)). The Court further explained: "An action by a state attorney general focused on punishing vehicle manufacturers for purposely circumventing federal regulation is substantially

---

[1] However, that is not to say that proof of noncompliance is irrelevant. As the Court indicated in the February 14, 2017, order, "[i]f Plaintiffs show that Cruze is noncompliant with EPA emissions regulations, that would substantiate their claims of misrepresentations." *Id.* at 26 n. 8. *See also id.* at 27 ("There can be no doubt that proving noncompliance would bolster Plaintiffs' claims, but Plaintiffs need not make that showing to prevail.").

different from a suit by private consumers who allege that a vehicle manufacturer misrepresented the functionality and effectiveness of certain technology." *Id.* at 26–27.

The Court then dismissed Plaintiffs' breach of contract and fraudulent misrepresentation claims for failure to state a claim. As mentioned in the February 24, 2017, order, GM's briefing has consistently been premised on a misapprehension of Plaintiffs' (liberally construed) claims. Plaintiffs' "claims do not depend on and thus Plaintiffs need not allege facts indicating that the Cruze violates EPA emissions standards." *Id.* at 32. Rather, Plaintiffs must simply allege that "GM fraudulently concealed or misrepresented that the functionality and effectiveness of the Cruze's 'clean diesel' system was substantially lower than a reasonable customer would expect." *Id.* Because the GM's advertising campaign constituted nonactionable "puffery," Plaintiffs' fraudulent misrepresentation claims were dismissed. *Id.* at 36–39.

However, Plaintiffs' fraudulent concealment claims were adequately alleged. The briefing on those claims focused on whether GM had a duty to disclose the operation of the "defeat device." The Court concluded that, in at least some states, a duty to disclose arises when the defendant has exclusive knowledge of a defect or actively conceals the defect. Rather than specifically addressing the viability of fraudulent concealment claims under the law of specific states, GM argued simply that Plaintiffs did not adequately allege that GM had exclusive knowledge of the "defeat device" or actively concealed it. That argument was rejected:

> If Plaintiffs' allegations are true, GM installed a "defeat device" on the Cruze. The only plausible purpose of such a device is to create the appearance of low emissions without the reality of low emissions. If GM were not attempting to deceive regarding the level of emissions produced by the Cruze, the alleged "defeat device" would not exist. This is sufficient to constitute active concealment.

*Id.* at 40–41.

**B.**

GM's professed confusion regarding the February 14, 2017, order is as follows:

> To proceed on this sole surviving claim, plaintiffs would need to establish the following elements:
>
> - "GM installed a 'defeat device' on the Cruze";
>
> - "GM had a duty to disclose the existence of the 'defeat device'" to plaintiffs;
>
> - GM failed "to disclose the existence of the 'defeat device'" to plaintiffs; and
>
> - Plaintiffs relied on GM's omission and suffered injury in the form of overpayment for their vehicles.
>
> . . . Both the Complaint and GM's motion to dismiss note that (1) the CAA and EPA's implementing regulations are the sole basis for defining a "defeat device," and (2) the use of a "defeat device" is explicitly prohibited under both the CAA and EPA regulations. Plaintiffs allege that GM failed to disclose that it installed an illegal "defeat device" in the Cruze that resulted in non-compliance with EPA emissions regulations. To establish this claim, plaintiffs necessarily will need to prove that GM used a "defeat device" in violation of the CAA and the Cruze's resulting emissions violate federal standards.

Mot Clarification at 3–4, ECF No. 22 (internal citations omitted).

This argument is fundamentally premised on the same misapprehension exhibited throughout GM's motion to dismiss. GM contends that Plaintiffs' surviving claims depend upon proof that the Cruze contained a "defeat device" *as defined by federal law and regulations*. But GM has not demonstrated, given the allocation of the standard of proof at the motion to dismiss stage, that such a showing is a prerequisite for Plaintiffs obtaining relief under their fraudulent concealment or consumer protection law claims. Perhaps GM's perplexity stems from the fact that, in the opinion and order, the Court consistently placed the term "defeat device" in scare quotes. But that particular designation of the term was not meant to imply (much less establish) that the EPA's definition of such a device was being relied upon. Rather, the scare quotes were meant to communicate that "defeat device" was a term of art, a stand-in for the idea of a hidden

vehicle component that, through obfuscation, allows for "the appearance of low emissions without the reality of low emissions."[2] Feb. 14, 2017, Op. & Order at 40.

The opinion and order did not, even by implication, state that Plaintiffs' fraudulent concealment claim was seeking recovery for GM's concealment of a "defeat device" as defined by federal law. Rather, as was explained, "Plaintiffs must allege with particularity facts showing that GM *fraudulently concealed* or misrepresented that the functionality and effectiveness of the Cruze's 'clean diesel' system was substantially lower than a reasonable consumer would expect, given the representations made in GM's advertising campaign." Feb. 14, 2017, Op. & Order at 32 (emphasis added). GM interprets that statement as referring only to Plaintiffs' fraudulent misrepresentation claims. Because the sentence did expressly reference GM's advertising campaign, that interpretation is not unreasonable. But, as made clear by the fact that both the fraudulent misrepresentation *and* fraudulent concealment claims were mentioned, that reasonable consumer standard applies to the fraudulent concealment claims as well.[3] In general, proof of fraudulent concealment simply requires showing that material facts were concealed in a way that would mislead a reasonable consumer about the true condition of the property, thus causing damage. There is no doubt that proof that the Cruze contains a "defeat device" as defined by federal law would be exceedingly relevant to Plaintiffs' claims. But (at least based on the arguments GM has made to this point) Plaintiffs could prevail upon their fraudulent concealment claim without proving GM's noncompliance with EPA regulations.

GM makes much of the fact that Plaintiffs define "defeat device" in their Complaint by referring to EPA regulations. *See* Compl. at ¶ 13. The Complaint does reference the federal

---

[2] The term "defeat device" does suggest that the device's purpose is to "defeat" something, presumably emissions standards. But the fact that the term "defeat device" originated in the context of emissions regulations does not mean that an equivalent device could not simultaneously cause redressable injury to private consumers.

[3] Indeed, even though GM's advertising campaign does not constitute actionable misrepresentations, it does provide context for the question of whether GM made material omissions that would have misled a reasonable consumer.

definition of "defeat device," but a fair reading of the Complaint does not compel the conclusion that Plaintiffs are predicating their claim for relief upon proof that the Cruze contains a "defeat device" as that term is defined by federal law. Paragraph Thirteen of the Complaint, where the federal definition is provided, reads as a technical explanation of the kind of component which Plaintiffs allege has caused their injury. Plaintiffs allege throughout the remainder of the complaint that GM intentionally concealed several material facts about the Cruze. *See, e.g.,* Compl. at ¶¶ 20, 126. At the motion to dismiss stage, all reasonable inferences must be drawn in Plaintiffs' favor. GM interprets Plaintiffs' complaint in a narrow fashion and argues that it is preempted, but that approach is incompatible with the Rule 12(b)(6) pleading standard.

Success upon Plaintiffs' fraudulent concealment claim would likely also provide the basis for the EPA to conclude that GM has installed an illegal "defeat device" in the Cruze. But the fact that success on a cause of action might also demonstrate regulatory noncompliance does not mean that the cause of action is itself premised on proof of the regulatory noncompliance.

GM further argues that Plaintiffs' claims would still be preempted even if Plaintiffs claims are construed as only alleging that GM failed to disclose lawful emissions technology. Def. Reply Br. at 3. GM asserts that such a claim would be preempted because "it would allow individual states to set and enforce their own regulations governing vehicle emissions, separate from those of the EPA, and thus would create the precise 'chaotic patchwork of state standards' that CAA § 209 was intended to avoid." *Id.* at 3–4 (quoting Feb. 14, 2017, Op. & Order at 26.

That argument is without merit. If accepted, consumers would be unable to hold vehicle manufacturers liable for any intentionally defective technology, if the technology also impacted or concealed the vehicle's emissions levels. Plaintiffs are attempting to hold GM responsible for allegedly concealing the (non)functionality of certain technology within the Cruze, "not

attempting to tighten emissions regulations or introduce separate state emissions regulations." Feb. 14, 2017, Op. & Order at 26. The case which GM cited in its motion to dismiss for the proposition that permitting Plaintiffs' claims to proceed would create a chaotic patchwork of state standards, *In re Office of Attorney Gen. of State of N.Y.*, involved an attempt by the New York state attorney general to hold vehicle manufacturers liable for circumventing EPA regulations. 269 A.D.2d 1, 10 (2000). But "[a]n action by a state attorney general focused on punishing vehicle manufacturers for purposely circumventing federal regulation is substantially different from a suit by private consumers who allege that a vehicle manufacturer misrepresented the functionality and effectiveness of certain technology." Feb. 14, 2017, Op. & Order at 26–27. *See also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236 at *11 (D.N.J. July 29, 2015) ("Plaintiffs' claims which seek enforcement of express and implied warranties for defects in the Engines' emissions systems, as well as those based on consumer fraud and negligent design, are hardly comparable to efforts by state and local governments to adopt or enforce emissions standards or to require additional certifications or inspections prior to sale.").

For the reasons articulated above (which largely reiterate the analysis in the February 14, 2017, Opinion and Order), Plaintiffs' fraudulent concealment claims are not preempted.

**IV.**

Accordingly, it is **ORDERED** that Defendant's motion for clarification, ECF No. 22, is **DENIED**.


Dated: April 20, 2017               s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 20, 2017.

                                                  s/Michael A. Sian
                                                 MICHAEL A. SIAN, Case Manager