UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON COUNTS, et al,

        Plaintiffs,         Case No. 16-cv-12541

v.         Honorable Thomas L. Ludington

GENERAL MOTORS, LLC,

        Defendant.
_____/

**ORDER GRANTING MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

On June 7, 2016, nine plaintiffs (including first-named Plaintiff Jason Counts) filed a 442-page complaint framing a putative class-action and alleging deceptive advertising, breach of contract, and fraudulent concealment claims under the laws of thirty states against Defendant General Motors ("GM"). ECF No. 1. Fundamentally, Plaintiffs allege that GM installed a "defeat device" in the 2014 Chevrolet Cruze Diesel which results in significantly higher emissions when the vehicle is in use compared to when it is being tested in laboratory conditions. GM filed a motion to dismiss on October 3, 2016, which was granted in part and denied in part. ECF Nos. 12, 21.

After the motion was denied in part, Plaintiffs' counsel initiated another suit involving similar allegations but different diesel vehicles and naming GM as a Defendant. *In re Duramax Litigation*, Case No. 17-cv-11661. That complaint also named Bosch, a German company, as a Defendant and alleged that certain electronic devices supplied by Bosch to GM enabled the defeat devices.

*Counts* has been in discovery since GM's motion to dismiss was denied in part. The original scheduling order set discovery to end on November 21, 2017, and set the dispositive

motion deadline for December 21, 2017. ECF No. 28. Several months later, the parties filed competing motions to amend the scheduling order. ECF Nos. 36, 37. On September 26, 2017, the Court issued an order granting in part GM's motion to modify the scheduling order and denying Plaintiffs's motion to modify the scheduling order. ECF No. 38. Pursuant to that order, the discovery deadline was extended to March 30, 2018, and the dispositive motion deadline was reset for June 11, 2018.

On November 3, 2017, Plaintiffs filed a motion to compel and for court-supervised discovery milestones. ECF No. 43. The motion was referred to Magistrate Judge Morris. In the motion, Plaintiffs alleged that "GM has produced few documents and has claimed that it cannot even begin its search for the remaining responsive documents until the parties are 'on the same page'" regarding the scope of electronic discovery. *Id.* at 1. In the motion, Plaintiffs identified Bosch, a German company, as the creator of an electronic engine component which enabled the alleged "emissions-cheating software." *Id.* at 2. Plaintiffs explained that Bosch was facing suit in other jurisdictions for its involvement in emissions fraud, and asserted that the "fall-out from the [Volkswagen] scandal is now implicating other users of Bosch's EDC17 engine control unit, including GM." In its response to the motion to compel, GM indicated that it had already produced 27,000 documents and that it intended to produce another 7,000 by the end of November. ECF No. 46 at 3.

On December 11, 2017, Plaintiffs partially withdrew their motion to compel. ECF No. 66. In the notice, Plaintiffs explained that "Plaintiffs and GM have agreed to (1) the use of search terms in lieu of Technology Assisted Review, (2) a stipulated set of interim deadlines for the production of documents responsive to Plaintiffs' First Requests for Production, and (3) a stipulated request to extend the discovery deadlines." *Id.* at 1. The next day, Magistrate Judge

Morris granted in part the motion to compel, outlining the relevant scope of the documents GM must produce. One week later, the Court adopted a proposed stipulated order which extended the discovery deadline to July 31, 2018, and set the dispositive motion cutoff for October 11, 2018. In that stipulation, the parties outlined their agreement for GM to "begin a rolling production of documents on either (1) January 17, 2018," or thirty days after the Court issued an order resolving search term disputes and completing production on February 28, 2018, or seventy-five days after the Court issued an order resolving search term disputes. *Id.* at 3.

On February 20, 2018, the Court issued an order denying motions to dismiss by GM and Bosch in the *Duramax* litigation. Case No. 17-cv-11661, ECF No. 61. In that order, the Court concluded that Plaintiffs had plausibly stated a Racketeering Influenced and Corrupt Organizations Act claim against both GM and Bosch. *Id.*; 18 U.S.C. § 1961 *et seq.*

On February 23, 2018, Plaintiffs filed a second motion to compel production of documents in *Counts*. ECF No. 70. This motion was also referred to Magistrate Judge Morris. In that motion, Plaintiffs alleged that "[d]espite agreeing to begin document production on a rolling basis, no additional documents have been produced since November 2017." *Id.* at 3–4. The delay in production appears to have stemmed from disputes between the parties regarding the proper search terms to use in identifying relevant electronic discovery. *See id.* at 4 ("In an effort to narrow issues before the Court on Plaintiffs' motion to compel, Plaintiffs have agreed to use search terms instead of Technology Assisted Review.").

In response, GM asserted that it was "in the process of reviewing hundreds of thousands of documents that hit on an expansive set of agreed search terms, including nearly all of Plaintiffs' proposed search terms." GM Resp. at 1, ECF No. 75. GM further reiterated that it had already "produced over 33,000 documents in October and November 2017." *Id.* GM explained that it

started its electronic "search term review in late January (days after the parties agreed on the undisputed terms) and produced over 16,000 documents in its first supplemental rolling production approximately one month later." *Id.* at 3. In their reply brief, Plaintiffs accused GM of refusing "to produce any documents in this case unless faced with a motion to compel." Pl. Reply. Br. at 1, ECF No. 76. Plaintiffs asserted that "it took GM six months to produce any documents, and they did so only after Plaintiffs threated to move the Court in late September. And then no additional documents, save those improperly withheld from the first production, were produced by GM until shortly after Plaintiffs filed the instant Motion to Compel." *Id.* at 1–2.

On April 6, 2018, before the second motion was resolved, Plaintiffs filed the present motion for leave to file an amended complaint. ECF No. 82. A week later, Judge Morris issued an order granting in part and denying in part the second motion to compel. ECF No. 83. On May 9, 2018, the Court adopted a proposed stipulated order which extended the discovery deadline to November 30, 2018, and reset the dispositive motion deadline for February 1, 2019. ECF No. 92. In the stipulation, the parties agreed that "the total volume of documents produced by GM to date has exceeded 70,000 documents, and GM's production is ongoing." *Id.* at 2. In a declaration attached to the motion for leave to file an amended complaint, one of Plaintiffs' attorneys indicates that GM produced an additional 130,000 pages of documents on March 7, 2017. Thompson Decl. at 1, ECF No. 82, Ex. A.

**I.**

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Denial of a motion to amend is appropriate, however, "'where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). *See also United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) ("Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality."). "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction. *Phelps*, 30 F.3d at 662–63.

## II.

In Plaintiffs' proposed first amended complaint, they seek to add Robert Bosch GmbH and Robert Bosch LLC (collectively, "Bosch") as Defendants, add a RICO claim against all three Defendants, and add Bosch as Defendants to Plaintiffs' state law claims. In opposing this motion, GM makes three arguments. First, GM argues that Plaintiffs have had actual or constructive notice of Bosch's involvement with GM's diesel vehicle production since at least the filing of the complaint in the *Duramax* litigation. Second, GM believes that Plaintiffs' true motivation behind seeking leave to amend is the Court's denial of GM's (and Bosch's) motion to dismiss a similar RICO claim in the *Duramax* litigation. GM argues that this "wait-and-see" approach is disfavored by courts and should not be rewarded. Third, GM argues that allowing the amendment will substantially prejudice GM by substantially delaying the resolution of the litigation and

dramatically altering the "landscape of the litigation." Def. Resp. Br. at 18, ECF No. 86. Presently, GM does not oppose amendment on futility grounds (but GM indicates that it may move to dismiss if Plaintiffs' motion is granted). *Id.* at 12. Each of GM's arguments will be addressed in turn.

**1.**

The initial question is whether Plaintiffs have unduly delayed in seeking amendment. GM argues that the new factual allegations which Plaintiffs wish to rely upon, including Bosch's involvement in the design of the Cruze's emissions technology, have been known to Plaintiffs for over a year.

It is true that the Plaintiffs in *Duramax* (represented by the same attorneys who represent the Plaintiffs in *Counts*) filed claims against Bosch on May 25, 2017. Similar allegations could presumably have been made in *Counts* at the same time. However, Plaintiffs seek to add corroborating information uncovered during discovery which they believe will strengthen and particularize their allegations against Bosch. *See* Pl. Reply. Br. at 3–4. For example, the proposed amended complaint includes allegations regarding Bosch's involvement "in the regulatory process for Affected Vehicles from the beginning." Prop. Am. Compl. (Unredacted) at 80, ECF No. 81. Plaintiffs identify two presentations by Bosch personnel to GM employees wherein Bosch allegedly offered to help GM balance its emissions technology requirements with government regulations. *Id.* at 81.

Plaintiffs likewise allege that Bosch and GM discussed "the EDC17's ability to measure air temperature and shut off emissions after treatment" as well as the impossibility, in July 2012, of "increasing fuel efficiency" without violating emissions standards. *Id.* at 81–82. According to Plaintiffs, Bosch implemented "a timer that measures the 'active time during life time in real-world driving'" to the EDC17 at GM's request in July and August of 2012. Plaintiffs allege that,

throughout the remainder of 2012 and into 2013, Bosch and GM met regularly to "review AEDCs and EPA and CARB 'compliance risks.'" *Id.* at 83. Plaintiffs believe that Bosch "aided GM in drafting regulatory submissions such as AECD disclosures," and cite a number of emails as proof. *Id.*

These allegations are predicated on internal and confidential material from GM and Bosch which would not have been available to Plaintiffs prior to discovery.[1] Admittedly, some of the allegations in the proposed amended complaint mirror allegations in the *Duramax* complaint. *See* Def. Resp. Br. at 8, ECF No. 86 (listing similar allegations). But those identified allegations are all broad and generalized. While the Court ultimately held that Plaintiffs had plausibly alleged the existence of a RICO enterprise in *Duramax*, the Defendants repeatedly argued that Plaintiffs' allegations were insufficiently specific. *See* GM Mot. Dismiss at 36, Case No. 17-cv-11661, ECF No. 45 ("Plaintiffs offer conclusory allegations that GM and the Bosch Defendants constituted an enterprise."); *id.* at 38 n. 28 (arguing that Plaintiffs had not alleged "specific communications showing the defendants acting as an enterprise") (internal citations omitted); *id.* at 39 n.29 (same); *id.* at 40 ("[W]hile Plaintiffs purport to allege multiple instances of mail and wire fraud, they do not allege any of them with the factual specificity mandated by Rule 9(b).") (internal citations omitted); *id.* at 41 n.30 ("The complaint includes countless conclusory allegations of scienter, but zero factual allegations supporting an inference that GM, Bosch, or any employees of either company acted with a specific intent to defraud consumers.").

The new allegations Plaintiffs now seek to add are exceedingly relevant to a number of these contested issues. Given GM's strong opposition to the *Duramax* complaint on the ground

---

[1] Indeed, the allegations in question have been redacted from Plaintiffs' publicly filed documents in order to protect GM's interests. If these allegations were publically known, GM would have presumably permitted Plaintiffs to file unredacted copies.

that Plaintiffs failed to specifically allege the elements of a RICO claim, Plaintiffs can hardly be faulted for waiting until they uncovered more specific factual information before moving to amend in *Counts*.

GM cites numerous cases where courts have exercised their discretion to deny leave to amend because the plaintiff had been on notice of the basis of the claim for months but had delayed in seeking leave to amend. *See, e.g.*, *Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451, 469 (6th Cir. 2017) (affirming the district court's denial of leave to amend where the relevant facts had been known for approximately seven years and the plaintiff admitted that an amended complaint containing the new claims was initially prepared eight months before the motion for leave to amend was filed); *Serrano v. Cintas Corp.*, 271 F.R.D. 479, 485 (E.D. Mich. 2010) (holding that "four and a half years . . . amounts to undue delay"), *vacated and remanded on other grounds*, 699 F.3d 884 (6th Cir. 2012); *Hiller v. HSBC Fin. Corp.*, No. 13-12177, 2014 WL 656258, at *3 (E.D. Mich. Feb. 20, 2014) (denying leave to amend because the new facts had been known at the time the original complaint was filed and motions to dismiss and motions for judgment on the pleadings had both been fully briefed); *Pedicini v. Life Ins. Co. of Alabama*, No. 1:08-CV-00062-JHM, 2010 WL 3782200, at *4 (W.D. Ky. Sept. 20, 2010) (denying leave to amend when the facts had been known since early in the litigation and motion to amend was not filed until after defendant filed a motion for summary judgment).

Here, there are mitigating factors which distinguish the cases GM cites. First, and as explained above, many of the facts which Plaintiffs which seek to include in the proposed complaint were discovered relatively recently. While, in broad terms, Bosch's involvement in the development of the Cruze may have been knowable approximately a year ago, many of the more specific allegations Plaintiffs wish to rely upon were discovered within the past six months. And

it is hardly remarkable for a plaintiff to seek leave to amend after uncovering evidence which corroborates their theories. Indeed, "'it is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery.'" *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

GM argues that even this delay is inexcusable because "the overwhelming majority of the 'recently produced' documents cited in the proposed amended complaint were produced in October 2017." Def. Resp. Br. at 14. But this argument ignores the staggering scope of document production in this case. To date, GM has produced more than 70,000 documents. Approximately 33,000 of those documents were produced in October and November 2017. Approximately 16,000 documents were produced in February 2018. According to Plaintiffs, GM's most recent document production (in March 2018) totaled more than 130,000 pages. Given the number of documents to review, a five month delay from the initial round of production before seeking leave to amend is reasonable. Third, much of the delay in this suit thus far can be attributed to discovery disputes between the parties. These disputes are a fact of life in complex actions, which further underscores the reasonableness of Plaintiffs' delays in seeking leave to amend.

Finally, and as discussed further below, Plaintiffs are seeking leave to amend during the discovery period and before dispositive motions have been filed. While some motion practice has occurred, the present motion to amend was filed much earlier in the life cycle of the case than many of the motions in the cases GM cites. *See also* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1488 (3d ed. 2010) ("Similarly, plaintiffs have been denied leave to amend to add new claims or theories when the amendment is sought after the case has been pending for some time, discovery has closed, and the court is about to rule on defendant's

summary-judgment motion."). Given the scope of discovery and the relevance of certain of the new allegations, Plaintiffs have not unduly delayed in seeking to amend.

**2.**

GM similarly argues that Plaintiffs should be denied leave to amend because they have engaged in a "wait and see" approach. Typically, when a party declines to seek leave to amend until after the Court adjudicates a motion to dismiss, courts view the motion to amend with skepticism. For example, in *Glazer v. Chase Home Fin. LLC*, the plaintiff "filed his motion to amend on February 18, 2010, four months after discovery of the 'new' evidence, well after Chase's motion to dismiss had been filed and fully briefed, and one month after the magistrate recommended granting it." 704 F.3d 453, 458 (6th Cir. 2013). The district court refused to permit amendment, reasoning that "allowing amendment under these circumstances would encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint." *Id.* at 458–59. The Sixth Circuit affirmed. *See also Begala v. PNC Bank, Ohio, Nat. Ass'n,* 214 F.3d 776, 784 (6th Cir. 2000) (affirming a district court opinion which held that "[p]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.") (emphasis omitted).

GM argues that Plaintiffs' motion to amend should be denied because they purposefully waited until after the *Duramax* opinion—in which the Court denied the motions to dismiss the RICO claim against GM and Bosch—to file its motion for leave to amend. GM suggests that this "wait and see" approach is reflective of bad faith and has prejudiced GM.

For two reasons, this argument by GM is unpersuasive. First, a court places itself on treacherous ground when it attempts to characterize the motivations behind actions taken by

litigants. Perhaps, as GM argues, the Plaintiffs deliberately "waited in the wings" until after the *Duramax* opinion was issued. But Plaintiffs' motion to amend could also be explained by the fact that GM has provided tens of thousands of documents over the past six months (including 130,000 pages one month before the motion to amend was filed). Unlike in *Glazer*, it cannot be said that Plaintiffs have identified "no other plausible reason for waiting as long as [they] did." 704 F.3d at 459.

Second, the procedural context in the present case differs from the typical fact pattern in the cases GM relies upon. In *Glazer*, the plaintiff sought leave to amend *after* the magistrate judge recommend dismissal of his pending complaint. The same is true of the other cases GM relies upon. *See Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018) (affirming denial of leave to amend because plaintiff sought leave after his complaint had been dismissed); *Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013) (same); *Pugh v. Tribune Co.*, 521 F.3d 686, 698 (7th Cir. 2008) (same). Here, on the other hand, the opinion and order which GM cites too was filed in another case. And, importantly, the Court did not dismiss the complaint in *Duramax*. To the contrary, the arguments framed in the Defendants' motions to dismiss in *Duramax* were rejected.

Thus, this is not a case where the Plaintiffs were informed of deficiencies in their complaint through a Court order and then sought a second bite at the apple. Instead, Plaintiffs waited until after the viability of the *Duramax* RICO claim had been demonstrated before seeking leave to amend. Rather than imposing unnecessary costs and inefficiencies, this sequence of events may have avoided them. If Plaintiffs had filed a motion for leave to amend at the same time the consolidated amended complaint in *Duramax* was filed, the parties would have briefed the same issues simultaneously in both cases, and the Court would have adjudicated the same questions in

two separate cases at the same time. This unnecessary duplication of effort was avoided when Plaintiffs waited to seek leave to amend. In short, this is not a scenario where Plaintiffs have sought to allege an alternative theory or claim after their original approach was rebuffed, creating unnecessary costs and inefficiencies. In fact, a reasonable argument can be made that the timeline here obviated the unnecessary expenditure of resources.

**3.**

GM's third and final argument bears more weight, but it too is ultimately unpersuasive. GM argues that permitting the amendment would "substantially prejudice" the company. GM argues, first, that "adding Bosch defendants and new RICO claims would place this litigation back to square one in terms of scheduling." Def. Resp. Br. at 16.[2] Second, GM contends that "the addition of significant new defendants and a treble-damages RICO claim is precisely the type of new theory of recovery that alters the landscape of the litigation and prejudices the non-moving party." *Id.* at 18.

Respectfully, much of the identified prejudice is inherent in the nature of complex litigation. Every time a plaintiff seeks to add a new claim or party, the defendants will face the "prejudice" of defending the suit on its merits. A defendant must necessarily identify some other type of prejudice sufficient to justify denial of a motion for leave to amend. Similarly, "'[d]elay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness

---

[2] GM also argues that permitting the amendment would delay proceedings in *Duramax*. That belief appears to be premised on the parties' prior agreement that *Duramax* would "lag" behind the *Counts* scheduling order. *See* May 9, 2018, Stipulation at 3 ("[T]he parties have agreed for, among other reasons, resource considerations to use best efforts to seek a sechedduling order *In re Duramax* that trails the *Counts v. GM* deadlines by six months."). As an initial matter, it is unclear why adding a RICO claim in *Counts* will dramatically delay proceedings in either case. The RICO claim in *Duramax* has survived the pleading stage, and so GM and Bosch should already be preparing to provide relevant documents to Plaintiffs. The RICO claim in *Counts* involves some distinguishing characteristics, but the broad strokes of Bosch's involvement in the creation of the Cruze emissions technology should be substantially similar. More importantly, the Court is not bound by any scheduling agreement between the parties. In the absence of an explanation of *why* the six month gap is desirable, this informal agreement cannot serve a basis for a finding of prejudice.

to harass the opponent, should not suffice as reason for denial.'" *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (quoting *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981)).

GM argues that it will be prejudiced because "new motions to dismiss and new answers to voluminous allegations would need to be prepared." *Id.* at 16–17. But GM will only be faced with one new claim, the RICO claim, which it has already exhaustively briefed in *Duramax*. If GM intends to make similar arguments for dismissal in *Counts*, the research and drafting has largely already occurred. To the extent GM has identified new defenses to the RICO claim, they should be succinct. Likewise, GM contends that "the current and any proposed schedule would be entirely displaced to make time for Bosch to propound and respond to discovery." *Id.* at 17. To begin with, the parties have already repeatedly pushed back the discovery deadline by agreement.[3] Those adjournments can be attributed to the disputes over the scope of discovery. While understandable, the disputes and related adjournments suggest that GM will not be unduly prejudiced by additional adjournment. Complex commercial litigation inevitably moves slowly.

And, more importantly, it is unclear whether more adjournments will even be necessary (certainly, the discovery deadline will not be adjourned for another full year, as it has already been). Because Bosch's motion to dismiss was denied in *Duramax*, it is on notice that it will be required to produce relevant discovery in that case. Bosch's relationship to GM with respect to the Cruze's development will presumably be similar. The overlap between the two cases will inevitably produce efficiencies that will ameliorate some of GM's concerns regarding undue delay.

GM's second identified concern is likewise inapposite here. The company contends that permitting amendment will "alter[] the landscape of the litigation," necessitate new motions to

---

[3] In fact, Plaintiffs represent that GM has yet to take a single deposition. Mot. Amend at 7.

dismiss, and require the development of new defense theories. Def. Resp. Br. at 18–19. GM cites two cases in support of its contention that this prejudice warrants denial of the motion to amend. In *Ziegler v. Aukerman*, the district denied leave to amend because the defendants had filed motions to dismiss and for summary judgment based on the original complaint and because the district court's analysis of those motions revealed that the court would decline to exercise supplemental jurisdiction over the proposed claim. No. 06-CV-12234-DT, 2006 WL 3386583, at *8 (E.D. Mich. Nov. 21, 2006). In effect, the rationale in *Ziegler* mirrors that in the "wait and see" cases discussed above. Those cases provide minimal guidance here.

In *Cook v. Field Packing Co., LLC*, the second case cited by GM, the district court stated that "[p]rejudice is likely if an amendment involves new theories of recovery." No. CIV.A. 4:05CV83-M, 2006 WL 1523233, at *3 (W.D. Ky. May 31, 2006). In *Cook*, the prejudice to defendant was minimal because the plaintiff merely sought to delete a claim. *Id.* The district court's analysis implies that, if plaintiff had sought to *add* a claim, leave to amend would have been denied. But the motion in *Cook* came a mere month before the dispositive motion deadline and two days after discovery had closed. *Id.* In this case, the close of discovery is still approximately six months away, and the dispositive motion deadline is even more distant.

Ultimately, the prejudice identified by GM is insufficient to overcome the general rule that leave to amend should be liberally granted. Plaintiffs commonly uncover additional information during discovery which provides the basis for new claims. In that situation, defendants will inevitably suffer some prejudice as the scope of litigation expands. But much of that prejudice is inherent in the nature of litigation, especially when the subject matter is as complex and quickly evolving as "defeat device" cases have proven to be. The Court is unpersuaded that the addition of a RICO claim is as earth-shattering as GM suggests. The RICO claim will certainly increase

GM's potential liability, but the underlying factual theory is essentially the same as with Plaintiff's state law consumer fraud claims. Especially because (as explained above) there are cogent reasons why the claim was not brought in the original complaint, the addition of the RICO claim will not substantially prejudice GM. The federal rules contemplate a general policy in favor of granting leave to amend, and so Plaintiffs' motion will be granted.

**III.**

Accordingly, it is **ORDERED** that Plaintiffs' motion for leave to file a first amended complaint, ECF No. 82, is **GRANTED.**

It is further **ORDERED** that Plaintiffs are **DIRECTED** to file the first amended complaint **on or before June 15, 2018.**

Dated: June 6, 2018             s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 6, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager