UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JASON COUNTS, DONALD KLEIN, OSCAR ZAMORA, DEREK LONG, BASSAM HIRMIZ, JASON SILVEUS, JOHN MISKELLY, THOMAS HAYDUK, CHRISTOPHER HEMBERGER, and JOSHUA RODRIGUEZ, individually and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC, ROBERT BOSCH GMBH, and ROBERT BOSCH LLC,<br><br>        Defendants. | No. 1:16-cv-12541-TLL-PTM<br><br>Judge Thomas L. Ludington<br><br>Magistrate Judge Patricia T. Morris |

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL NAMED PLAINTIFF DEREK LONG'S VEHICLE INSPECTION**

On July 7, 2016, Plaintiffs filed a complaint against General Motors LLC, Robert Bosch GmbH, and Robert Bosch, LLC ("Defendants") alleging violations of multiple state fraud and breach of contract statutes. ECF No. 1. The current motion at hand is Defendants' Motion to Compel Named Plaintiff Derek Long's vehicle for an inspection. ECF No. 198.

**I.**

In the complaint, Plaintiffs alleged they paid up to a $2,400 premium for a diesel Chevrolet Cruze versus a similar gasoline powered vehicle. ECF No. 1 at PageID.59. Mr. Derek Long, a lead Plaintiff, admitted in his response to GM's interrogatories and in his deposition that he installed a "tuner" on his Chevrolet Cruze. ECF No. 219 at PageID.14311. In his response to interrogatories, Mr. Long wrote "I purchased and installed an ECM program and [Diesel Particulate Filter] delete pipe from Ox Tuners. Before removing the DPF, I have used my Snap-On scan tool to clear check

engine lights related to failed regenerations. I have also used the tool to force manual regeneration cycles." ECF No. 198-4 at PageID.13741. During his deposition, Mr. Long explained a DPF pipe is "a pipe that deleted the actual diesel particulate filter" but claimed he was not aware at the time that the pipe "disables or limits the vehicle's emissions control system." *Id.* Mr. Long "purchase[d] the ECM [and] DPF kits in an effort to increase [his] vehicle's gas mileage" and to fix a regeneration issue with his engine. *Id.* at PageID.13741-13742. Mr. Long maintains he was unaware at the time that his modifications affected the emissions output of his vehicle and stated he did not investigate if they would affect the emissions control system in his vehicle. *Id.* Further, Mr. Long testified that he spent over $1000 on the ECM tuner and $274 on the DPF delete pipe. *Id.* at PageID. 13742.

The parties agree that tuners "enable their users to . . . completely override the vehicle's emissions control software to enhance power, increase fuel economy and degrade or override emissions controls." ECF No. 198 at PageID.13703. As a result, Defendants requested an inspection of Mr. Long's vehicle in May 2019, but Plaintiffs objected to the request. ECF No. 198-13 (Defendants' service of request for inspection of vehicle); ECF No. 198-17 (Plaintiffs' objection to the inspection); ECF Nos. 198-14, 198-15, 198-18, 198-200 (email conversations between parties). On July 30, 2019, after extensive discussions with Plaintiffs, Defendant, GM, filed a motion to compel named Plaintiff's, Derek Long, vehicle for inspection. ECF No. 198, ECF No. 219-3. Defendant, Robert Bosch, LLC, joined GM's motion to compel. ECF No. 199. Discovery closed on July 31, 2019 (ECF No. 166) and dispositive motions are due on January 10, 2020 (ECF No. 284). After Defendants and Plaintiffs narrowed the remaining issues before this Court on the motion to compel, the only question that remains is whether the inspection is

necessary and if so, the limits on the inspection that will be outlined in the inspection protocol. ECF Nos. 219, 219-3, and 229.

**II.**

Parties are permitted under Federal Rule of Civil Procedure 37 to move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.)". "The Federal Rules of Civil Procedure are in place to facilitate discovery of all relevant evidence. Rule 26 authorizes a broad scope of discovery, provided the material sought has some probative value in proving or disproving a claim or defense." *Gamby v. First Nat'l Bank of Omaha,* 2009 WL 963116 (E.D. Mich. Apr.8, 2009) (citing Fed. R. Civ. P. 26(b)(1)). FRCP 26 states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**III.**

Defendants argue that inspection is necessary to determine "precisely what this tuner was (and whether there have been other modifications), and [claim they are] entitled to present evidence of how the device worked and what impact it had on the vehicle's emissions." ECF No. 229 at PageID.15107-15108 (emphasis omitted). Plaintiffs claim that Mr. Long responded to these questions during his deposition, namely that tuners affect emission systems in vehicles and that the tuner likely operated in the same fashion on Mr. Long's vehicle. ECF No. 219 at PageID.14316.

Applying the FRCP 26(b) factors to the case at hand, Plaintiffs and Defendants have resolved the concerns regarding inconvenience to Mr. Long by ensuring Mr. Long has a loaner vehicle to use and Defendants willingness to let Mr. Long select the dealership for the inspection, thereby limiting the burden on Mr. Long. Other factors, the amount in controversy in this case and the importance of the issues at stake, support allowing the inspection in order to fully develop the facts of the case and the legal record. As such, the parties' access to information factor weighs in favor of allowing the inspection. Defendants do not have access to information about the specifics of the modifications Mr. Long made to his vehicle because Mr. Long admits he did the modifications himself and that his vehicle has not been emissions tested after he added the tuner. The parties' resources and the burden to the party being inspected also weigh in favor of inspection. The overall burden to Mr. Long is low and Defendants have no other means to obtain this information without an inspection.

The last two factors – the relevance of the information to be learned and the importance of the discovery material in the case also favor an inspection. Plaintiffs assert Defendants created a cheat device that increases emissions when the vehicle is not being tested. ECF No. 94 at PageID.6192-6198. Plaintiffs also state they paid up to $2,400 more for a clean diesel Chevrolet Cruze compared to a similar vehicle because of the reduced emissions. ECF No. 1 at PageID.59. When the Court denied Bosch's Motion to Dismiss, it recognized the potential economic harm if Plaintiffs paid up to an extra $2400 for the vehicle because of the expected environmental benefits but received a vehicle that did not have reduced emissions. ECF No. 122 at PageID.8298-8299. However, Mr. Long admitted he paid over $1200 to purchase a tuner in an effort to supposedly increase his gas mileage. Despite the warnings on the tuner's website and Mr. Long's history of doing his own mechanical work on his vehicle, Mr. Long stated he was unaware that the tuner

would change his emissions. Therefore, there is an open question of whether Mr. Long has a claim against Defendants for fraud regarding emissions when he spent extra money to modify his vehicle to increase his vehicle's emission. Because Mr. Long modified his vehicle in a way that affected the emission output, Defendants may inspect the vehicle to discover the effect the modifications had on vehicle emissions.

**a.**

The remaining issue is the specifics of the inspection protocol. Plaintiffs desire "the precise steps Defendants' inspector will take" to avoid a fishing expedition and to ensure "reasonable limits governing what Defendants will do to [Mr. Long's] car." ECF No. 219 at PageID.14316-14317, 14310. However, the cases Plaintiffs cite in support of seeking a more specific inspection protocol are not relevant to this case. In *Trice v. Toyota Motor Corporation*, Toyota was seeking to conduct an extra inspection of vehicles that had previously been inspected by other parties. 2012 WL 12894708, at *1 (D. Minn. Sept. 12, 2012). The court found that "Toyota should not have to rely on testing conducted by other parties without the opportunity for its own expert to inspect the vehicle and reach his or her own conclusions." *Id.* at *1–2. The detailed court ordered inspection protocol referenced by Plaintiffs outlined the procedure for the destructive testing that Toyota was allowed to conduct, not the non-destructive testing Toyota was also allowed to conduct where the Court adopted Toyota's proposed protocol. *2–4. Here, no destructive testing will be allowed, so the argument for a protocol as detailed as in *Trice* falls short.

Second, *In re Toyota Motor Corporation Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, Plaintiffs highlighted the preservation order where Toyota had to follow certain inspection protocols when "customers indicate that they have a concern about [an unintended acceleration] whether or not the customer claims to have

experienced such an alleged event." 2010 WL 2901798, *6 (C.D. CA July 20, 2010). The information collected from the vehicle was then downloaded and preserved. *Id.* This is dissimilar from the case at hand where Plaintiff's vehicle is directly at issue in the case and is not some third party's vehicle who happened to mention their concern about the case to a dealership.

Plaintiffs last case is *In re General Motors LLC Ignition Switch Litigation*. 14-md-2543. In the preservation and inspection protocol for the ignition switches, the order states that "[e]ach Party may develop its own inspection or testing procedures not inconsistent with this Order, subject to agreement from the other Parties. . . . If the Parties disagree on one or more details of proposed testing or inspection, each interested Party shall submit a letter brief explaining its position, and the proposed testing or inspection shall not proceed until the Court resolves the disagreement." ECF No. 219-2 at PageID.14328. In the current case, a similar process occurred where parties attempted to resolve the issue and when negotiations failed, they turned to the court. The order referenced by Plaintiffs in *Ignition Switch* does not provide background for why this Court should impose a highly detailed inspection protocol.

Despite the fact that no case persuasively proved the need for a highly detailed protocol, the cases do have a common thread that all inspections occur for a specific purpose – the opposing party is not granted the wide-open ability to inspect the vehicle at will. Here, Defendants identified the purpose of Mr. Long's vehicle inspection as to determine "precisely what this tuner was (and whether there have been other modifications), and [argued they are] entitled to present evidence of how the device worked and what impact it had on the vehicle's emissions." ECF No. 229 at PageID.15107-15108. Therefore, the Inspection Protocol will be appropriately limited to the emissions output of the vehicle.

The protocol for the inspection is included in Appendix A, attached to this order. Defendants remarks on their attempts to inspect Mr. Long's vehicle are not appropriate for the protocol itself and therefore have been removed. Discovery closed more than two months ago and dispositive motions are due on January 10, 2020. ECF Nos. 166, 284. Therefore, Mr. Long and Defendants have 30 days from the date of this order to conduct the inspection. The inspection of Plaintiff Long's vehicle will be limited to an inspection of the tuner device and any other modifications to the emissions system.

Defendants will be allowed to remove parts of the vehicle for inspection and testing. However, at least three days prior to the inspection, Defendants must advise Plaintiff in writing of which parts it expects to remove for testing and reinstall after the inspection is complete. If during the inspection Defendants desire to remove additional parts from the vehicle, they must obtain permission from Plaintiff's counsel before removing any other parts that Plaintiff was not notified of prior to the inspection. Defendants manufactured the vehicle, so they have sufficient knowledge of how the vehicle is constructed in order to comply with the protocol. An overall prohibition of removal of parts is unrealistic considering Defendants must remove parts to access the tuner, a point which Plaintiff does not rebut. ECF No. 229 at PageID.15113. However, Defendants also should not have unfettered access to deconstruct the vehicle during the inspection.

Additionally, the vehicle will be returned to materially the same condition it was in when it arrived. It is unrealistic for the vehicle to be returned in the "original" condition if parts will be removed and reinstalled. The information learned during the inspection will be marked as "Confidential" not "Highly Confidential." The information fits into the catch-all from the "confidential" section of the amended protective order of "other confidential, non-public information." ECF No. 137 at PageID.11725. The information does not fall into the higher level

of protection of "highly confidential" which includes "competitively sensitive information regarding trade secrets, product designs or strategies, testing, research, development, technical, marketing, planning commercial or financial information, or other sensitive information . . . which to third-party competitors may result in commercial harm" or protected personal information. ECF No. 137 at PageID.11725, 11726. The inspection allows Defendants to learn what changes Mr. Long made to the vehicle – this is not competitively sensitive information or protected personal information.

Finally, the results from the inspection will be limited to this case. If Defendants see the value in an inspection of different Plaintiffs vehicles in different cases, the parties in those cases are encouraged to work out terms for an inspection, or if needed, an order to compel, in an effort to inspect the vehicle.

**IV.**

According, it is **ORDERED** that Defendants' Motion to Compel Named Plaintiff Derek Long's Vehicle Inspection, ECF No. 198, is **GRANTED.** The inspection must occur within 30 days from the date of this order.

It is further **ORDERED** that Plaintiff and Defendants will follow the Vehicle Inspection Protocol for Plaintiff Derek Long attached as Appendix A to this order.

Dated: October 21, 2019                                s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

# **APPENDIX A**

**VEHICLE INSPECTION PROTOCOL FOR PLAINTIFF DEREK LONG**

1. This Vehicle Inspection Protocol ("Protocol") shall govern Defendants' inspection of a 2015 Chevrolet Cruze owned by Plaintiff Derek Long ("Subject Vehicle"). Nothing in this Protocol is intended to address, affect, or otherwise prohibit any authorized GM dealership from performing any maintenance and/or repairs at the request of named Plaintiffs.

2. The inspection of Plaintiff's Subject Vehicle will occur within 30 days of the date of this Protocol.

**I. INSPECTION**

3. The Subject Vehicle will be transported by Plaintiff to the agreed location at the agreed date and time. The Plaintiff may, but need not, be present at the inspection. Representatives of Plaintiff, including retained expert(s) and/or Plaintiff's counsel, may be present at the inspection. The following persons may attend and participate on behalf of any of the Defendants: (a) Defendants' Counsel; (b) employees of the Defendants; and/or (c) Defendants' retained expert(s). Additionally, representatives of the authorized GM dealership where the inspection occurs, if applicable, may attend.

4. In no event shall any Defendant or any representative of Defendants communicate with Plaintiff at the inspection without the authorization of Plaintiff's counsel. In no event shall Plaintiff or any representative of Plaintiff communicate with any employee of the Defendants without the authorization of Defendants' counsel.

5. GM's inspection is limited to determining: a) what tuner was added, b) how the tuner operated, c) what effect the tuner had on the emissions output by the vehicle, and d) any other modifications affecting the emissions of the Subject Vehicle.

6. By the end of the inspection, the Subject Vehicle must be restored to its material condition at the start of the inspection excluding any negligible changes as to odometer mileage, fuel level, etc. There will be no destructive testing, nor any permanent modifications or permanent alterations to the Subject Vehicle.

7. If Defendants desire to remove any component of the Subject Vehicle during the inspection, Defendants must give notice to Plaintiff's counsel of any parts to be removed and reinstalled at least three days before the inspection. During the inspection itself, if the inspector and/or Defendants discover more components they want to remove and later reinstall, Defendants' counsel must obtain consent from Plaintiff's counsel before removing the components from the Subject Vehicle.

8. No test drive of the Subject Vehicle will take place during the inspection.

9. The parties and/or their representatives may take photographs, video recordings, and sound recordings during the inspection, and agree to produce to one another copies of any photographs, video recordings, or sound recordings taken during the inspection as part of the discovery process. As a courtesy to all participants, any person taking video or sound recordings during the inspection must notify all participants in writing prior to initiating recording. Each party also agrees to produce to the other parties any data obtained from the Subject Vehicle, including, but not limited to, data downloaded from the Sensing Diagnostic Module ("SDM"), any diagnostic codes and other read-outs, if any.

10. The parties agree that the Subject Vehicle to be inspected will be presented in "as is" condition as of the time of Defendants' notice of deposition, including the preservation of any alterations or modifications (even if removable) made to the Subject Vehicle at the time of Defendants' notice of deposition.

11. The scope of any inspection established by this Protocol may be modified by written agreement of the parties or by Court order for good cause shown.

## II. USE OF INFORMATION OBTAINED DURING INSEPCTION

12. Any and all information, including documents, photographs, video recordings, and sound recordings, obtained by any party during an inspection under the terms of this Protocol may be designated "confidential" in accordance with the Protective Order entered in this action. No party or other person, including any authorized GM dealership, is permitted to use any information obtained during such an inspection for any purpose other than to prosecute or defend against the claims asserted in this action.

13. No party waives any objection to any use, including admissibility of evidence and relevance, of any information, including documents, photographs, video recordings, and sound recordings, obtained by any party during an inspection under the terms of this Protocol in connection with this action. All such objections are expressly preserved by all parties.