UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON COUNTS et al.,

                Plaintiffs,                Case No. 1:16-cv-12541

v.                                   Honorable Thomas L. Ludington
                                   United States District Judge
GENERAL MOTORS, LLC and
ROBERT BOSCH LLC,                   Honorable Patricia T. Morris
                                   United States Magistrate Judge

                Defendants.

_____/

**OPINION AND ORDER VACATING SHOW-CAUSE ORDER, GRANTING AND DENYING IN PART DEFENDANT GM'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING AND DENYING IN PART DEFENDANT BOSCH'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs are purchasers of a diesel-powered version of the 2014 or 2015 Chevrolet Cruze who allege that Defendants General Motors and its software developer Robert Bosch committed mail and wire fraud in developing and installing features that misrepresent the diesel Cruzes' exhaust emissions. By concealing certain "defeat devices," Plaintiffs explain, Defendants deceived them and numerous other consumers into buying a diesel Cruze, which they ostensibly thought would be more environmentally friendly. Plaintiffs seek the amount that they overpaid for their defective diesel Cruzes, calculated by three complex yet reliable economic theories.

Plaintiffs' federal claim is founded on the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Under the RICO Act, indirect purchasers cannot sue upstream sellers. Because Plaintiffs did not purchase their diesel Cruzes directly from GM or Bosch, the RICO claim will be dismissed.

Plaintiffs also sue for deception, fraud, unfair competition, or some variation of thereof under 60 state laws. Five of Plaintiffs' state claims will also be dismissed, and two state claims will be dismissed as to only Defendant Bosch.

## I.

## A.

On June 7, 2016, nine consumers ("Plaintiffs") filed a 442-page complaint alleging that GM intentionally or recklessly equipped and sold the 2014 and 2015 diesel Chevrolet Cruze "with an emissions system that turned off or limited its emissions reduction system during normal driving conditions." ECF No. 1 at PageID.18. Plaintiffs added that each consumer "suffered an ascertainable loss as a result of GM's omissions and/or misrepresentations associated with the [diesel] Cruze's Clean Diesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle." *Id.* at PageID.19.

In addition to fraudulent concealment and false advertising, Plaintiffs alleged that Defendants breached contracts with the consumers. *Counts v. Gen. Motors LLC*, No. 1:16-CV-12541, 2021 WL 8014317, at *7 (E.D. Mich. Sept. 1, 2021).

In October 2016, GM filed a motion to dismiss the Complaint for lack of jurisdiction and failure to state a claim. ECF No. 12. On February 14, 2017, this Court granted in part GM's Motion to Dismiss, ECF No. 21, finding that:

- Plaintiffs conceded their breach of contract claims and consensually dismissed all state law breach of contract claims. ECF No. 21 at PageID.782.
- Plaintiffs plausibly alleged an economic injury (overpayment) that was "fairly traceable" to GM and sufficient to withstand GM's facial challenge to Plaintiffs' standing under Article III. *See* ECF No. 21 at PageID.766 ("If the system did not actually provide any value to the vehicle, then Plaintiffs suffered financial injury through overpayment regardless of whether they relied on GM's alleged misrepresentation.").

- Given the Complaint's allegations, Plaintiffs' case was not preempted by § 209 of the Clean Air Act, 42 U.S.C. § 7401 *et seq.* ECF No. 21 at PageID.778–79 ("Because those factual allegations must be accepted as true when considering a motion to dismiss, there is no functional difference between the EPA finding of noncompliance and an allegation of noncompliance. Rather, the gravamen of Plaintiffs' claims, as in Volkswagen, focus on the deceit about compliance, rather than the need to enforce compliance." (internal quotation marks omitted)).

- Plaintiffs could not rely on GM advertisements touting the "cleanliness" and "high-quality" of the vehicles to plead fraud because such statements amounted to "nonactionable puffery." *See* ECF No. 21 at PageID.790 ("In their Compliant, Plaintiffs include the advertisements on which they base their claims. Plaintiffs[ ] cite GM's representations about the 'high-quality' and 'safety' of its vehicles. Those assertions are inherently subjective and cannot form the basis of a fraud action.").

- Plaintiffs plausibly alleged fraudulent concealment to the extent they alleged that GM concealed the "defeat device" from purchasers. *See* ECF No. 21 at PageID.793–94 ("If Plaintiffs' allegations are true, GM installed a 'defeat device' on the Cruze. The only plausible purpose of such a device is to create the appearance of low emissions without the reality of low emissions. If GM were not attempting to deceive regarding the level of emissions produced by the Cruze, the alleged 'defeat device' would not exist.").

*Counts*, 2021 WL 8014317, at *7. In sum, Plaintiffs plausibly established their Article III standing and pleaded a cognizable overpayment injury stemming from Defendants' fraudulent concealment of three purported defeat devices.

Plaintiffs then amended their Complaint to include Robert Bosch LLC and Robert Bosch GmbH (collectively, "Bosch"): German companies that supplied GM with the diesel Cruze's emissions software. Plaintiffs also added a RICO claim against all three Defendants. ECF Nos. 94; 95. Plaintiffs later voluntarily dismissed Bosch GmbH, leaving only GM and Robert Bosch LLC as Defendants. *See* ECF No. 317.

Defendant Bosch then filed a motion to dismiss the First Amended Complaint for lack of jurisdiction and failure to state a claim. ECF No. 108. GM concurred with Bosch's Motion. ECF No. 109. Addressing Bosch's Motion to Dismiss, this Court concluded that Plaintiffs pleaded a cognizable RICO claim against Defendant Bosch under 18 U.S.C. § 1961, because "the allegations

concerning regulatory violations are collateral allegations which are unnecessary to sustain Plaintiffs' RICO claim." ECF No. 122 at PageID.8311.[1]

Plaintiffs filed a motion to exclude Defendants' experts, ECF No. 337 (filed under seal), and GM filed an omnibus motion to exclude Plaintiffs' experts, ECF No. 344. Plaintiffs' Motion was granted in part and denied in part, and GM's Motion was denied. ECF No. 438.

GM and Bosch also filed motions for summary judgment, which are the focus of this Opinion and Order. ECF Nos. 338; 339 (filed under seal); 345 (filed under seal); 346. Defendants later added a motion to strike Plaintiffs' expert reports and response briefing to Defendants' motions for summary judgment. ECF No. 397. Defendants' Motion to Strike was denied in the last Order. ECF No. 438.

**B.**

After discovery ended, this Court noticed stark contrasts between Plaintiffs' allegations and the evidence produced during discovery. Given the disparities, the question presented was whether Plaintiffs have Article III standing and, by extension, whether this Court has jurisdiction. Several concerns were evident.

First, though this case had existed for nearly six years, neither the EPA nor CARB had issued violation notices or investigated the diesel Cruze—despite communicating with Defendants, Plaintiffs, and Plaintiffs' experts. *Counts v. Gen. Motors LLC*, No. 1:16-CV-12541, 2021 WL 8014317, at *13 (E.D. Mich. Sept. 1, 2021). For example, GM had at least three meetings with officials from the EPA and CARB to discuss the statistics from this case and the supplemental testing that GM conducted in 2016. ECF Nos. 345-14 (filed under seal); 345-15 (filed under seal);

---

[1] Defendants also filed a motion to prevent Plaintiffs from relying on supplemental vehicle testing conducted after fact discovery concluded and after Defendants deposed Plaintiffs' primary liability expert. ECF No. 351. GM's motion was granted. ECF No. 384 at PageID.30695.

345-16 (filed under seal). Moreover, in June 2019, GM filed a Freedom of Information Act ("FOIA") request seeking all communication, concerning the 2014 and 2015 diesel Cruze, between CARB and the EPA and: (1) Plaintiffs and Defendants' law firms, (2) the West Virginia University researchers, and (3) people affiliated with Juston Smithers. *See* ECF Nos. 345-19 (filed under seal); 345-20 (filed under seal). But neither the parties' communications with the EPA or CARB nor GM's FOIA request have produced any evidence that the EPA or CARB are investigating GM or Bosch for misrepresenting the operation of the diesel Cruze.

Second, Plaintiffs' only evidence of excessive emissions was the testimony of two expert witnesses: Juston Smithers, who conducted a Portable Emissions Measurement System ("PEMS") test of one diesel Cruze purchased by Plaintiffs' counsel; and Dr. Kirill Levchenko, who analyzed the diesel Cruze's emissions software. But Smithers did not test any of Plaintiffs' diesel Cruzes. And Dr. Levchenko's report concerned only the technical operation of the software that modulates the diesel Cruzes' emissions; it did not test $NO_x$ emissions,[2] the focal measurement of Plaintiffs' allegations. Accordingly, Plaintiffs' only evidence of an injury was the inference that the $NO_x$ emissions of one certified, preowned diesel Cruze represented the entire fleet's emissions.

Third, Plaintiffs' deposition testimony regarding their expectations in purchasing the diesel Cruze were similarly speculative and reflected little consensus. Six named Plaintiffs (Hayduk, Hirmiz, Klein, Long, Miskelly, and Rodriguez) testified that they expected the diesel Cruze to meet the emissions standards of CARB or the EPA, a claim that would be preempted by the Clean Air Act. *Counts*, 2021 WL 8014317, at *14 & n.9. And seven named Plaintiffs testified that they

---

[2] "The term '$NO_x$' refers to a number of various oxides of nitrogen, but NO and $NO_2$ are the two principle air pollution concerns." Brian H. Potts, *Trading Grandfathered Air—A New, Simpler Approach*, 31 HARV. ENV'T L. REV. 115, 135 (2007). "NO is a precursor to $NO_2$." *Id.* "Combustion modification, selective catalytic reduction (SCR), and selective non-catalytic reduction (SCNR) are the primary methods of reducing $NO_x$ coal-fired emissions." *Id.*

expected the diesel Cruzes' emissions to be lower than a comparable gasoline engine, which would be unreasonable and based on advertisements that were mere puffery. *Id.* at *14 & n.10. Further, two named Plaintiffs (Counts and Long) stated that they expected the diesel Cruzes' emissions to match the cars' Monroney stickers.[3] *Id.* at *16.

Fourth, Plaintiffs' expectations were seemingly not quantifiable or traceable to GM. Plaintiffs Hemberger, Hirmiz, Rodriguez, and Zamora expected the diesel Cruze to be good for the environment and have little to no emissions. *Id.* Plaintiffs Counts, Hayduk, Silveus, and Miskelly all stated that they expected that the diesel Cruzes' emissions would be reduced to some unknown benchmark. *Id.* Plaintiffs Miskelly, Counts, and Rodriguez also expected that the diesel Cruze would be cleaner than previous generations of diesel engines. *Id.* But none of those Plaintiffs identified what benchmarks they expected the diesel Cruzes to meet. *Id.* Indeed, numerous Plaintiffs had not even heard of $NO_x$ before this lawsuit. *Id.*

Finally, to this Court's understanding, none of Plaintiffs' diesel Cruzes were recalled, and Plaintiffs did not identify any evidence that they had attempted to repair their cars, which they had alleged in their Amended Complaint. *Id.* at *18.

For those five reasons, Plaintiffs were directed to show cause why this case should not be dismissed for lack of Article III standing. *See* ECF No. 429.

Plaintiffs filed a supplemental brief contending that a reasonable jury could find (1) that Defendants' communications with regulators were materially misleading; (2) that the vehicles

---

[3] Monroney stickers "contain[] safety ratings assigned by the National Highway Traffic Safety Administration (NHTSA) on a five-star scale in six categories." Thomas M. Byrne & Stacey McGavin Mohr, *Class Actions*, 68 MERCER L. REV. 951, 957 (2017). Specifically, Monroney stickers disclose "information about the vehicles's price, engine and transmission specifications, other mechanical and performance specs, fuel economy and emissions ratings, safety ratings, and standard and optional features." *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, No. 2:19-MD-02901, 2022 WL 551221, at *4 (E.D. Mich. Feb. 23, 2022).

contain defective emissions treatment hardware and software; (3) that Plaintiffs were deceived; and (4) that Plaintiffs consequently suffered economic damages. *See generally* ECF No. 430.

Defendants replied that Plaintiffs lack standing because (1) Plaintiffs did not proffer enough evidence to quantify their alleged injury; (2) speculation about future regulatory action cannot confer standing; (3) Plaintiffs' expectations based on a comparison to gasoline vehicles are nonactionable; and (4) there is no "injury in fact" because (a) there is no defeat device; (b) there is no evidence of emissions exceeding reasonable and quantifiable expectations; and (c) a "bundle" damages theory that does not isolate a price premium for the relevant vehicle feature cannot confer standing. *See generally* ECF No. 432.

Thus far, the case has been adjourned 15 times by the parties' stipulation. ECF Nos. 69; 92; 123; 125; 153; 157; 160; 166; 167; 238; 284; 301; 304; 309; 323. The most recent two stipulated attempts to adjourn the case were denied. ECF Nos. 329; 333.

Having carefully reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will proceed to address Defendants' Motions on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

Plaintiffs have Article III standing for all their claims against both Defendants.

### A.

Although standing was addressed at the pleading stage, it must be reassessed with Plaintiffs' heavier burden at the summary-judgment stage. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The burden of proving jurisdiction falls on the party asserting jurisdiction: Plaintiffs. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019). Plaintiffs must therefore demonstrate that—drawing all reasonable inferences in their favor—they have

experienced a concrete injury in fact that is fairly traceable to Defendants' conduct and redressable by this Court. *See Lujan*, 504 U.S. 561.

As courts of limited jurisdiction, federal courts must consider subject-matter jurisdiction in every case. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *accord Kanuszewski*, 927 F.3d at 405 ("Because standing doctrine comes from Article III's case-or-controversy requirement, it is jurisdictional and must be addressed as a threshold matter."); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Three elements of constitutional standing "serve as its irreducible minimum in all cases." *Miller v. City of Wickliffe*, 852 F.3d 497, 502 (6th Cir. 2017). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560). "Second, a plaintiff must demonstrate causation—i.e., that her injury is 'fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court.'" *Id.* (same). "Lastly, the plaintiff must prove that it is likely, rather than merely speculative, that a favorable decision could redress the injury." *Id.* (citing *Lujan*, 504 U.S. at 561).

**B.**

The testimony of Plaintiffs' opinion witnesses confirms that Plaintiffs have proven their Article III standing at the summary-judgment stage. Plaintiffs have alleged a concrete and particularized injury in fact: they paid a premium for a feature that they did not receive (i.e., the lack of defeat devices, or lower emissions output than expected).

Plaintiffs' alleged injury is "particularized." In overpaying for their 2014 or 2015 diesel Cruzes, *see* ECF No. 1 at PageID.64–65, 68, 74–75, Plaintiffs suffered an injury "particular" to them, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016), *as revised* (May 24, 2016) ("The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm.").

Whether Plaintiffs' alleged injury is "concrete," however, is where the case weakens. For an injury to be "concrete," it "must be '*de facto*'; that is, it must actually exist." *Yachera v. Westminster Pharms.*, 477 F. Supp. 3d 1251, 1263 (M.D. Fla. 2020) (quoting *Spokeo*, 578 U.S. at 1547). "[A]n economic injury qualifies as a concrete injury," and "[t]here is no requirement that a plaintiff have experienced physical harm to have an economic injury." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084, 1086 n.7 (11th Cir. 2019). People "experience[] an economic injury when, as a result of a deceptive act or an unfair practice, [they are] deprived of the benefit of [their] bargain." *Id.* at 1086.

Plaintiffs have only alleged economic injuries. Generally, damages for economic injuries "are calculated based on the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* But there are many other ways to calculate economic damages. *See, e.g.*, *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 345 (3d Cir. 2012) (discussing "past and future damages of an economic nature, including: attorneys fees, costs, loss of sales, loss of revenue, loss of profits, and other expenses"). Indeed, Plaintiffs' economic-damages expert, Edward Stockton, has provided three reliable calculations of Plaintiffs' economic damages. ECF No. 438 at PageID.39356–71.

Plaintiffs contend that they thought the diesel Cruze would output fewer emissions than it did because Defendants installed defeat devices that misrepresented the emissions output. In other words, Plaintiffs argue that the diesel Cruze lacked a feature for which Plaintiffs paid a premium. *See, e.g.*, ECF No. 95 at PageID.7303–04, 7307, 7311–12, 7314–34, 7344–46, 7402, 7413, 7418–20, 7447–49, 7455, 7458–60, 7469, 7476, 7479. In this way, as Plaintiffs explain, Defendants injured Plaintiffs through a deceptive act or unfair practice.

Like their economic damages, Plaintiffs' only evidence of Defendants' deception comes from the opinion testimony of expert witnesses: Juston Smithers, Plaintiffs' emissions-testing expert, ECF No. 438 at PageID.39336–41; Dr. Kirill Levchenko, Plaintiffs' software expert, *id.* at PageID.39341–47; and Dr. Venkat Shankar, Plaintiffs' marketing expert, *id.* at PageID.39347–56.

Putting merits aside, Plaintiffs' alleged injury is "concrete." For determining whether a concrete injury exists, it is enough that Plaintiffs "pa[id] a premium for a product but d[id] not receive the anticipated benefit." *Raymo*, 475 F. Supp. 3d at 694. Accordingly, Plaintiffs have established a concrete monetary injury if a reasonable juror could find by a preponderance of the evidence that Plaintiffs purchased a diesel Cruze that they would not have purchased had they known it contained defeat devices. *See Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14CV381-MW/CAS, 2015 WL 1879615, at *2 (N.D. Fla. Apr. 23, 2015) ("A plaintiff can meet the injury-in-fact requirement with a showing that by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so."). The problem, as Defendants have framed it, is whether Plaintiffs can prove that such a premium exists. *See, e.g.*, ECF No. 345 at PageID.22285, 22290 (filed under seal). But, as explained, Plaintiffs experts have since demonstrated a triable assertion of fact that

such a premium exists using not one, not two, but three reliable economic theories. *See* ECF No. 438 at PageID.39356–71.

Plaintiffs' alleged economic injury is "fairly . . . trace[able] to the challenged action." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). If Plaintiffs did not pay the premium for the difference in the emissions levels (i.e., a defective car), then they would not have experienced their alleged injury. In other circumstances, that difference in emissions output might not be a feature for which one might pay. But if that were true here, as Dr. Lorin Hitt will testify, then Defendants would not have advertised the diesel Cruze's emissions as one of its key features by, for example, labeling the diesel Cruze as "clean," "eco-friendly," and "EPA compliant" and applying a *forest green* badge reading "T[urbo]D[iesel] 2.0[Liter]." ECF Nos. 94 at PageID.6254, 6275; 94-4 at PageID.6732, 6806; 94-5 at PageID.6958. As indicated, Defendants would be responsible for installing and misrepresenting the existence of any defeat device. Thus, Plaintiffs' injury (paying a premium for a diesel car that defectively outputs more emissions than advertised) is fairly traceable to Defendants' conduct (installing defeat devices, or marketing the diesel Cruze as not containing any defeat devices). *See, e.g.*, *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 698 (E.D. Mich. 2020); *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1129 (S.D. Fla. 2019); *In re Chrysler–Dodge–Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 951–52 (N.D. Cal. 2018); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1054 (E.D. Mich. 2018); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1191–92 (C.D. Cal. 2011).

Finally, Plaintiffs' injury would likely be redressed by their requested relief. They overpaid for their cars, and this Court may order Defendants to pay for those injuries.

For these reasons, Plaintiffs have Article III standing against Defendants.

## III.

Defendants have filed Motions for Summary Judgment contending that there is no genuine issue of material fact that they did not violate the RICO Act. ECF Nos. 338 (Bosch); 345 (filed under seal); 346 (GM).

## A.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The nonmovant must show more than "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the "mere existence of a scintilla of evidence" in support of the nonmovant does not establish a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252.

The court must review the evidence and draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

Summary judgment will be granted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958

F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

**B.**

Count I of Plaintiffs' Complaint alleges that Defendants violated the RICO Act, 18 U.S.C.

§§ 1962(c), (d), by "orchestrating a fraudulent scheme and conspiracy. . . . whose direct purpose

was to deceive the regulators and the public into believing the [diesel Cruzes] were 'clean' and

'environmentally friendly.'" ECF No. 95 at PageID.7425–43.

The RICO Act has become one of the primary statutes that plaintiffs invoke to fight fraud.

*See generally* Nora Freeman Engstrom, *Retaliatory RICO and the Puzzle of Fraudulent Claiming*,

115 MICH. L. REV. 639 (2017) (noting that "tort reformers support RICO's use because, they say,

conventional mechanisms to deter fraud fall short").

The RICO Act provides that:

It shall be unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c); *accord United States v. Jenkins*, 902 F.2d 459, 463 (6th Cir. 1990) (citing

*United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)). Conspiracy to commit those acts is

also "unlawful." *Id.* § 1962(d).

To establish a RICO violation, Plaintiffs must demonstrate "(1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719,

723 (6th Cir. 2006) (quoting *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985)). By contrast,

to establish a RICO *conspiracy* claim under § 1962(d), Plaintiffs "must successfully allege all the

elements of a RICO violation [plus] 'the existence of an illicit agreement to violate the substantive

RICO provision.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir.

2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)). And "RICO plaintiffs must show that they suffered a concrete, out-of-pocket loss of tangible property." *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 640 (E.D. Mich. 2019) (citing *Wall v. Mich. Rental*, 852 F.3d 492, 494 (6th Cir. 2017)).

A "pattern of racketeering activity" (i.e., a scheme to defraud) means at least two acts of racketeering activity. *United States v. Robinson*, 763 F.2d 778, 780–81 (6th Cir. 1985) (first citing 18 U.S.C. § 1961(1); and then citing 18 U.S.C. § 1961(5)). "Racketeering activity" can be based on numerous acts, including violations of 18 U.S.C. § 1341 (any act relating to mail fraud) and 18 U.S.C. § 1343 (any act relating to wire fraud). *See* 18 U.S.C. § 1961(1)(B).

The scheme to defraud "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978) (citations omitted). The term "scheme to defraud" connotes some form of planning or pattern. *Fabian v. United States*, 358 F.2d 187, 192–93 (8th Cir. 1966).

### 1.

Plaintiffs allege that Defendants "employed the use of mail and wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud)." ECF No. 95 at PageID.7435.

### a.

The wire-fraud statute was modeled after the mail-fraud statute and, therefore, the same analysis applies to both. *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) (citing *United States v. Bibby*, 752 F.2d 1116, 1126 (6th Cir. 1985)); *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987). "The wire fraud statutory language should be interpreted with the same breadth as the

analogous language in the mail fraud statute." *Hofstetter v. Fletcher*, 905 F.2d 897, 902 (6th Cir.

1988). The only difference between mail fraud and wire fraud is the jurisdictional element.

> To prove mail or wire fraud, Plaintiffs must prove by a preponderance of the evidence:
>
> (1) that Defendants knowingly participated in, devised, or intended to devise a scheme to defraud in order to deprive Plaintiffs of money or property, that is that Defendants deceived consumers into believing the diesel Cruzes were clean and environmentally friendly;
> (2) that the scheme included a material misrepresentation or concealment of a material fact;
> (3) that Defendant had the intent to defraud; and
> (4) that, in interstate or foreign commerce and in furtherance of the scheme, Defendants used or caused another to use (a) the mail or (b) wire, radio, or television communications.

*See* Sixth Cir. Comm. on Pattern Crim. Jury Instructions, Federal Jury Practice and

Instructions §§ 10.01–10.02 (2022); *see also United States v. Olive*, 804 F.3d 747, 753 (6th Cir.

2015).

> Plaintiffs need not prove:
>
> (1) all the details alleged concerning the precise nature and purpose of the scheme;
> (2) that the material transmitted by mail was itself false or fraudulent;
> (3) that the alleged scheme actually succeeded in defrauding Plaintiffs;
> (4) that the use of the mail or wire, radio, or television communications was intended as the specific or exclusive means of accomplishing the alleged fraud;
> (5) that Plaintiffs relied on the misrepresentation or false statement; or
> (6) that Defendants obtained money or property for their own benefit.

*See* Sixth Cir. Comm. on Pattern Crim. Jury Instructions, Federal Jury Practice and

Instructions §§ 10.01–10.02 (2022); *see also Olive*, 804 F.3d at 753.

"[T]he scheme to defraud element . . . is not defined according to a technical standard. The

standard is a 'reflection of moral uprightness, of fundamental honesty, fair play[,] and right dealing

in the general and business life of members of society.'" *United States v. Van Dyke*, 605 F.2d 220,

225 (6th Cir. 1979) (quoting *United States v. Bruce*, 488 F.2d 1224, 1229 (5th Cir. 1973)). "A

scheme to defraud includes any plan or course of action by which someone intends to . . . deprive

- 15 -

another . . . of money or property" [by deception through] false or fraudulent pretenses, representations, or promises." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 479 (6th Cir. 1999)).

Although the "scheme or artifice to defraud" requires that "the defendant said something materially false," *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003) (quoting *Neder v. United States*, 527 U.S. 1, 25 (1999)), plaintiffs need not actually rely on the misrepresentations to prove mail or wire fraud, *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994).

In contrast to wire fraud, mail fraud requires the defendant to deposit, to receive, or to cause to be deposited or received any matter or thing to be sent or delivered by the United States Postal Service or any private or commercial interstate carrier for the purpose of executing a scheme to defraud. 18 U.S.C. § 1341. "The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud. . . ." *Schmuck v. United States*, 489 U.S. 705, 710 (1989). But "the use of the mails need not be an essential element of the scheme," as "[i]t is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" *Id.* (internal citations and quotation marks omitted). "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time . . . ." *Id.* at 715.

The Supreme Court has explained that one causes a mailing when "one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 8–9 (1954); *accord Frost*, 125 F.3d at 354 (mailing need only be reasonably foreseeable). A mail-fraud conviction can be based on mailings that were legally required. *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997) ("Further, '[t]he mailings may be innocent or even legally

necessary.'" (quoting *United States v. Oldfield*, 859 F.2d 392, 400 (6th Cir. 1988))). In any case, it is not necessary that the defendant actually mail the material. *See* 18 U.S.C. § 1341 (mail fraud committed if defendant causes the mails to be used).

Defendants do not address all the elements of Plaintiffs' claims. Accordingly, Plaintiffs' claims will be addressed only to the extent that Defendants have contested them. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the movant has the initial burden of "identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact.").

## C.

Defendants argue that Plaintiffs' claims fail because they cannot prove the existence of a defeat device. ECF No. 345 at PageID. 22222–23, 22255–62 (filed under seal).

Plaintiffs respond that they have amassed ample opinion evidence to support their assertion that Defendants designed all the 2014 and 2015 diesel Cruzes with defeat devices that conceal excessive emissions. ECF No. 390 at PageID.31985, 32019–31 (filed under seal). Plaintiffs add that they have demonstrated that their diesel Cruzes contain defeat devices. *Id.* at PageID.31985, 32031–42.

There is at least a question of fact as to whether there are defeat devices in the fleet of 2014 and 2015 diesel Cruzes. First and foremost, Plaintiffs have presented admissible expert analyses demonstrating three defeat devices in the diesel Cruzes and the effect that those devices would have on emissions readings. *See generally* ECF No. 438 (denying Defendants' *Daubert* Motions as to those experts). Second, Plaintiffs have submitted internal emails and presentations that—though cryptic, limited, and distinctly different than the evidence in *Volkswagen*—reasonably imply that Defendants implemented defeat devices to deceive regulators and consumers, *see, e.g.*,

ECF No. 390 at PageID.32023 (filed under seal) ("I went for the homerun, and have moved the Positive Filter for Envt_T to 1000 seconds. This should prevent EnvT_t from updating on the SC03 and will be in Manfred's latest 65% calibration. I will try to understand the effect at cold temps, and maybe we need to make a SW change for this case."), opinion testimony suggesting the same, *see* ECF No. 438 at PageID.39356, and Defendants' internal testing suggesting that when such devices are installed the emissions-control technologies are substantially impaired during real-world driving, *see* ECF Nos. 390-1 at PageID.32148–52 (filed under seal); 390-2 at PageID.32194–95, 32214, 32257–60 (filed under seal); 390-3 at PageID.32363–64 (filed under seal) (low-pass filtering); 390-21 (filed under seal) (final online-dosing report).

Further, the record supports a reasonable inference of excess, improper, or illegal emissions caused by defeat devices in the diesel Cruze. Juston Smithers's PEMS testing suggests that the fleet of diesel Cruzes contains defeat devices, which Dr. Levchenko's testimony will partially corroborate. ECF No. 438 at PageID.39330. And to the extent that GM argues that the testing of a car that Plaintiffs did not own cannot establish the presence of a defeat device in Plaintiffs' cars or the entire fleet of diesel Cruzes, the single-vehicle issue merely goes to the weight of Juston Smithers's testimony; indeed, GM partially relied on the PEMS test of a single diesel Cruze to obtain the requisite Certificate of Conformity from the EPA. *Id.* at PageID.39339–40. That expert analysis, by itself, establishes more than a mere scintilla of evidence to deny Defendants' Motions for Summary Judgment on this ground.

## D.

Defendants also argue that omitting defeat devices was not material to Plaintiffs' purchases. ECF Nos. 338 at PageID.19139, 19148; 345 at PageID.22223, 22262–80 (filed under seal).

Plaintiffs respond that Defendants' omissions were material to their purchases. ECF No. 390 at PageID.31985–86, 32043–58 (filed under seal).

Defendants are correct that "[t]o be actionable under RICO or state law, an alleged omission must be 'material,'" which "calls for 'an evaluation of whether a "reasonable consumer" or "reasonable person" likely would consider the information concealed to be important when making a purchasing decision.'" ECF No. 345 at PageID.22264–65 (filed under seal) (quoting *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 115 (E.D. Mich. 2019)).

But the record contains trial-admissible testimony of three defeat devices in the diesel Cruze, each of which would be a material omission. "The level of emissions produced by a diesel engine was a material consideration for consumers purchasing a vehicle." *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1084 (E.D. Mich. 2018); *see also* ECF No. 438 (detailing the expert analyses of the defeat devices). Drawing all reasonable inferences in Plaintiffs' favor, three defeat devices are present in their diesel Cruzes, Defendants concealed the existence of those defeat devices, and Plaintiffs' diesel Cruzes output more emissions than Defendants disclosed. In this way, Defendants omitted material information that a reasonable consumer would consider important. This finding is reinforced by the opinion testimony of Plaintiffs' experts, who note that Defendants' marketing campaigns touted the eco-friendly nature of the diesel Cruze. *Counts v. Gen. Motors, LLC*, 2017 WL 1406938, at *1 ("[E]ven though GM's advertising campaign does not constitute actionable misrepresentations, it does provide context for the question of whether GM made material omissions that would have misled a reasonable consumer."). Defendants' argument is similarly unavailing as to the predicate offenses of wire and mail fraud. *See United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994) ("[T]he mail and wire fraud statutes do not

require proof that the intended victim was actually defrauded; the actual success of a scheme to defraud is not an element of either § 1341 or § 1343.").

Defendants incorrectly assert that Defendants argue that the Clean Air Act (CAA) preempts Plaintiff's RICO claims. *See* ECF No. 345 at PageID.22278 (filed under seal) ("[V]iolations of the CAA are subject to an exclusive federal administrative remedy.").

But Plaintiffs' claims do not require proof that Defendants defrauded *the EPA*. Plaintiffs have also alleged that Defendants defrauded its *consumers* by installing and concealing defeat devices. *See Counts v. Gen. Motors, LLC*, No. 16-CV-12541, 2018 WL 5264194, at *12 (E.D. Mich. Oct. 23, 2018) ("[T]he allegations concerning regulatory violations are collateral allegations [that] are unnecessary to sustain Plaintiffs' RICO claim."); *Duramax*, 298 F. Supp. 3d at 1088 ("Plaintiffs' RICO claim is not an attempt to obtain a remedy [that] is exclusively within the purview of the EPA."). Further, Supreme Court precedent has suggested that the CAA does not preempt fraud claims brought under the RICO Act. *Cf. POM Wonderful LLC v. Coca–Cola Co.*, 573 U.S. 102, 120–21 (2014) ("But the FDCA and the Lanham Act complement each other in the federal regulation of misleading labels. Congress did not intend the FDCA to preclude [private] Lanham Act suits like POM's."); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 611–12 (6th Cir. 2004) (holding that the NLRA does not "preempt" wage-related RICO claims).

Defendants' argument that the CAA preempts Plaintiffs' state-law claims is similarly without merit. *See* ECF No. 345 at PageID.22275–78 (filed under seal). Section 209 of the CAA provides that "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 1743(a). But, as this Court has repeatedly sought to explain, Plaintiffs cannot enforce federal emissions standards through the RICO Act. Thus, Plaintiffs now

only argue that Defendants defrauded them by installing and concealing defeat devices that misrepresent the diesel Cruze's emissions. In this way, Defendants' alleged violation of the CAA is merely relevant background information; it is not dispositive of Plaintiffs' claims. *See, e.g.*, *Thomas v. Lambert*, No. 1:19-CV-11046, 2022 WL 909344, at *8 (E.D. Mich. Mar. 28, 2022). Indeed, all Plaintiff's state-law claims allege deception, fraud, unfair competition, or some variation of them. *See* ECF Nos. 94 at PageID.6184–90; 95 at PageID.7296–302. Plaintiffs are therefore not attempting to enforce any regulatory standards.

Defendants also declare that Plaintiffs' expectations of the diesel Cruzes' emissions are objectively unreasonable. *See* ECF No. 345 at PageID.22279–80 (filed under seal).

But Plaintiffs' claims do not hinge on the diesel Cruzes' operations as compared to gasoline alternatives; they hinge on whether Defendants fraudulently concealed one or more defeat devices. Moreover, the expectation that the diesel Cruze would not defectively contain a defeat device is reasonable by any measure. Indeed, Defendants have offered no evidence that consumers purchased GM's vehicles in hopes that they contain defeat devices. And neither Defendants nor the diesel Cruzes' Monroney labels disclosed the "material information" that "GM installed a 'defeat device' on the [diesel] Cruze." *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 600 (E.D. Mich. 2017).

### E.

Defendants next contend that Plaintiffs' RICO claims fail as a matter of law because (1) Plaintiffs have suffered economic injury, and (2) Plaintiffs are indirect purchasers of GM's and Bosch's products. ECF Nos. 338 at PageID.19139, 19148; 345 at PageID.22223–24, 22281–91 (filed under seal).

Plaintiffs respond that summary judgment should not be entered against Plaintiffs' RICO claims because (1) Plaintiffs have submitted sufficient trial-admissible testimony to demonstrate their economic damages, and (2) the underlying principles of the indirect-purchaser rule do not apply here. ECF No. 390 at PageID.31984–85, 32008–18 (filed under seal).

Although Defendants' first contention fails, their second argument is correct and ultimately dispositive of Plaintiffs' RICO claim.

## 1.

Defendants argue, without merit, that Plaintiffs have not suffered an out-of-pocket injury sufficient to establish statutory standing under the RICO Act. ECF Nos. 338 at PageID.19139, 19148; 345 at PageID.22223–24, 22281–87 (filed under seal). This argument essentially mimics Defendants' argument that Plaintiffs' have no legally cognizable damages. *See* ECF No. 345 at PageID.22225, 22314–16 (filed under seal).

Plaintiffs respond that they have presented substantial admissible evidence of their damages. ECF No. 390 at PageID.31987, 32074 (filed under seal).

This Court has explained at length that Plaintiffs' trial-admissible damages expert has advanced three reliable out-of-pocket damages theories. ECF No. 438. Two of those models calculate overpayment, and a third model calculates the retail cost of replacement. Thus, to the extent that those calculations might also satisfy a benefit-of-the-bargain theory of damages, they do not dissolve Plaintiffs' standing. And to the extent that Defendants argue that "any 'premium' paid by consumers is attributable solely to non-defective components," *id.* at PageID.22287 (filed under seal), Defendants have not sufficiently rebutted the reasonable inference that Plaintiffs overpaid for nonemissions parts that incurably depended on or operated with the defeat devices or

their dependent parts. In other words, there is a genuine issue of fact regarding whether Plaintiffs overpaid for parts that would not or could not properly function without the defeat devices.

2.

Fatal to Plaintiffs' RICO claims, Defendants contend that the indirect-purchaser rule from *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) forecloses Plaintiffs' RICO claim. *See* ECF No. 345 at PageID.22224, 22288–91 (filed under seal). Defendants are correct.

Although the price effects of an antitrust[4] injury can indirectly affect anyone in a stream of distribution, *Illinois Brick* provides that only direct purchasers may allege an antitrust injury. *Ill. Brick*, 431 U.S. at 729. The Sixth Circuit has extended *Illinois Brick*'s antitrust rule to RICO claims. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen."); *see also McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) (holding that in RICO cases "the central and dispositive issue is whether plaintiffs are 'direct purchasers'").

Plaintiffs only seek "pass-through" overcharges. Plaintiffs purchased their diesel Cruzes from dealerships, not from Defendants (whether characterized jointly as co-conspirators or independently as the manufacturers). ECF No. 94 at PageID.6201, 6203, 6205, 6207–08, 6210, 6212, 6214, 6216, 6218, 6220. Thus, any overcharges resulting from the defeat devices passed through the dealerships to Plaintiffs. *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1524–25 (2019).

---

[4] The Supreme Court and the Sixth Circuit have repeatedly confirmed that antitrust principles equally apply to RICO cases. *See, e.g.*, *Cnty. of Oakland v. City of Detroit*, 866 F.2d 839, 845 (6th Cir. 1989) ("Although we have focused primarily on the antitrust laws in the foregoing discussion, most of what we have said is applicable also to the treble damage provision of RICO, 18 U.S.C. § 1964(c), a provision patterned directly on § 4 of the Clayton Act.").

For this reason, Plaintiffs do not have standing to bring their RICO claims. The same remains true even if this Court atavistically applied one of the defunct exceptions of the indirect-purchaser rule. *See* Matthew M. Duffy, *Chipping Away at the* Illinois Brick *Wall: Expanding Exceptions to the Indirect Purchaser Rule,* 87 NOTRE DAME L. REV. 1709, 1730–47 (2012) (proposing a pre-*Apple* regime in which lower courts would expand the cost-plus exception, the purchaser control exception, the coconspirator exception, and the defendant control exception).

Indeed, as the District of New Jersey recently held under practically identical facts, the indirect-purchaser rule "is a bright-line rule that admits no exceptions." *Hu v. BMW of N. Am., LLC*, No. CV184363KMJBC, 2021 WL 346974, at *3 (D.N.J. Feb. 2, 2021) ("[T]he bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of *Illinois Brick* 'apply with equal force' in every individual case. We [will] not engage in 'an unwarranted and counterproductive exercise to litigate a series of exceptions.'" (quoting *Apple*, 139 S. Ct. at 1524))).

The indirect-purchaser rule, thus, seemingly "forecloses all consumer RICO claims against car manufacturers, because state laws generally prohibit manufacturers' direct sales of automobiles." *Rickman v. BMW of N. Am.*, No. CV 18-4363(KM) (JBC), 2020 WL 3468250, at *9 n.9 (D.N.J. June 25, 2020).

But the indirect-purchaser rule does not foreclose *all* RICO claims against vehicle manufacturers. For example, in some states, consumers may purchase vehicles directly from the manufacturer. Joshua Park, Note, *Economic Protectionism: Irrationally Constitutional*, 45 PEPP. L. REV. 149, 156 (2018) ("Although some states have given Tesla access, other states, such as Michigan and Texas, still maintain a complete ban on Tesla's direct-to-consumer model . . . ."). Similarly, in some direct-to-consumer sales, dealerships serve only as a temporary storage. *See*

Sean Tucker, *Ordering a Car from the Factory: Everything You Need to Know*, KELLY BLUE BOOK (Sept. 20, 2021, 4:00 PM), https://www.kbb.com/car-advice/ordering-car-from-factory/ [https://perma.cc/AN5X-5AE7] ("But most manufacturers ship the [custom-ordered] car to a dealership near you to handle the final delivery steps."). And the dealership that directly purchased the vehicle from the manufacturer could also sue the manufacturer under the RICO Act.

If the indirect-purchaser rule only applies due to a relationship created by state law, then courts might properly apply state law to determine if the indirect-purchaser rule should apply. Michigan, for example, has legislated against the indirect-purchaser rule for cases brought under state antitrust law. *See* MICH. COMP. LAWS § 445.778(2); *see also GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 823 (E.D. Mich. 2018) (finding that several states have implemented "so-called '*Illinois Brick* repealer statutes'" that "allow recovery by indirect purchasers under state law").

Although that regime might change the circumstance of this case, it is not the law. Here, Plaintiffs did not purchase the cars from GM or Bosch, the manufacturers. In other words, Plaintiffs have no RICO standing because they purchased their diesel Cruzes from dealerships. The proper parties to bring the federal RICO claim, as pled, are the dealerships that the defeat devices have allegedly duped. Thus, Plaintiffs' remedies lie in state law.

All the controlling precedent points in the same direction. Although the parties have cited numerous cases addressing exceptions to the indirect-purchaser rule, all those cases predate *Apple*, which nixed any such exceptions. Therefore, those cases are inapposite here.

The only remaining case does not bind this Court and appears on limited ground. *See Gamboa v. Ford Motor Co.*, No. 18-10106, 2020 WL 7047612 (E.D. Mich. Nov. 30, 2020). The

*Gamboa* opinion eclipses the *Apple* Court's clear conclusion that there are no exceptions to the indirect-purchaser rule. *See Gamboa*, 2020 WL 7047612, at *8.

Moreover, *Gamboa* would not apply here because Plaintiffs have not alleged that the dealerships were involved in the RICO conspiracy. *Id.* ("The dealerships' roles as potential unnamed coconspirators is currently undetermined. But discovery may illuminate more facts about the unnamed coconspirators, which precludes dismissing Plaintiffs claims." (citation omitted)). *See generally* ECF Nos. 94; 95.

For these reasons, Plaintiffs have no RICO standing, and Count I will be dismissed with prejudice.

## IV.

Defendants' Motions for Summary Judgment also argue that there is no genuine issue of material fact that they did not violate the statutory or common law of Arizona, California, Florida, Maryland, Michigan, New York, Texas, or West Virginia. ECF Nos. 338; 345 (filed under seal); 346.

## A.

Although Plaintiffs allege violations of 60 state laws, *see* ECF No. 95 at PageID.7425–797, Defendant GM only contests the allegations of the counts with named plaintiffs, *see* ECF No. 345 at PageID. 22224–25, 22291–314 (filed under seal). Defendant Bosch joins in all Defendant GM's arguments in this regard. ECF No. 338 at PageID.19139, 19148.

Plaintiffs respond that there is no merit to Defendant GM's arguments to the state claims. ECF No. 390 at PageID.31986–87, 32063–74 (filed under seal).

Defendants first state that there is no evidence of Plaintiffs' alleged economic injuries. But this Court has already explained that Plaintiffs have alleged concrete injuries in fact, *see* discussion *supra* Part II, and reliable methods to calculate damages, *see* ECF No. 438 at PageID.39356–71.

Defendants add that federal law preempts Plaintiffs' state claims. But this Court has already explained why the CAA does not preempt the state claims. *See* discussion *supra* Section III.D.

Defendants also assert that they disclosed that the diesel Cruze outputs more emissions than gasoline vehicles, and that any claims based on a comparison to other diesel vehicles are unsupported and invalid. This Court has also explained that Plaintiffs' claims are not predicated on the diesel Cruze outputting equal or less emissions than a gasoline vehicle. *See* discussion *supra* Section III.D. Nor are they predicated on Defendants cheating regulators. *Id.* Plaintiffs' claims are that Defendant deceived them into believing that their diesel Cruzes output less emissions than they do because of defeat devices.

Defendants explain that Plaintiffs did not rely on Defendants' omissions about $NO_x$ emissions. Yet it does not matter if Plaintiffs knew what $NO_x$ emissions are or even what level of $NO_x$ emissions they expected of their diesel Cruzes. Plaintiffs have stated and furnished admissible opinion testimony that they would not have purchased their diesel Cruzes but for the defeat devices, which deceive the purchaser about the vehicles' emissions. As explained, drawing all reasonable inferences in Plaintiffs' favor, a reasonable juror could find by a preponderance of the evidence that Plaintiffs relied on the absence of defeat devices when they purchased their diesel Cruzes. *See* discussion *supra* Section III.D.

Defendants separately maintain that the California Plaintiff released his claims against Defendants. ECF No. 345 at PageID.22312–14 (filed under seal). Plaintiffs acknowledge the same. ECF No. 390 at PageID.32000 (filed under seal) ("GM's Plaintiff-specific arguments are

unfounded, apart from Plaintiff Zamora, who has agreed to dismiss his claims."). Yet this does not dispose of Plaintiffs' allegations under California law, which remain for the same reasons as the state-law claims that Defendants did not contest in their Motions for Summary Judgment. *See* ECF No. 21 at PageID.770–73 ("The question of whether [Plaintiffs] may bring claims on behalf of the unnamed class members is an issue that is properly addressed via a motion for class certification.").

For these reasons, all Defendants' arguments fail regarding Plaintiffs' state-law claims, except Defendants' argument regarding Plaintiff Zamora. Consequently, Defendant GM's Motion for Summary Judgment, ECF Nos. 345 (filed under seal); 346, will be granted as to Count I and denied in all other regards.

## B.

In contrast to Defendant GM's general contentions to Plaintiffs' state-law claims, Defendant Bosch offers substantive analyses for why it believes that those 18 claims fail. *See* ECF No. 338 at PageID. 19149–73. In general terms, Defendant Bosch argues that 18 of Plaintiffs' state-law claims fail because there was no direct relationship or communication between Defendants and Plaintiffs and, unlike Plaintiffs' RICO claims, Plaintiffs' state-law claims require each of the Defendants to have made material misrepresentations to Plaintiffs. *See id.* at PageID.19139–40, 19149–73.

Plaintiffs respond that there are genuine questions of fact as to each of those 18 state-law claims. *Id.* at PageID.30993–94, 31009–33. As explained hereafter, five of those claims will be dismissed as to both Defendants, and two of them will be dismissed as to Defendant Bosch. Defendants do not oppose the other state claims.[5]

---

[5] Several issues persist as to Plaintiffs' unopposed state-law claims, as they still do not have named plaintiffs. *See, e.g.*, John A. Day, *"Made-Whole" Made Fair: A Proposal to Modify Subrogation in Tennessee Tort Actions*, 1 BELMONT L. REV. 71, 88 n.80 (2014) (discussing possible

**1.**

**a.**

Defendants argue that Plaintiff Hermiz's claim under the Arizona Consumer Fraud Act ("ACFA") fails because (1) "Plaintiff Hirmiz did not enter into any transaction with Bosch LLC and Bosch LLC made no misrepresentation to him"; (2) "there is no evidence that he relied on a misrepresentation or omission by Bosch LLC made in connection with the sale or advertising of his Cruze"; and (3) "Plaintiff Hirmiz can point to no facts that would create a duty to disclose for Bosch LLC that could support an omission-based ACFA claim." ECF No. 338 at PageID.19151–53. Plaintiffs contest each point. *See* ECF No. 388 at PageID.31010–31014 (filed under seal).

ACFA provides that:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, *in connection with the sale or advertisement of any merchandise* whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

ARIZ. REV. STAT. § 44-1522(A) (emphasis added).

Subsequent purchasers cannot proceed with a private cause of action under ACFA. *Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 454 (Ariz. Ct. App. 2012), *vacated in part on other grounds*, 306 P.3d 1 (Ariz. 2013). Indeed, Arizona courts have concluded that "[t]he purpose of the [ACFA] is to provide injured consumers with a remedy to counteract the disproportionate power often present in consumer transactions." *Id.* (quoting *Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d

---

intersections of statutes of repose and fraudulent-concealment statutes). Those issues will be addressed at the class-certification stage. *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 587 (E.D. Mich. 2017) ("[T]he question of whether the named Plaintiffs have standing to bring claims on behalf of the unnamed class members is analytically subsequent to the class certification analysis.").

1220, 1224 (Ariz. Ct. App. 1995)). "Because a subsequent purchaser is not a party to the original transaction and therefore would not encounter this 'disproportionate bargaining power,' such a purchaser is not within the class of consumers intended to be protected by the implied private cause of action under the [ACFA]." *Id.*

The only seeming limitation to *Sullivan* concerns those advertisements or materials provided as part of the transaction. *See Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016); *accord State Farm Fire & Cas. Co. v. Amazon.com Inc.*, No. CV-17-01994-PHX-JAT, 2018 WL 1536390, at *4–5 (D. Ariz. Mar. 29, 2018). When a claim hinges on an omission, a plaintiff also must prove that the omission was material. *See Haisch v. Allstate Ins.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000); *Schellenbach v. GoDaddy.com*, 321 F.R.D. 613, 622, 623–24 (D. Ariz. 2017). An omission is material if it is "logically related to the transaction in which it occurs and rationally significant to the parties in view of the nature and circumstances of the transaction." *Schellenbach*, 321 F.R.D. at 623–24 (quoting *Demaree v. Wal-Mart Stores, Inc.*, 511 F. App'x 660, 661 (9th Cir. 2013) (unpublished)). Buyers need not prove an intent to deceive. *See State ex rel. Corbin v. Tolleson*, 773 P.2d 490, 503 (Ariz. Ct. App. 1989).

In light of *Watts*, this Court does not accept Defendants' contention that *Sullivan* bars Plaintiff from stating an ACFA claim against GM. Plaintiffs' marketing expert, Dr. Shankar, will offer opinion testimony regarding the omission of the defeat devices in GM's advertisements for the diesel Cruze. *See* ECF No. 438 at PageID.39330–31, 39347–56.

However, Count IV should be dismissed as to Bosch. Plaintiffs have not provided sufficient evidence to create a genuine issue of fact regarding whether Defendant Bosch gave advertisements or materials to Plaintiffs as part of a transaction. Specifically, Plaintiff does not allege any facts to show that Defendant Bosch made a misrepresentation to Plaintiffs in connection with the sale of

the diesel Cruze. The misrepresentation in this case is omitting the defeat devices by not disclosing

their existence. Even though the defeat devices are material, Plaintiff Hirmiz's purchase of the

diesel Cruze did not include any representations from Bosch in which it might have disclosed the

defeat devices. Indeed, Plaintiff Hirmiz has not even alleged that Bosch delivered an owner's

manual, an instruction booklet, or any other document regarding the diesel Cruzes' emissions.

Plaintiff Hirmiz's ACFA claim should be dismissed as to Defendant Bosch because "there are no

allegations that Plaintiffs or their Assignors had any contact with [Bosch]." *MSP Recovery Claims,*

*Series LLC v. Abbott Lab'ys*, No. CV1921607FLWZNQ, 2021 WL 2177548, at *18 (D.N.J. May

28, 2021). By contrast, Plaintiffs have provided ample evidence of GM's involvement in the sales

of the diesel Cruzes through, for example, providing the Monroney sticker. *See Counts v. Gen.*

*Motors, LLC*, 237 F. Supp. 3d 572, 600 (E.D. Mich. 2017); *see also* ECF No. 438 at PageID.39347

(discussing Plaintiffs' proposed expert testimony regarding GM's marketing of the diesel Cruze).

In this way, Plaintiff Hirmiz has not met his burden to set out specific facts showing "a

genuine issue for trial" under ACFA as to Defendant Bosch. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986) (citation omitted). Consequently, Count IV of Plaintiffs' First Amended

Complaint will be dismissed with prejudice as to Defendant Bosch.

**b.**

Defendants correctly add that summary judgment is proper on Plaintiff Hirmiz's Arizona

fraudulent-concealment claim because they were "not a party to any transaction with Plaintiff

Hirmiz." ECF No. 338 at PageID.19153–54.

Under Arizona law, "being a 'party to a transaction' is a necessary element of a fraudulent

concealment claim." *Sullivan v. Pulte Home Corp.*, 290 P.3d 446, 454 (Ariz. Ct. App. 2012) (citing

*Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr.*

*Fund*, 38 P.3d 12, 34 (Ariz. 2002), *as corrected* (Apr. 9, 2002) (en banc)), *vacated in part on other grounds*, 306 P.3d 1 (Ariz. 2013); *accord J-Hanna v. Enter. Rent-A-Car Co. of San Francisco, LLC*, 672 F. App'x 737 (9th Cir. 2017) (mem.) ("[S]ubsequent purchasers do not have a cause of action under Arizona's Consumer Fraud Act against the seller in the original sales transaction; to establish a common law fraudulent concealment claim, a plaintiff must show the defendant was a party to a transaction with the plaintiff."); *see also Hale v. Norcold Inc.*, No. CV-18-03597-PHX-SPL, 2019 WL 3556882, at *2 (D. Ariz. Aug. 5, 2019) ("Plaintiffs' claim should immediately fail because the Plaintiffs and the Defendants were never parties to the same transaction; rather, the Plaintiffs bought their RV from a third party with the Refrigerator made by the Defendants already installed.").

Plaintiff Hirmiz purchased his diesel Cruze from a dealership with GM's and Bosch's manufactured parts already installed. *See* ECF No. 346-26 at PageID.24076. And he has not alleged or offered any evidence demonstrating that he transacted any business with Bosch or GM. In this way, neither Bosch nor GM was a party to Plaintiff Hirmiz's purchase of his diesel Cruze.

For that reason, summary judgment is proper on Plaintiff Hirmiz's Arizona fraudulent-concealment claim. Consequently, Count V of Plaintiffs' First Amended Complaint will be dismissed with prejudice.

## 2.

Defendants separately maintain that Plaintiff Zamora has no claims under California law. *See* ECF No. 338 at PageID.19154–59. Plaintiff Zamora voluntarily dismissed his claims. ECF No. 388 at PageID.31004 n.1 (filed under seal). Yet this does not dispose of Plaintiffs' allegations under California law, which remain for the same reasons as the state-law claims that Defendants did not contest in their Motions for Summary Judgment. *See* ECF No. 21 at PageID.770–73 ("The

question of whether [Plaintiffs] may bring claims on behalf of the unnamed class members is an issue that is properly addressed via a motion for class certification."). Consequently, Defendant Bosch's Motion for Summary Judgment, though granted as to Plaintiff Zamora, does not affect Plaintiffs' California claims.

### 3.

### a.

Defendants next assert that Plaintiff Silveus's claim fails under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), FLA. STAT. §§ 501.201–501.213. ECF No. 388 at PageID.19159–60 (filed under seal).

In order to state a claim under the FDUTPA, Plaintiff Silveus must allege (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. FLA. STAT. § 501.204; *Angelo v. Parker*, 275 So. 3d 752, 755 (Fla. Dist. Ct. App. 2019). Under the FDUTPA, plaintiffs need not demonstrate that the defendant was the principal actor involved in the violative acts, or that the defendant initiated those acts. *See Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*, 581 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008) (holding that it is sufficient to allege that a party directly participated in a violation of the FDUTPA, even if that violation was initiated by another); *K.C. Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073–74 (Fla. Dist. Ct. App. 2008) (holding that FDUTPA liability extends beyond the corporate seller to others who participated in the deceptive acts).

A deceptive practice is one "likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment." *State v. Beach Blvd. Auto., Inc.*, 139 So. 3d 380, 387 (Fla. Dist. Ct. App. 2014). A plaintiff must show that a reasonably objective person in the same circumstances would have been deceived. *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

"[A]n unfair practice is one which causes substantial injury to a consumer which the consumer could not have reasonably avoided and which is not outweighed by countervailing benefits to the consumer or to competition." *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017). An unfair practice "'offends established public policy' and . . . is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001)).

There is a genuine question of fact as to whether Defendants' conduct violated the FDUTPA. Plaintiffs have furnished evidence that Defendants coordinated to install one or more defeat devices in the diesel Cruze and then conceal that information from consumers, even though it sold the diesel Cruze to dealerships. There is no precedent directly on point with respect to the FDUTPA. In one Florida case, however, the court suggested that a plaintiff could have demonstrated a genuine issue of material fact under the FDUTPA by demonstrating that the defendant "sold a vehicle with a Takata recall notice without disclosing that information to the consumer." *See Stewart Agency, Inc. v. Arrigo Enters.*, 266 So. 3d 207, 212 & n.1 (Fla. Dist. Ct. App. 2019). Unlike the plaintiff in *Stewart*, Plaintiff here has provided "counterevidence to create a genuine issue of fact": expert evidence that there are defeat devices that Defendants concealed. *See id.*; ECF No. 438 at PageID.39330, 39336–47. Moreover, in the case holding that Florida courts must define "unfair trade practices" by looking to the Federal Trade Commission's interpretations, the plaintiff class alleged that Porsche unfairly profited by distributing headlights that were highly susceptible to theft without disclosing that information. *See generally Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090 (Fla. Dist. Ct. App. 2014). Thus, drawing all reasonable inferences in Plaintiffs' favor, as this court must, there is a genuine issue of material

- 34 -

fact as to whether Defendants unfairly profited by installing and not disclosing one or more defeat devices.

For that reason, summary judgment is not proper on Plaintiff Silveus's FDUTPA claim. Consequently, Defendants' Motion for Summary Judgment will be denied as to Count XVI.

**b.**

Defendants correctly contend that Plaintiff Silveus's Florida fraudulent-concealment claim fails because he has not demonstrated reliance. ECF No. 338 at PageID.19160–61.

The classic illustration of fraud is when one party has superior knowledge and intentionally fails to disclose a material fact, *Columbus Hotel Corp. v. Hotel Mgmt. Co.*, 156 So. 893, 901 (Fla. 1934); *Pryor v. Oak Ridge Dev. Corp.*, 119 So. 326, 329 (Fla. 1928), that is not discoverable by ordinary observation, *Kitchen v. Long*, 64 So. 429, 430 (Fla. 1914); *Hirschman v. Hodges, O'Hara & Russell Co.*, 51 So. 550, 554 (Fla. 1910), especially if coupled with a trick or artifice, *Joiner v. McCullers*, 28 So. 2d 823, 824–25 (Fla. 1947); *Stackpole v. Hancock*, 24 So. 914, 918 (Fla. 1898) (per curiam).

Under Florida common law, "[t]he issue of fraud is not ordinarily a proper subject for summary judgment because, being a subtle matter, fraud requires a full explanation of the facts and circumstances of the alleged wrong to permit a determination whether they collectively constitute fraud." *Nessim v. DeLoache*, 384 So. 2d 1341, 1344 (Fla. Dist. Ct. App. 1980) (citations omitted). For that reason, "such determination is seldom one that can be made in a legally sufficient manner without a trial." *Id.* (citing *Alepgo Corp. v. Pozin*, 114 So. 2d 645 (Fla. Dist. Ct. App. 1959) (per curiam)).

Two months ago, the Florida Supreme Court clarified the meaning of "reliance" in common-law claims of fraudulent concealment, holding that all fraudulent-concealment plaintiffs

"must prove reliance on a statement that was made by" the defendant or, for a conspiracy claim, a co-conspirator. *Prentice v. R.J. Reynolds Tobacco Co.*, No. SC20-291, 2022 WL 805951, at *3 (Fla. Mar. 17, 2022). Although "reliance on a statement" "can include 'a category of statements addressing a particular topic (e.g., advertisements for filtered cigarettes),'" such statements, though "not necessarily false on their face, [must be] misleading because they conceal or omit other material information." *Id.* In other words, "pure silence or a passive failure to disclose" cannot support fraud liability. *Id.*

Plaintiff Silveus has not alleged that he relied on an omission in a statement made by GM or Bosch. Rather, Plaintiff Silveus "served an interrogatory response that had he known that emissions controls turned off during real-world driving, [then] he would have paid significantly less for the vehicle or would not have purchased it." ECF No. 388 at PageID.31019 (filed under seal). The Florida Supreme Court has been clear that the reliance-on-silence argument is "utterly disconnected" from fraudulent-concealment claims. *Prentice*, 2022 WL 805951, at *6.

For these reasons, summary judgment is proper as to Plaintiffs Silveus's Florida fraudulent-concealment claim. Consequently, Count XVII of Plaintiffs' First Amended Complaint will be dismissed with prejudice.

### 4.

### a.

Defendants incorrectly assert that Plaintiff Miskelly's claim fails under Maryland's Consumer Protection Act ("Maryland CPA"), MD. CODE, CM. LAW §§ 13-303. ECF No. 338 at PageID.19161–63.

Maryland's Consumer Protection Act provides in relevant part:

> A person may not engage in any unfair or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in[ t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services.

MD. CODE, CM. LAW § 13-303(1).

First, Defendants incorrectly argue that Plaintiffs' claim fails because there is no evidence that they were "involved in" the vehicle purchase. ECF No. 388 at PageID.19162–63 (filed under seal). Maryland's highest court has interpreted the Maryland CPA to mean that "someone who is not the seller [c]ould so infect the sale or offer for sale to a consumer that the law would deem the practice to have been committed 'in' the sale or offer for sale." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 635 (Md. 1995) (collecting cases); *accord MRA Prop. Mgmt. v. Armstrong*, 43 A.3d 397, 412 (Md. 2012). The examples from Maryland's highest court include franchisers, manufacturers, and "a deceptive statement appearing on a manufacturer's packaging that is targeted to consumers." *Morris*, 667 A.2d at 635.

Although the deceptive act, as Defendants characterize it, cannot occur "entirely during the marketing," *id.* at 636, the alleged deceptive acts in this case are the installation and concealment of one or more defeat devices. The defeat devices, if they do what Plaintiffs' experts allege, would have the effect of "attempt[ing] to influence the plaintiffs to purchase" the diesel Cruze. *Id.* Indeed, an entity's "erroneous and misleading" conduct can be an "integral part of the entire scheme of deceptive trade practices committed in the sale" of a good if the conduct "directly 'infected' the sales at issue." *Hoffman v. Stamper*, 867 A.2d 276, 295 (Md. 2005) (en banc).

Taking the defeat devices together with the advertisements of GM, Bosch's alleged co-conspirator, there is a genuine issue of material fact as to whether Defendants' conduct was "involved in" or "infected" Plaintiff Miskelly's purchase. Plaintiff Miskelly relied on Defendants' omission. ECF Nos. 387-22 at PageID.30795 ("I thought I was buying a green car."); 387-23 at

PageID.30800 (stating that he "would not have purchased the vehicle or would have paid substantially less for it" but for "GM's undisclosed manipulation of the vehicle's emissions system"). The defeat devices, like the appraisals in *Hoffman*, misrepresented the diesel Cruze's emissions output and, thus, support the reasonable inference that Defendants engaged in unfair or deceptive trade practices under the Maryland CPA. *See, e.g.*, *Rutherford v. BMW of N. Am., LLC*, No. CV RDB-18-3618, 2022 WL 80487, at *9 (D. Md. Jan. 7, 2022) (acknowledging that, under Maryland's CPA, a vehicle manufacturer could be liable for pre-sale, but not post-sale, conduct and statements).

For these reasons, summary judgment is not proper on Plaintiff Miskelly's Maryland CPA claim. Consequently, Defendants' Motion for Summary Judgment will be denied as to Count XXVI.

### b.

Defendants also incorrectly claim that Plaintiff Miskelly's claim for fraudulent concealment under Maryland law fails because Defendants did not have a duty to disclose. ECF No. 338 at PageID.19163–65.

A Maryland fraudulent-concealment claim requires plaintiffs to establish that:

(1) the defendant owed a duty to the plaintiff to disclose a material fact;
(2) the defendant failed to disclose that fact;
(3) the defendant intended to defraud or deceive the plaintiff;
(4) the plaintiff acted in justifiable reliance on the concealment; and
(5) the plaintiff suffered damages because of the defendant's concealment.

*Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 274 (Md. 2007) (citation omitted) (en banc). A claim of fraudulent concealment includes "any statement or other conduct [that] prevents another from acquiring knowledge of a fact that otherwise he would have observed." *Id.* "[F]raudulent concealment includes the situation where the defendant actively undertakes conduct or utters

statements designed to, or that would, divert attention away from the defect." *Id.* at 274 n.11. Failure to disclose "requires only that the defendant remain silent about, or omit, facts that the defendant had a duty to disclose." *Id.* "Concealment and non-disclosure are closely related and in any given situation usually overlap." *Fegeas v. Sherrill*, 147 A.2d 223, 225 (Md. 1958).

Typically, nondisclosure does not constitute fraud unless a special duty to disclose exists. *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.*, 389 A.2d 887, 903 (Md. 1978). A duty to disclose arises in certain relationships such as a confidential or fiduciary relationship. *Doe v. Doe*, 712 A.2d 132, 161 (Md. Ct. Spec. App. 1998), *rev'd on other grounds*, 747 A.2d 617 (Md. 2000). A confidential relationship "may arise [if] a party is, under the existing circumstances, justified in believing that the other party will not act in a manner adverse or inconsistent with the reposing party's interest or welfare." *Midler v. Shapiro*, 364 A.2d 99, 103 (Md. Ct. Spec. App. 1976) (citations omitted). "Absent a presumption arising out of certain relationships (e.g., attorney-client, trustee-beneficiary, principal-agent), the existence vel non of a confidential relationship is a question of fact, not of law." *Id.* In making such determinations, courts "must guard against the acquisition of unwarranted influence, whether sought or unsought." *Id.* at 103 n.2 (quoting Address by Dwight David Eisenhower, January 17, 1961).

Plaintiffs can establish a fraudulent-concealment claim for nondisclosure without a fiduciary or confidential relationship. Indeed, "[o]ne who conceals facts that materially qualify affirmative representations may be liable for fraud." *Lubore v. RPM Assocs.*, 674 A.2d 547, 556 (Md. Ct. Spec. App. 1996); *accord Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 891 (Md. Ct. Spec. App. 1984). In this vein, plaintiffs "must prove that the defendant took affirmative action to conceal the defect and that the plaintiff could not have discovered it despite the exercise of reasonable diligence." *Lloyd*, 916 A.2d at 275 (citations omitted). "[I]n such cases, the affirmative

act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known." *Id.* (citation omitted).

The evidence is sufficient to bring Plaintiff Miskelly's fraudulent-concealment claim to trial. First, Defendants marketed the diesel Cruze's emissions technology as clean and eco-friendly. Drawing all reasonable inferences in Plaintiff Miskelly's favor, though those representations were puffery, they created a duty under Maryland law for Defendants to disclose the presence of any emissions-related defeat devices. *See Lubore*, 674 A.2d at 556 ("[I]f what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of its incompleteness, the 'legal situation is entirely changed.'" (citations omitted)). Second, by installing defeat devices in the diesel Cruzes, Defendants engaged in "more than mere silence" in an effort to "exclude suspicion and prevent injury" by actively concealing the diesel Cruze's emissions output.

For these reasons, drawing all reasonable inferences in Plaintiffs' favor, there is a genuine issue of material fact as to whether Defendants are liable for fraudulent concealment under Maryland common law. Consequently, Defendants' Motion for Summary Judgment will be denied as to Count XXVII.

**5.**

**a.**

Defendants correctly contend that Plaintiffs' claim under the Michigan Consumer Protection Act (MCPA) must be dismissed because it exempts motor-vehicle sales. ECF No. 338 at PageID.19165–67.

The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MICH. COMP. LAWS § 445.904(1). The Michigan Supreme Court construes this exemption broadly. *See Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007) (finding that "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited" (citation and internal quotation marks omitted)).

Michigan law specifically authorized and regulated the general transaction in this case (i.e., the sale of a new car by a licensed dealer). *Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015) (finding that the sale of a motor vehicle by a licensed dealer was an exempt transaction under the MCPA because it was "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States"); *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) (holding that Toyota's alleged deceptive advertising was exempt from the MCPA because Michigan "regulates how car wholesalers like Toyota advertise automobiles" and "regulates the content of general automobile advertisements"); *see also Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 800 (E.D. Mich. 2019) (dismissing MCPA claim that GM concealed defect because the MCPA exempts claims related to motor-vehicle sales).

As indicated, the MCPA does not cover Plaintiffs' claims. For that reason, summary judgment is proper on Plaintiffs' MCPA claim. Consequently, Count XXX of Plaintiffs' First Amended Complaint will be dismissed with prejudice.

**b.**

Defendants also properly proclaim that, under Michigan common law, Plaintiffs had to inquire with Defendants about their emissions-control systems to bring a claim for fraudulent concealment (i.e., silent fraud). ECF No. 338 at PageID.19167–68.

"[F]or the suppression of information to constitute silent fraud there must exist a legal or equitable duty of disclosure." *U.S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77, 88 (Mich. 1981); *accord Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 793 (E.D. Mich. 2019) (quoting *Hord v. Env't Rsch. Inst. of Mich.*, 617 N.W.2d 543, 550 (Mich. 2000) (per curiam)).

Such a duty arises only if a defendant responds to a plaintiff's inquiry with an answer that omits material information. *Matanky*, 370 F. Supp. At 794. In other words, if the plaintiff did not make any inquiries that would give the defendant the opportunity to disclose the truth regarding the purportedly material omission, then the plaintiff cannot bring a silent-fraud claim under Michigan law.

Plaintiffs Counts and Klein had no contact with Defendants regarding their diesel Cruzes and have not demonstrated that they made any inquiry with Defendants. *See* ECF Nos. 346-23 at PageID.23990; 346-27, PageID.24168. For these reasons, Plaintiffs' claim for silent fraud against Defendants is without merit. *Hord*, 617 N.W.2d at 549 ("[I]n every [Michigan Supreme Court] case, the fraud by nondisclosure was based upon statements by the vendor that were made in response to a specific inquiry by the purchaser, which statements were in some way incomplete or misleading."); *see MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 666 (6th Cir. 2013) ("[F]ailure to inquire dooms the silent-fraud claim."); *see also Elliott v. Therrien*, No. 288235, 2010 WL 293071, at *6 (Mich. Ct. App. Jan. 26, 2010) ("A claim of silent fraud, like claims for

- 42 -

fraudulent misrepresentation and innocent misrepresentation, requires proof of reliance on the inadequate or unforthcoming representation." (citations omitted)).

As indicated, summary judgment is appropriate as to Plaintiffs' Michigan fraudulent-concealment claim. Consequently, Count XXXI of Plaintiffs' First Amended Complaint will be dismissed with prejudice.

**6.**

Defendants incorrectly assert that Plaintiffs' deceptive-conduct claims under New York General Business Laws (GBL) § 349 and § 350 fail because Defendants' conduct was not consumer-oriented. ECF No. 338 at PageID.19168–69.

General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce . . . ." Section 350 similarly prohibits "[f]alse advertising in the conduct of any business, trade or commerce . . . ." Except for § 350 being specific to false advertising, the elements for both statutes are the same:

> (1) that the challenged conduct was consumer-oriented;
> (2) that defendant engaged in deceptive or materially misleading acts or practices; and
> (3) that plaintiff was injured by reason of defendant's deception or misleading conduct.

*Denenberg v. Rosen*, 897 N.Y.S.2d 391, 395–96 (N.Y. App. Div. 2010) (citation omitted).

Although a defendant's conduct is generally not consumer-oriented if it does not involve any direct contact or solicitation with the plaintiff, *see St. Patrick's Home for Aged & Infirm v. Laticrete Int'l*, 696 N.Y.S.2d 117 (N.Y. App. Div. 1999), such conduct is still consumer-oriented if it "potentially affect[ed] similarly situated consumers," *see 42-50 21st St. Realty LLC v. First Cent. Sav. Bank*, No. 20CV5370RPKRLM, 2022 WL 1004187, at *9 (E.D.N.Y. Apr. 4, 2022) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d

741, 745 (N.Y. 1995)). Put another way, conduct is consumer-oriented if "the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Loc. 214*, 647 N.E.2d at 744. In sum, "the injury must be to the public generally as distinguished from the plaintiff alone." *Wilson v. Nw. Mut. Ins*, 625 F.3d 54, 64–65 (2d Cir. 2010) (citation omitted).

A defendant's conduct might not be consumer-oriented if the plaintiff purchased the goods from a "sophisticated business entit[y]" that "acted in an intermediary role in the transaction," as private contract disputes are not covered by GBL § 349 or § 350. *St. Patrick's Home*, 696 N.Y.S.2d at 122.

Drawing all reasonable inferences in Plaintiffs' favor, Defendants' conduct was consumer-oriented. Plaintiffs are private consumers—not sophisticated business entities—and this is not a private contract dispute. *See N.Y. Univ. v. Cont'l Ins.*, 662 N.E.2d 763, 770–71 (N.Y. 1995) (discussing how private contract disputes between business entities do not fall under the ambit of GBL § 349 or § 350, but a private consumer's purchase does). Because the indirect purchasers were not sophisticated business entities, these transactions were "the type of 'modest' transaction that the statute was intended to reach." *St. Patrick's Home*, 696 N.Y.S.2d at 122 (citations omitted). Further, Defendants' alleged conduct (i.e., installing and concealing defeat devices) was directed to the consuming public at large and not to the individual consumers or dealerships, as demonstrated by Defendants' repeated contention that they never communicated directly with any individual Plaintiffs, which Plaintiffs corroborate. *See, e.g.*, ECF Nos. 338 at PageID.19146; 346-3 at PageID.23635; *see also Euchner-USA, Inc. v. Hartford Cas. Ins.*, 754 F.3d 136, 143 (2d Cir. 2014) (noting that "deceptive conduct aimed at the public at large" is consumer-oriented conduct).

For these reasons, summary judgment is not appropriate as to Counts XLII or XLIII. Consequently, Defendants' Motion for Summary Judgment will be denied as to Counts XLII and XLIII.

**7.**

**a.**

Defendants assert that Plaintiff Rodriguez's claim under the Texas Deceptive Trade Practices Act (DTPA), TEX. BUS. & COM. CODE §§17.41–17.63, fails because Defendants are upstream suppliers that did not communicate with Plaintiff Rodriguez. ECF No. 338 at PageID.19169–71.

In *Amstadt v. U.S. Brass Corp.*, the Texas Supreme Court held that downstream purchasers of non-mobile homes could not bring DTPA claims against remote manufacturers and suppliers of a defective plumbing system, because the deceptive acts alleged were not committed against or communicated to them in connection with their own purchases. 919 S.W.2d 644, 648–49 (Tex. 1996). The Texas Court of Appeals confirmed that the DTPA does not apply "in light of the absence of any evidence that [the downstream purchaser] had knowledge of" the defendant's material representations. *Bailey v. Smith*, No. 13-05-085-CV, 2006 WL 1360846, at *11 (Tex. App. May 18, 2006); *see also PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 88 (Tex. 2004) (dismissing a downstream purchaser's DTPA claim because "it had no connection with [the upstream seller's] original Twindows sale, and never saw any [of the upstream seller's] advertisements or warranties before it bought the building").

Plaintiff Rodriguez's DTPA claim survives summary judgment. Defendants are correct that Plaintiff Rodriguez had no connection with Defendants' sale to the dealership from which Rodriguez purchased his diesel Cruze. *See* ECF No. 346-30 at PageID.24331. But Plaintiff

- 45 -

Rodriguez claims that he viewed and relied on Defendants' advertisements regarding the diesel Cruze's emissions. ECF Nos. 95 at PageID.7333; 346-30 at PageID.24321. Drawing all reasonable inferences in Plaintiffs' favor, there is at least a question of fact as to whether Defendants engaged in a deceptive trade practice. *See, e.g.*, TEX. BUS. & COM. CODE § 17.46(b)(5) (creating liability for "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not"); TEX. BUS. & COM. CODE § 17.46(b)(24) (creating liability for "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed").

For these reasons, summary judgment is not proper on Plaintiff Rodriguez's DTPA claim. Consequently, Defendants' Motion for Summary Judgment will be denied as to Count LIII.

### b.

Defendants contend that Plaintiff Rodriguez's claim for fraudulent concealment under Texas law fails because Defendants did not have a duty to disclose the defeat devices to him. ECF No. 338 at PageID.19170–71.

In order to prove fraud under Texas common law, Plaintiff Rodriguez must establish:

(1) a material misrepresentation;
(2) that was false;
(3) known to be false when made or asserted without knowledge of its truth;
(4) made with intent that they would act on it;
(5) that they actually did rely on it; and
(6) that it caused injury.

*Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 525 (5th Cir. 2001) (citations omitted).

In general, "[i]n an arms-length transaction where none of the Plaintiffs dealt directly with the vehicle manufacturer, there is no duty [to disclose]." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 850 (S.D. Tex. 2018).

But, even then, a failure to disclose information is fraudulent if "a party later learns that previous affirmative representations are in fact false." *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 669 (Tex. App. 1986) (internal citations omitted). In this way, "a duty to disclose the whole truth" arises when a manufacturer "voluntarily disclose[s] information." *Curocom Energy LLC v. Eem*, No. 01-14-00816-CV, 2016 WL 4150837, at *6 (Tex. App. Aug. 4, 2016). Similarly, if a manufacturer "made a representation," then it "had a duty to disclose new information if [it] became aware that the new information made the earlier representation misleading or untrue." *Id.* A manufacturer likewise has "a duty to correct a false impression conveyed by a partial disclosure." *Id.*

Plaintiff Rodriguez's Texas fraudulent-concealment claim fails as to Defendant Bosch. Both Bosch and GM voluntarily made representations about the diesel Cruzes' emissions technology. *See* ECF No. 95 at PageID. 7359–78, 7408–14. Advertising the efficiency of the diesel Cruze's emissions created a duty to disclose the existence of any emissions-related defect devices. Yet Plaintiff Rodriguez must have relied on GM's and Bosch's emissions-related advertisements to bring a Texas fraudulent-concealment claim based on the omitted defeat devices. *See Jackson*, 245 F.3d at 525 (holding that even if an upstream manufacturer has a duty to disclose a fraudulent omission, the downstream purchaser must have relied on the deficient representation from which the information was omitted). Plaintiff Rodriguez testified that he relied on GM's advertisements but did even see any of Bosch's advertisements. *See* ECF No. 346-30 at PageID.24321, 24331.

Because Plaintiff Rodriguez relied on GM's representations but not Bosch's, his Texas fraudulent-concealment claim fails against Bosch but not against GM.

For these reasons, summary judgment is appropriate on Plaintiff Rodriguez's Texas fraudulent–concealment claim as to Defendant Bosch. Consequently, Defendants' Motion for Summary Judgment will be granted in part and denied in part as to Count LIV.

### 8.

### a.

Defendants inaccurately assert that they are not liable under the West Virginia Consumer Credit and Protection Act (CCPA), W. VA. CODE § 46A-6-106, because they did not directly sell anything to Plaintiffs. ECF No. 338 at PageID.19171–72.

The CCPA provides a private cause of action for people "who purchase[d] or lease[d] goods or services and thereby suffer[ed] an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article." W. VA. CODE § 46A-6-106(a).

To state a claim under the CCPA, a consumer must allege:

(1) unlawful conduct by a seller;
(2) an ascertainable loss on the part of the consumer; and
(3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss.

*Heater v. Gen. Motors, LLC*, No. 1:21CV24, 2021 WL 4896546, at *2 (N.D. W. Va. Oct. 20, 2021) (quoting *White v. Wyeth*, 705 S.E.2d 828, 837 (W. Va. 2010)).

"Where concealment, suppression or omission is alleged, and proving reliance is an impossibility, the causal connection between the deceptive act and the ascertainable loss is established by presentation of facts showing that the deceptive conduct was the proximate cause

of the loss." *White v. Wyeth*, 705 S.E.2d 828, 837 (W. Va. 2010) ("In other words, the facts have to establish that 'but for' the deceptive conduct or practice a reasonable consumer would not have purchased the product and incurred the ascertainable loss.").

As previously discussed, a reasonable juror could infer that Defendants' omission of the defeat device proximately caused Plaintiffs' alleged loss (i.e., the overpayment for a defective diesel Cruze). *See* discussion *supra* Section III.B (finding that Plaintiffs' economic damages are fairly traceable to Defendants' installation and concealment of the defeat devices); *see also* ECF No. 438 at PageID.39356–71 (finding that Plaintiffs' damages theories are methodologically reliable).

But Defendants assert that they are not a seller under § 46A-6-106. ECF No. 338 at PageID.19171 ("If Chrysler Motors is not a seller or lessor of goods under the statute then there is no cause of action against them." (quoting *Perry v. Tri-State Chrysler Jeep, LLC*, No. CIV.A. 3:08-0104, 2008 WL 1780938, at *4 (S.D. W. Va. Apr. 16, 2008))).

The term "seller of goods" can be interpreted to include either any merchant of the goods in question or only sellers that sold the goods directly to the plaintiff. According to West Virginia's highest court, the CCPA is remedial in nature and should be liberally construed "to protect consumers from unfair, illegal and deceptive business practices." *Fleet v. Webber Springs Owners Ass'n*, 772 S.E.2d 369 (W. Va. 2015) (citations omitted).

The liberal construction of "seller of goods" includes Defendants, as Bosch sold the software to GM, which sold the diesel Cruze to the dealership, which sold the diesel Cruze to Plaintiff Long. *See Bank of Huntington v. Napier*, 23 S.E. 800, 802 (W. Va. 1895) ("Why should it make any difference whether a person contracts with two separate individuals or with one individual in two distinct or separate capacities, namely, a seller of goods and an agent to deliver

- 49 -

goods?"); *see also Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.*, 268 S.E.2d 886, 889 (W Va. 1980) (stating that "[u]nder the Uniform Commercial Code, adopted by the legislature in 1963 and embodied in Chapter 46 of the West Virginia Code, . . . [a] seller is a merchant with respect to goods of that kind"); *Sewell v. Gregory*, 371 S.E.2d 82, 83 (W. Va. 1988) (holding that "[i]mplied warranties of habitability and fitness for use as a family home may be extended to second and subsequent purchasers for a reasonable length of time after construction"). No West Virginia precedent forecloses that interpretation.

For these reasons, summary judgment is not proper on Plaintiff Long's CCPA claim. Consequently, Defendants' Motion for Summary Judgment will be denied as to Count LXI.

**b.**

Defendants also claim that Plaintiff Long's claim for fraudulent concealment fails under West Virginia common law because Defendants did not have a duty to disclose the defeat devices. *See* ECF No. 338 at PageID.19172–73.

In order to prove fraud under West Virginia common law, a plaintiff must establish:

(1) that the act claimed to be fraudulent was the act of the defendant or induced by him;
(2) that it was material and false;
(3) that plaintiff relied upon it;
(4) that plaintiff was justified under the circumstances in relying upon it; and
(5) that he was damaged because he relied upon it.

*Trafalgar House Constr. v. ZMM, Inc.*, 567 S.E.2d 294, 300 (W. Va. 2002) (quoting *Lengyel v. Lint*, 280 S.E.2d 66, 67 (W. Va. 1981)). "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Id.* (citing *Silva v. Stevens*, 589 A.2d 852, 857 (Vt. 1991)).

West Virginia courts have long held that vendors have a duty to disclose when "aware of defects or conditions which substantially affect the value or habitability of the property and the

existence of which are unknown to the purchaser and would not be disclosed by a reasonably diligent inspection." *Thacker v. Tyree*, 297 S.E.2d 885, 888 (W. Va. 1982); *see also Teter v. Old Colony Co.*, 717, 441 S.E.2d 728, 734 (W. Va. 1994) ("*Thacker*, on the other hand, places an affirmative duty on the vendor to disclose defects which are known to him, but unknown to the purchaser even with a reasonably diligent inspection."). It matters not whether the seller was the manufacturer of the good. *Chamberlaine & Flowers, Inc. v. McBee*, 356 S.E.2d 626, 629 (W. Va. 1987) (per curiam) ("A purchaser can also be injured by a seller who commits a fraud by concealing a defect or making a misrepresentation, but did not construct the house. The effect is the same.").

Fraudulent concealment requires some affirmative act "designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim." *Kessel v. Leavitt*, 511 S.E.2d 720, 763 (W. Va. 1998). Fraudulent concealment might "arise when the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 550 (1976)). "Indeed, '[f]raud is the concealment of the truth just as much as it is the utterance of a falsehood.'" *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640, 654 (W. Va. 2012) (quoting *Frazer v. Brewer*, 43 S.E. 110, 111 (W. Va. 1902)).

Drawing all reasonable inferences in Plaintiff Long's favor, he has seemingly stated a viable claim of fraudulent concealment under West Virginia common law. Defendants affirmatively acted by installing and concealing the defeat devices. Concealing the defeat devices is the same as affirmatively representing that they do not exist. *See Trafalgar*, 567 S.E.2d at 300 (holding that a plaintiff can "detrimentally rely[] upon fraudulent misrepresentations or

concealment by the defendant"). As indicated, Defendants seemingly had a duty to disclose the defeat devices.

Yet this Court has not found, and the parties have not identified, any West Virginia precedent imputing a duty to disclose on a party that did not sell the product to the plaintiff (i.e., an upstream seller). Even so, the lack of such precedent does not mean that those claims cannot exist.

Plaintiff quotes *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 696 (S.D. W. Va. 2014) for the proposition that an upstream manufacturer has "a common-law duty to disclose 'facts basic to the transaction' when 'objective circumstances' are such that the person 'would reasonably expect a disclosure of those facts.'" ECF No. 388 at PageID.31033 (filed under seal). But that discussion in *Bellville* concerned fraudulent omission, not fraudulent concealment. *Belville*, 60 F. Supp. 3d at 696–97. Indeed, the *Bellville* court stated that it "dismissed" the plaintiff's fraudulent-concealment claims because "the various reports, advertisements, and statements quoted . . . were mere puffery." *Id.*

But based on *Belleville*, the only case remotely on point, a West Virginia fraudulent-concealment claim based on affirmative representations cannot be sustained on mere puffery. *See id.* at 696 ("The critical difference between fraudulent concealment and fraudulent omission is that the later [sic] does not require an affirmative act of concealment."). This Court has already found that Defendants' affirmative representations were mere puffery. *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 598 (E.D. Mich. 2017). And Plaintiffs have not attempted to amend Count LXII as a West Virginia common-law claim of fraudulent nondisclosure.

For these reasons, summary judgment is appropriate on Plaintiff Long's West Virginia fraudulent-concealment claim. Consequently, Count LXII of Plaintiffs' First Amended Complaint will be dismissed.

**V.**

Accordingly, it is **ORDERED** that GM's Motion for Summary Judgment, ECF No. 345 (filed under seal); 346, is **GRANTED IN PART** and **DENIED IN PART**. GM's Motion for Summary Judgment is **GRANTED** as to Count I of Plaintiffs' First Amended Complaint, ECF Nos. 94; 95, and **DENIED** in all other regards.

Further, it is **ORDERED** that Count I of Plaintiffs' First Amended Complaint, ECF Nos. 94; 95, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that Bosch's Motion for Summary Judgment, ECF No. 338, is **GRANTED IN PART** and **DENIED IN PART**.

Further, it is **ORDERED** that the following claims from Plaintiffs' First Amended Complaint, ECF Nos. 94; 95, are **DISMISSED WITH PREJUDICE** as follows:

(1) Count IV (Arizona Consumer Fraud Act) as to Defendant Bosch;
(2) Count V (Arizona Fraudulent Concealment);
(3) Count XVII (Florida Fraudulent Concealment);
(4) Count XXX (Michigan Consumer Protection Act);
(5) Count XXXI (Michigan Fraudulent Concealment);
(6) Count LIV (Texas Fraudulent Concealment) as to Defendant Bosch; and
(7) Count LXII (West Virginia Fraudulent Concealment).

Further, it is **ORDERED** that Defendant Bosch's Motion for Summary Judgment, ECF No. 338, is **DENIED** with respect to the following claims (which are thus retained):

(1) Count IV (Arizona Consumer Fraud Act) as to only Defendant GM;
(2) Count XVI (Florida Deceptive and Unfair Trade Practices Act);
(3) Count XXVI (Maryland Consumer Protection Act);
(4) Count XXVII (Maryland Fraudulent Concealment);
(5) Count XLII (New York General Business Law § 349);
(6) Count XLIII (New York General Business Law § 350);

(7) Count LIII (Texas Deceptive Trade Practices Act).
(8) Count LIV (Texas Fraudulent Concealment) as to only Defendant GM; and
(9) Count LXI (West Virginia Consumer Credit and Protection Act).

The following table provides the current posture of Plaintiffs' claims:

| Count Number | Claim | Underlying Law | Named Plaintiff | Status |
|---|---|---|---|---|
| I | RICO | 18 U.S.C. §§ 1962(e), (d) | All | Defs.' Summ. J. Granted |
| II | AL - Deceptive Trade Practices Act | Ala. Code § 8-19-1 *et seq.* | None | Merits Not Addressed |
| III | AL - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| IV | AZ - Consumer Fraud Act | Ariz. Rev. Stat. § 44-1521 *et seq.* | Bassam Hirmiz | Defs.' Summ. J. Granted as to Bosch |
| V | AZ - Fraudulent Concealment | Common Law | Bassam Hirmiz | Defs.' Summ. J. Granted |
| VI | CA - Unfair Competition Law | Cal. Bus. & Prof. Code § 17200 *et seq.* | None | Merits Not Addressed |
| VII | CA - False Advertising Law | Cal. Bus. & Prof. Code § 17500 *et seq.* | None | Merits Not Addressed |
| VIII | CA - Consumer Legal Remedies Act | Cal. Civ. Code § 1750 *et seq.* | None | Merits Not Addressed |
| IX | CA - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| X | CO - Consumer Protection Act | Colo. Rev. Stat. § 6-1-101 *et seq.* | None | Merits Not Addressed |
| XI | CO - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XII | CT - Unfair Trade Practices Act | Conn. Gen. Stat. § 42-110A *et seq.* | None | Merits Not Addressed |
| XIII | CT: Fraudulent Non-disclosure | Common Law | None | Merits Not Addressed |
| XIV | DE - Consumer Fraud Act | Del. Code tit. 6, § 2513 | None | Merits Not Addressed |
| XV | DE - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XVI | FL - Unfair and Deceptive Trade Practices Act | Fla. Stat. § 501.201 | Jason Silveus | Defs.' Summ. J. Denied |
| XVII | FL - Fraudulent Concealment | Common Law | Jason Silveus | Defs.' Summ. J. Granted |
| XVIII | GA - Fair Business Practices Act | Ga. Code § 10-1-390 *et seq.* | None | Merits Not Addressed |

| XIX | GA - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
|---|---|---|---|---|
| XX | ID - Consumer Protection Act | Idaho Code § 48-601 *et seq.* | None | Merits Not Addressed |
| XXI | ID - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XXII | IL - Consumer Fraud and Deceptive Business Practices Act | 815 Ill. Comp. Stat. 505/1; 720 Ill. Comp. Stat. 295/1A | None | Merits Not Addressed |
| XXIII | IL - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XXIV | KY - Consumer Protection Act | Ky. Rev. Stat. § 367.110 *et seq.* | None | Merits Not Addressed |
| XXV | KY - Fraud by Omission | Common Law | None | Merits Not Addressed |
| XXVI | MD - Consumer Protection Act | Md. Code, Com. Law § 13-101 *et seq.* | John Miskelly | Summary Judgment Denied |
| XXVII | MD - Fraudulent Concealment | Common Law | John Miskelly | Summary Judgment Denied |
| XXVIII | MA - Consumer Protection Act | Mass. Gen. Laws ch. 93A, § 1 *et seq.* | None | Merits Not Addressed |
| XXIX | MA - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| ~~XXX~~ | ~~MI - Consumer Protection Act~~ | ~~Mich. Comp. Laws § 445.903 *et seq.*~~ | ~~Jason Counts; Donald Klein~~ | ~~Defs.' Summ. J. Granted~~ |
| ~~XXXI~~ | ~~MI - Fraudulent Concealment~~ | ~~Common Law~~ | ~~Jason Counts; Donald Klein~~ | ~~Defs.' Summ. J. Granted~~ |
| XXXII | MN - Prevention of Consumer Fraud Act | Minn. Stat. § 325F.68 *et seq.* | None | Merits Not Addressed |
| XXXIII | MN - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XXXIV | MO - Merchandising Practices Act | Mo. Rev. Stat. § 407.010 *et seq.* | None | Merits Not Addressed |
| XXXV | MO - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XXXVI | MT - Unfair Trade Practices and Consumer Protection Act of 1973 | Mont. Code § 30-140191 *et seq.* | None | Merits Not Addressed |

| XXXVII | MT - Fraud by Concealment | Common Law | None | Merits Not Addressed |
|---|---|---|---|---|
| XXXVIII | NV - Deceptive Trade Practices Act | Nev. Rev. Stat. § 598.0903 *et seq.* | None | Merits Not Addressed |
| XXXIX | NV - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XL | NJ - Consumer Fraud Act | N.J. Stat. § 56:8-1 *et seq.* | None | Merits Not Addressed |
| XLI | NJ - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XLII | NY - General Business Law § 349 | N.Y. Gen. Bus Law § 349 | Thomas Hayduk; Christopher Hemberger | Defs.' Summ. J. Denied |
| XLIII | NY - General Business Law § 350 | N.Y. Gen. Bus. Law § 350 | Thomas Hayduk; Christopher Hemberger | Defs.' Summ. J. Denied |
| XLIV | NY - Fraudulent Concealment | Common Law | Thomas Hayduk; Christopher Hemberger | Merits Not Addressed |
| XLV | NC - Unfair and Deceptive Acts and Practices Act | N.C. Gen. Stat. § 75-1.1 *et seq.* | None | Merits Not Addressed |
| XLVI | NC - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XLVII | OH - Consumer Sales Practices Act | Ohio Rev. Code § 1345.01 *et seq.* | None | Merits Not Addressed |
| XLVIII | OH - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| XLIX | PA - Unfair Trade Practices and Consumer Protection Law | 73 Pa. Stat. and Cons. Stat. § 201-1 *et seq.* | None | Merits Not Addressed |
| L | PA - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| LI | TN - Consumer Protection Act | Tenn. Code § 47-18-101 *et seq.* | None | Merits Not Addressed |
| LII | TN - Fraud by Concealment | Common Law | None | Merits Not Addressed |
| LIII | TX - Deceptive Trade Practices Act | Tex. Bus. & Com. Code § 17.41 *et seq.* | Joshua Rodriguez | Defs.' Summ. J. Denied |
| LIV | TX - Fraud by Concealment | Common Law | Joshua Rodriguez | Defs.' Summ. J. Granted as to Bosch |

| LV | UT - Consumer Sales Practices Act | Utah Code § 13-11-1 *et seq.* | None | Merits Not Addressed |
|---|---|---|---|---|
| LVI | UT - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| LVII | VA - Consumer Protection Act | Va. Code § 59.1-196 *et seq.* | None | Merits Not Addressed |
| LVIII | VA - Fraud by Concealment | Common Law | None | Merits Not Addressed |
| LIX | WA - Consumer Protection Act | Wash. Rev. Code § 19.86.010 *et seq.* | None | Merits Not Addressed |
| LX | WA - Fraudulent Concealment | Common Law | None | Merits Not Addressed |
| LXI | WV - Consumer Credit and Protection Act | W. Va. Code § 46A-1-101 *et seq.* | Derek Long | Defs.' Summ. J. Denied |
| ~~LXII~~ | ~~WV - Fraudulent Concealment~~ | ~~Common Law~~ | ~~Derek Long~~ | ~~Defs.' Summ. J. Granted~~ |
| LXIII | WI - Deceptive Trade Practices Act | Wis. Stat. § 110.18 | None | Merits Not Addressed |
| LXIV | WI - Fraudulent Concealment | Common Law | None | Merits Not Addressed |

**This is not a final order and does not close the case**.

Dated: June 9, 2022

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge